MICHAEL KAUFMAN (SBN 254575)
*mkaufman@aclusocal.org*
STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Telephone: (213) 977-5232
Facsimile: (213) 201-7878

Attorneys for Plaintiffs
*(additional counsel information on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

OSNY SORTO-VASQUEZ KIDD, et al.,

Plaintiffs,

vs.

CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security, in his official capacity, et al.,

Defendants.

Case No. 2:20-cv-03512-ODW-JPR

**PLAINTIFFS' REDACTED OPPOSITION TO DEFENDANTS' MOTION TO USE PSEUDONYMS AND FOR PROTECTIVE ORDER**

Judge: Hon. Otis D. Wright II

Hearing Date: October 5, 2020
Hearing Time: 1:30 p.m.
Courtroom: 5D, First Street Courthouse

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
CAITLIN BELLIS (SBN 304764)
*cbellis.clinic@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT RIGHTS CLINIC
401 E. Peltason Drive,
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-2747

ANJAN CHOUDHURY (SBN 236039)
*anjan.choudhury@mto.com*
JACOB KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

TERRA CASTILLO LAUGHTON (SBN 321683)
*terra.laughton@mto.com*
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................ 1

BACKGROUND REGARDING THE DOE DEFENDANTS ................................ 2

ARGUMENT ........................................................................................ 3

I. This Motion is Not Properly Brought by Official Capacity Defendants ........................................................................ 4

II. Defendants Have Not Otherwise Shown Anonymity is Necessary Under the First Three *Advanced Textile* Factors................................ 6

III. Any Interest the Doe Defendants Have in Anonymity is Outweighed by the Public Interest in Open Judicial Proceedings........................... 10

IV. Any Need for Anonymity by Defendants is Insufficient to Outweigh the Prejudice to Plaintiffs Associated with Anonymity ...................... 12

V. Any Grant of Anonymity by the Court (and Associated Protective Order) Should Only be for This Stage ............................... 14

CONCLUSION........................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B.T. v. U.S. Citizenship & Immigr. Servs.*,
No. 2:11-cv-02108-RAJ, 2012 WL 2995064 (W.D. Wa. July 20, 2012) .......... 10

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
403 U.S. 388 (1971) .......... 2

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
456 F.2d 1339 (2d Cir. 1972) .......... 2

*Cheng v. Schlumberger*,
No. C 13-02641 JSW, 2013 WL 5814272 (N.D. Cal. Oct. 29, 2013) .......... 5

*Comm'n on Peace Officer Standards & Training v. Super. Ct.*
42 Cal. 4th 278 (2007) .......... 10

*Cruz v. Santana*,
No. 1:20-cv-00891 (E.D.N.Y. May 7, 2020) .......... 9

*Doe v. Blue Cross & Blue Shield United of Wis.*,
112 F.3d 869 (7th Cir. 1997) .......... 4

*Doe v. Cty. of El Dorado*,
No. 2:13-CV-01433-KJM, 2013 WL 6230342 (E.D. Cal. Dec. 2, 2013) .......... 6

*Doe v. Holder*,
736 F.3d 871 (9th Cir. 2013) .......... 4

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*,
596 F.3d 1036 (9th Cir. 2010) .......... 3, 4, 5

*Doe v. Rostker*,
89 F.R.D. 158 (N.D. Cal. 1981) .......... 4

*Doe v. Stegall*,
653 F.2d 180 (5th Cir. 1981) .......... 12

*Doe v. UNUM Life Insurance Company of America*,
164 F. Supp. 3d 1140 (N.D. Cal. 2016) .......... 3

*Flast v. Cohen*,
392 U. S. 83 (1968) ..... 5

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ..... 10

*Hagestad v. Tragesser*,
49 F.3d 1430 (9th Cir. 1995) ..... 10

*Haley v. Ornelas*,
No. CV 16-3177-AG(E), 2016 WL 11519291 (C.D. Cal. Dec. 21, 2016) ..... 5

*Estate of Hernandez-Rojas v. United States*,
No. 3:11-cv-00522-L-DHB, ECF No. 133-1 (S.D. Cal. May 30, 2013) ..... 11

*Hong Kong Supermarket v. Kizer*,
830 F.2d 1078 (9th Cir. 1987) ..... 4

*Pak v. United States*,
No. 1:18-cv-00513 (E.D.N.Y. Jan. 24, 2018) ..... 9

*Plyler v. Doe*,
457 U.S. 202 (1982) ..... 4

*Portales-Castro v. ICE*,
No. 3:19-cv-00891 (W.D. Ken. Dec. 6, 2019) ..... 9

*Rodriguez v. Swartz*,
4:14-cv-02251-RCC, ECF No. 40 (D. Ariz. Nov. 13, 2014) ..... 11, 12

*Sanchez-Medina v. Sessions*,
7:18-cv-00009 (S.D. Tex. Jan. 11, 2018) ..... 10

*Torres v. Dep't of Homeland Sec.*,
CV 18-02604-JGB ..... 8, 9

*Torres v. United States*,
No. 1:19-cv-06546 (N.D. Ill. Oct. 2, 2019) ..... 9

*Torres-Jurado v. Trump*,
No. 1:19-cv-03595 (S.D.N.Y. Apr. 23, 2019) ..... 10

*Tun-Cos v. Perrotte*,
No. 1:17-cv-00943 (E.D. Va. Aug. 23, 2017) .......... 9

*United States v. Doe*,
488 F.3d 1154 (9th Cir. 2007) .......... 3

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 4

*Zelaya v. Miles*,
No. 3:19-cv-00062 (E.D. Tenn. Apr. 4, 2019) .......... 9

**Rules**

Fed. R. Civ. P. 10(a) .......... 3

Fed. R. Civ. P. 26(f) .......... 3

L.R. 7-3 .......... 13

**Statutes**

Federal Tort Claims Act ("FTCA") .......... 2

## INTRODUCTION

In their Motion to Use Pseudonyms and for Protective Order ("Motion"), ECF No. 25, Official Capacity Defendants[1] make an extraordinary and unprecedented request that this Court shield the identity of the Doe Defendants—*i.e.*, the officers responsible for the unlawful arrest of Plaintiff Osny Sorto-Vasquez Kidd—from the Plaintiffs and the public at large in the course of this litigation.

In order for a party to proceed anonymously, that party must overcome the strong presumption that parties use their real names in litigation. This presumption is grounded in the public's "common law right of access to judicial proceedings." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). While anonymity can be an important protection, it is limited to "special circumstances," for example, when dealing with plaintiffs who are minor children, victims of rape or domestic abuse, undocumented immigrants, and others who are particularly vulnerable to retaliation or harm. *Id.*

Defendants' Motion should be rejected for two reasons. First, it is procedurally improper. It is brought by the Official Capacity Defendants, who do not have standing to bring such a motion on behalf of the Doe Defendants. Moreover, because Defendants fail to provide any evidence from Doe Defendants themselves, the Court cannot evaluate whether *they* are actually fearful of public exposure or have any particular vulnerability factors.

Second, Defendants fail to meet their burden to justify anonymity. In essence, Defendants argue that Plaintiffs and the public should be prevented from knowing who the Doe Defendants are because: (1) ICE is a disliked agency, (2) the complaint describes unlawful acts by the Doe Defendants, and (3) *some* third parties have engaged in doxing of *some* ICE officers. While Plaintiffs do not support doxing, this

[1] Defendants (or, alternatively Official Capacity Defendants) refers to the moving defendants: Chad F. Wolf, Matthew T. Albence, David Marin, Joseph Macias, and the United States of America.

is not nearly enough to support anonymity, particularly when weighed against the significant public interest in learning about the activities of government agents performing public functions in this case. Moreover, because Defendants' argument is that the Doe Defendants would be in danger "*simply [by] being associated with ICE*," Motion at 1 (emphasis added), granting Defendants' request here would set a dangerous precedent sanctioning anonymity in virtually *any* case brought against ICE officers.

Moreover, Defendants make little attempt to address the serious prejudice to Plaintiffs and the putative class associated with denying them access to the identity of individual ICE officers in this case. The reality is that Defendants can point to no comparable case where the request they make here has been granted. The Court should deny Defendants' Motion.

## BACKGROUND REGARDING THE DOE DEFENDANTS

In this civil rights action, inter alia, the individual Plaintiff, Mr. Kidd, seeks relief under the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for the harms he suffered as a result of the unlawful manner of his arrest by ICE officers. The Doe Defendants gained entry into his home, and two days later lured him out of his home, by impersonating a detective with the local police department claiming to be investigating a fictitious dangerous criminal that threatened his family's safety. Complaint, ECF No. 1, ¶¶ 53-55. While Defendants would have the Court believe that the Doe Defendants were added to the Complaint gratuitously, Motion at 1, the Doe Defendants must be named in the case for the Court to consider Mr. Kidd's *Bivens* claim. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 456 F.2d 1339, 1347 (2d Cir. 1972) (finding an exception to sovereign immunity for damage suits against individual officers based upon allegations of violations of constitutional rights). As discussed *infra* at 9-10, this is not unusual. Individual ICE officers are routinely named in litigation challenging the agency's

practices.

Because Mr. Kidd is unaware of the identity of the ICE officers who arrested him, he named them as "Doe" Defendants. As discussed in Plaintiffs' Motion to Extend Deadline for Serving Doe Defendants and for Leave to Take Limited Expedited Discovery Prior to Rule 26(f) Conference, ECF No. 14, Plaintiffs have made numerous attempts to obtain from Defendants the identity of Doe Defendants. Defendants have refused to provide the information unless Plaintiffs agreed in advance to allow the Doe Defendants to proceed anonymously. *Id.* at 4. Plaintiffs declined to agree to anonymity, leading to the instant Motion by Defendants.[2]

## ARGUMENT

Federal Rule of Civil Procedure 10(a) requires that a complaint must "name all the parties." Fed. R. Civ. P. 10(a); *see also Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010) ("The normal presumption in litigation is that parties must use their real names."). The Ninth Circuit recognizes an exception for a party to "preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1068; *see also United States v. Doe*, 488 F.3d 1154, 1155 n.1 (9th Cir. 2007) (identity of parties should only be concealed "in an unusual case, where there is a need for the cloak of anonymity").

Anonymity is typically only permitted when a case involves matters that are "highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Doe v. UNUM Life Insurance Company of America*, 164 F.

[2] As set forth in greater detail in briefing for Plaintiffs' Motion, the Court may grant the request for pre-Rule 26(f) conference discovery so that Plaintiffs can move forward with service even if it needs more time to decide the instant anonymity request by Defendants. *Id.* at 10 (discussing proposal for a provisional protective order). In other words, a decision on anonymity is not a prerequisite to service of the Complaint on the Doe Defendants. *Id.*

Supp. 3d 1140, 1145 (N.D. Cal. 2016) (internal quotations and citation omitted). Accordingly, courts have allowed vulnerable plaintiffs to proceed anonymously. *See, e.g.*, *Doe v. Holder*, 736 F.3d 871, 872 n.1 (9th Cir. 2013) (anonymity for asylum seeker); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) (discussing anonymity for "rape victims, and other particularly vulnerable parties or witnesses"); *Plyler v. Doe*, 457 U.S. 202 (1982) (anonymity for undocumented children). Proceeding anonymously is also appropriate "to preserve privacy in a matter of a sensitive and highly personal nature." *Advanced Textile*, 214 F.3d at 1068. That a plaintiff "may suffer" some possible embarrassment or economic harm is not enough. *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981).

In ruling on a request for anonymity in the Ninth Circuit, "a district court must balance five factors: '(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, … (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest." *Kamehameha*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214 F.3d at 1068). The moving party bears the burden to show that anonymity is warranted. Here, the government cannot meet its burden, particularly in light of the significant public interest in this case, including the challenge to the Doe Defendants' violations of Mr. Kidd's constitutional rights.

**I. This Motion is Not Properly Brought by Official Capacity Defendants**

The Official Capacity Defendants have not offered any explanation for why they have standing to move this Court for anonymity on behalf of the Doe Defendants. The privacy interests asserted in the Motion belong to the individual Doe Defendants, and any potential injury would accrue to them, not the Official Capacity Defendants. This Motion is therefore improper under both the constitutional and prudential standing doctrines. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) (noting that constitutional standing requires a party moving for relief to "allege a distinct and palpable injury to himself"); *Hong Kong Supermarket v. Kizer*,

830 F.2d 1078, 1081 (9th Cir. 1987) ("Prudential limitations require that parties assert their own rights rather than rely on the rights or interests of third parties.").

Compounding this standing deficiency, the Doe Defendants have not yet appeared in this case. *See Flast v. Cohen*, 392 U. S. 83, 99 n.20 (1968) ("[A] general standing limitation imposed by federal courts is that a litigant will ordinarily not be permitted to assert the rights of absent third parties."). The Court cannot be confident that the Doe Defendants themselves desire anonymity or have authorized this Motion. This Court should therefore decline to address the arguments raised in this Motion. *See Haley v. Ornelas*, No. CV 16-3177-AG(E), 2016 WL 11519291, at *3 (C.D. Cal. Dec. 21, 2016) (declining to address arguments on behalf of a government defendant who had not yet appeared because the moving defendant, in that case Los Angeles County, "may not properly act as a surrogate"); *see also Cheng v. Schlumberger*, No. C 13-02641 JSW, 2013 WL 5814272, at *2 n.2 (N.D. Cal. Oct. 29, 2013) (similar conclusion with respect to a private party).

Further, one need only look at the *Advanced Textile* factors to understand why the Court cannot, as a practical matter, consider Defendants' Motion without the individual Doe Defendants. As noted above, *Advanced Textile* requires the Court to consider "the reasonableness of the anonymous party's fears" and "the anonymous party's vulnerability to such retaliation." *Kamehameha*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214 F.3d at 1068). Without the Doe Defendants, the Court cannot begin to make this assessment. It does not even know what the Doe Defendants' specific fears are. *Id.* at 1043 (in order to meet second prong of *Advanced Textile* test, moving party "must show *both* (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable") (emphasis added). The Court also has no information about the Doe Defendants' specific vulnerabilities, if any. In other words, the Court does not have even the minimum baseline evidence to be able to evaluate an anonymity request.

## II. Defendants Have Not Otherwise Shown Anonymity is Necessary Under the First Three *Advanced Textile* Factors

Because the individual Doe Defendants are not before the Court, if this Court chooses to address Defendants' arguments for anonymity on the merits at all, it has only the generic arguments advanced by Defendants to go on. Defendants' case can be summed up as follows: ICE is a disliked agency, the complaint describes unlawful acts by the Doe Defendants, and some third parties have engaged in doxing of some ICE officers. *See* Motion at 4-10. But this is hardly enough to meet Defendants' high burden under the first three *Advanced Textile* factors. *Advanced Textile*, 214 F.3d at 1068 (identifying the severity of the threatened harm, the reasonableness of the anonymous party's fears, and the anonymous party's vulnerability to the threatened harm as relevant factors). Defendants fail to show that anonymity is "necessary . . . to protect" the Doe Defendants involved in Mr. Kidd's arrest, for at least three reasons. *Id*.

First, as noted above, Defendants present *zero* evidence about the *Doe Defendants*' fears or vulnerability in this case. They make only arguments that apply broadly to anyone "associated with ICE." Motion at 1. Indeed, because the Court does not know who the Doe Defendants are, it cannot even assess whether any of the Doe Defendants have already been identified as being associated with ICE in the public domain, as many ICE officers are. *See infra* at 7-8.

Second, Defendants do not show that any threat or retaliation the Doe Defendants might face would be tied to this litigation. The retaliation a party fears must have some nexus with the lawsuit in which the party seeks to proceed anonymously. *See, e.g., Doe v. Cty. of El Dorado*, No. 2:13-CV-01433-KJM, 2013 WL 6230342, at *2 (E.D. Cal. Dec. 2, 2013). But because ICE is already a disliked agency, and many ICE officers are already publicly identified as affiliated with the agency, the Doe Defendants may be at risk of being doxed even if they are not identified in this lawsuit, and vice versa (*i.e.*, if they are named, they may still not be

doxed).

Indeed, as Defendants' motion alludes to, numerous ICE officers already identify themselves as employed by the agency on LinkedIn, a social media platform where individuals can create profiles and network with other professionals. Motion at 4. A search on LinkedIn reveals that at least 1,000 users continue to voluntarily identify themselves as ICE employees—even after a group posted personal information compiled from the platform in 2018. *See id.*; Ex. A to Declaration of Stephanie Padilla ("Padilla Decl.") at 3. These employees' profiles can be viewed by other individuals with a LinkedIn account, or, in the case of public profiles, by anyone on the web. *See* LinkedIn Public Profile Visibility, https://www.linkedin.com/help/linkedin/topics/6023/6036/83 (last visited Sept. 8, 2020).

Additionally, ICE has publicly identified officers by name on its own website. *See, e.g.*, ICE's ERO Officers Are Rigorously Trained to Arrest and Remove Criminal Aliens (May 21, 2015), https://www.ice.gov/news/releases/ices-ero-officers-are-rigorously-trained-arrest-and-remove-criminal-aliens; ICE, Women in Law Enforcement, https://www.ice.gov/features/women-ice (last visited Sept. 10, 2020); Careers at ICE Podcast – Episode 4: What's It Like to Be a Deportation Officer with ERO? (Dec. 10, 2018), https://www.ice.gov/podcasts/careers-ice/episode-4-whats-it-be-deportation-officer-ero (last visited Sept. 10, 2020) (hereinafter "Careers at ICE Episode 4"). In the Netflix docuseries mentioned by Defendants, *Immigration Nation*, *see* Motion at 7, ICE *granted filmmakers access* to officers conducting operations in the field. Steve Goldstein, *At First, ICE Cooperated with the Filmmakers Behind Netflix's 'Immigration Nation.' Here's Why That Changed*, FRONTERAS (Aug. 12, 2020, 1:47 PM), https://fronterasdesk.org/content/1608944/first-ice-cooperated-filmmakers-behind-netflixs-immigration-nation-heres-why-changed. As can be seen from screenshots taken from the first and second episodes, officers' faces are visible and they are

generally identified by first name and title. Ex. B to Padilla Decl. While last names are not always visible, it is not difficult to find a number of the officers' last names on the web. *See id.* at 32-33 (showing ICE Deportation Officers [redacted], [redacted], and [redacted]); [redacted]. [redacted], the only individual that Defendants submitted a declaration from who was arguably doxed, is [redacted] and already a public figure. *See* Motion at 14 (citing Declaration of [redacted] at ¶¶ 3-5).

ICE cannot have it both ways. It cannot voluntarily make ICE employees' identities known (or allow them to be known) when it is beneficial or convenient for the agency and then seek to withhold officer identities when they are sued in litigation. If *all* ICE officers truly had a need for anonymity, as Defendants suggest, then officers presumably would not have publicly identified themselves as affiliated with the agency in these other contexts.

Third, to the extent that Defendants argue that it is being named in litigation that presents some unique danger, *see* Motion at 10, they have pointed to no evidence or examples showing that this is the case. Defendants' Motion contains a great deal of hyperbole,[3] but Defendants cite only a single example in which they allege an ICE employee was targeted as a result of litigation, in *Torres v. Dep't of Homeland Sec.*, CV 18-02604-JGB (SHKx). *See* Motion at 6-7. However, Defendants' allegation that there was a "violat[ion]" of the preliminary injunction in *Torres* is false. *Id.* at 6; Declaration of Eva Bítran at 6. Tellingly, the Government

[3] For example, Defendants allege that a protestor threatened GEO's General Counsel and his family and insinuate that these threats led to a shooting at an ICE office in San Antonio. Motion at 6 & n. 10. But the only support for this claim apparently comes from Breitbart and the article Defendants cite criticizes protests by "Jewish activists" and calls for the prosecution of numerous public officials for "seditious conspiracy," including Los Angeles Mayor Eric Garcetti and Los Angeles Police Chief Michel Moore. *See* https://www.lawenforcementtoday.com/protestors-threaten-ice-children/. It is regrettable that Defendants find this source worthy of citation.

has not even made any motion regarding this alleged "violation" with the Court in *Torres* in the *five months* since it allegedly occurred, and there has been no judicial finding of such violation. *Id*. They also inaccurately state that the flyer circulated with Mr. [redacted]'s work number provided "instructions on how to harass that particular ICE employee," Motion at 6-7. In fact, the flyer asks members of the public to call Mr. [redacted] to advocate for the release of a medically vulnerable detainee in light of COVID-19. *See* Motion at 23 (Declaration of [redacted] Exh. 1).

The fact is that ICE officers across the country are routinely named as defendants in litigation, including in the past several years. *See, e.g.*, First Amended Complaint, *Cruz v. Santana*, No. 1:20-cv-00891 (E.D.N.Y. May 7, 2020) (identifying ICE officer by name and address of employment after opportunity to seek expedited discovery against DHS). In one recent case from the Eastern District of Tennessee, the district in which the Knoxville Radical Alliance incident Defendants cite occurred, *see* Motion at 5, the government sought a limited protective order to prevent the public dissemination of individual defendants' personal information such as home addresses, telephone numbers, and personal email addresses—*but not their names*. *See* Order Granting In Part and Denying in Part Motion for Protective Order, *Zelaya v. Miles*, No. 3:19-cv-00062 (E.D. Tenn. Apr. 4, 2019). There are numerous other examples in which ICE officers were named in a lawsuit and the government did not attempt to seek anonymity or similar protection for individual officers. *See, e.g.*, Complaint, *Portales-Castro v. ICE*, No. 3:19-cv-00891 (W.D. Ken. Dec. 6, 2019) (identifying ICE field officers by name, badge number, and address of employment); Complaint, *Torres v. United States*, No. 1:19-cv-06546 (N.D. Ill. Oct. 2, 2019) (identifying ICE agents by name and address of employment); Complaint, *Pak v. United States*, No. 1:18-cv-00513 (E.D.N.Y. Jan. 24, 2018) (identifying name and shield number); Complaint, *Tun-Cos v. Perrotte*, No. 1:17-cv-00943 (E.D. Va. Aug. 23, 2017); *see also* Complaint,

*Torres-Jurado v. Trump*, No. 1:19-cv-03595 (S.D.N.Y. Apr. 23, 2019); Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, *Sanchez-Medina v. Sessions*, 7:18-cv-00009 (S.D. Tex. Jan. 11, 2018).

In sum, Defendants' attempt to justify anonymity through only generic assertions that apply to all ICE officers cannot be enough to meet their burden here. If it was, it would set a dangerous precedent sanctioning anonymity in nearly *every* case brought against ICE officers. That cannot be the right result.

**III. Any Interest the Doe Defendants Have in Anonymity is Outweighed by the Public Interest in Open Judicial Proceedings**

Defendants' case for anonymity is especially weak because of the overwhelming public interest in transparency and access to judicial proceedings here. In general, the "use of fictitious names" always "runs afoul of the public's common law right of access to judicial proceedings." *Advanced Textile*, 214 F.3d at 1067. The Courts enforce "a strong presumption in favor of access" to judicial records. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The public's interest is heightened in lawsuits, like this one, that may benefit the public because they enforce constitutional rights. *See A.B.T. v. U.S. Citizenship & Immigr. Servs.*, No. 2:11-cv-02108-RAJ, 2012 WL 2995064, at *6 (W.D. Wa. July 20, 2012).

In this case, Mr. Kidd seeks to vindicate his constitutional rights, and in doing so, bring to light ICE's unlawful arrest tactics. Mr. Kidd hopes, through this lawsuit, to resolve questions about the constitutionality and legality of ICE's warrantless home arrest practices, including ICE's impersonation of local law enforcement officials. The public's interest in learning the identity and activities of law enforcement officers, such as Doe Defendants, is greater than its interest in those of even "the average public servant," because a "police officer possesses both the authority and the ability to . . . [m]issue [] his authority" resulting in a "significant deprivation of constitutional rights and personal freedoms." *Comm'n on Peace*

*Officer Standards & Training v. Super. Ct.* 42 Cal. 4th 278, 297, 299-300 (2007) (citations and internal quotation marks omitted).

Defendants do not cite a single case in which an individual ICE defendant in a civil action has been allowed to seal their identity, and Plaintiffs are aware of none. Indeed, it is rare for defendants to request and obtain anonymity, especially if they are public officials. Rather, courts routinely permit the identification of law enforcement agent officers in litigation, despite claims of alleged fear of threats, harassment, and retaliation. For example, in *Estate of Hernandez-Rojas v. United States*, Customs and Border Patrol ("CBP") agents were alleged to have physically attacked plaintiff—*i.e.*, punched, kicked, tied his legs, and repeatedly electrocuted him with a taser—resulting in his death. 62 F. Supp. 3d 1169, 1172-73 (S.D. Cal. 2014). This case generated a fair amount of public attention. *See* Samuel Gilbert, One Widow's Quest to Make Border Patrol Pay for Killing Her Husband, VICE NEWS (June 21, 2017, 10:49 AM), https://www.vice.com/en_us/article/d3zqkq/one-widows-quest-to-make-border-patrol-pay-for-killing-her-husband. Defendant CBP agents, fearing exposure to danger, wanted to withhold their identities from the public throughout the litigation. Memorandum of Points and Authorities ISO Ex Parte Application, *Estate of Hernandez-Rojas v. United States*, No. 3:11-cv-00522-L-DHB, ECF No. 133-1 (S.D. Cal. May 30, 2013). However, the court, in denying summary judgment, identified *all* defendants, including the CBP agents. *Hernandez Rojas*, 62 F. Supp. 3d at 1172 n.1.

Similarly, in *Rodriguez v. Swartz*, a CBP agent standing on American soil shot and killed a teenage Mexican citizen who was walking down a street in Mexico. 899 F.3d 719, 727 (9th Cir. 2018), *cert granted, judgment vacated*, 140 S. Ct. 1258 (2020). Mr. Rodriguez' death sparked significant international attention. *See* Alan Yuhas, *Justice for José? Border Shooting of Mexican Teen Raises Constitutional Issue*, THE GUARDIAN (May 31, 2015), https://www.theguardian.com/world/2015/may/31/jose-antonio-us-mexico-border-

shooting-constitutional-rights. Defendant had asked that his name be withheld from the public to prevent ridicule, injury, harassment, embarrassment, and threats to defendant and his family members. Order, *Rodriguez v. Swartz*, 4:14-cv-02251-RCC, ECF No. 40, at 1-2 (D. Ariz. Nov. 13, 2014). But the court found that in light of the public concern at issue, and the fact that the law enforcement agent was "paid with public funds to . . . enforce the nation's immigration laws and [therefore] . . . ha[d] a reduced expectation of privacy—especially in courtroom proceedings which are traditionally open to the public," defendants' concerns did not overcome the strong presumption in favor of public access. *Id*. at 2.[4]

For similar reasons, Defendants' reliance on the out-of-circuit case *Doe v. Stegall* is misplaced. Motion at 8 (citing *Doe v. Stegall*, 653 F.2d 180, 183 (5th Cir. 1981)). In granting the *plaintiffs'* request to proceed anonymously, the *Stegall* court emphasized that its decision was based, in large part, on the "special status and vulnerability of the child-litigants . . . [as well as] the fundamental privateness of the religious belief." *Id.* at 186. The Doe Defendants, in contrast, are not vulnerable like child litigants. And the constitutional challenges in this litigation are of public concern, unlike the private matter of religion.

Given the underlying constitutional issues in this case, as well as the fact that Doe Defendants are law enforcement agents, the Court should uphold the public's right of access to judicial proceedings and deny Defendants' Motion.

## IV. Any Need for Anonymity by Defendants is Insufficient to Outweigh the Prejudice to Plaintiffs Associated with Anonymity

Under *Advanced Textile*, the Court may only grant Defendants' anonymity request if the need for anonymity outweighs *both* the public's interest in knowing the Doe Defendants' identities *and* any prejudice to the Plaintiffs. 214 F.2d. at 1068.

---

[4] Defendants characterize Plaintiffs' allegations against the Doe Defendants as "inflammatory," Motion at 3, but allegations are not inflammatory simply because they are critical. Nevertheless, the actions Doe Defendants are alleged to have engaged in are certainly less controversial than those in the cases involving CBP agents above.

Here, the prejudice to Plaintiffs is significant.

Defendants seek anonymity for the Doe Defendants vis-à-vis not only the public, but *vis-à-vis the Plaintiffs as well*. Proposed Order, ECF No. 27-1 (proposing that the true identities of Doe Defendants be shared only with Plaintiffs' attorneys and staff).[5] Accordingly, Plaintiffs' counsel will not even be able to ask Mr. Kidd about the officers who were involved in his arrest by name or show him photos of those officers (to the extent available) to jog his memory of what occurred and which officer did what. The ability of Plaintiffs' counsel to involve Mr. Kidd in this type of investigation has benefits even at this early stage of the proceedings and may avoid the need for successive amendments to the Complaint. More generally, the proposed protective order will presumably require Plaintiffs, including Mr. Kidd, to forfeit their right to attend depositions of the Doe Defendants and limit their ability to be involved in discovery brainstorming. If Plaintiffs are unable to disclose the Doe Defendants' identities to any nonparty, this may also limit their ability to carry out independent investigation of the Doe officers.

Moreover, each document in the case mentioning the Doe Defendants will need to be handled in a special manner, *e.g.*, filed under seal. This will greatly increase the hours that Plaintiffs' counsel—who are representing Plaintiffs and the putative class pro bono—must devote to this case. While this is not by itself a reason to deny anonymity, it is a relevant consideration.

Indeed, under Defendants' rationale for anonymity, nothing distinguishes the Doe Defendants from any other officer or employee of ICE. Thus, granting

[5] The government originally took the position that the Doe Defendants' identities should be concealed from the public, but not the Plaintiffs. In the meet and confer on August 6, the government expanded its position to include anonymity vis-à-vis the organizational Plaintiffs. Supplemental Declaration of Anne Lai, ECF No. 29-1, ¶ 2. But at no point prior to filing its motion did the government ever suggest to Plaintiffs that it would seek anonymity for the Doe Defendants even with respect to Mr. Kidd. Padilla Decl. ¶ 4. This is a significant change to the government's position and runs afoul of the government's obligation under Local Rule 7-3 to "discuss thoroughly . . . the substance of the contemplated motion."

anonymity for the Doe Defendants may well prompt Defendants to designate the identity of every other ICE employee that testifies in this case or appears in discovery documents as "for attorneys' eyes only," simply because of the employee's association with ICE. Presumably, Defendants would also seek to have a closed trial or attempt to exclude Plaintiffs and members of the putative class from being present for much of the trial because representatives from ICE will be testifying. The consequences of such a sweeping assertion of anonymity would be substantial.

### V. Any Grant of Anonymity by the Court (and Associated Protective Order) Should Only be for This Stage

The Ninth Circuit has recognized that "the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses." *Advanced Textile*, 214 F.3d at 1069. If the Court is inclined to enter any order withholding the Doe Defendants' identities from the public and/or Plaintiffs, that order should be subject to re-evaluation at each stage of the litigation to minimize any possible prejudice to Plaintiffs. *Id.*

## CONCLUSION

Defendants have failed to make a case for anonymity under the *Advanced Textile* factors. The Court should deny Defendants' request.

DATED: September 14, 2020

Respectfully submitted,

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

By: /s Stephanie Padilla
Stephanie Padilla

Stephanie Padilla (SBN 321568)
*spadilla@aclusocal.org*
Michael Kaufman (SBN 254575)
*mkaufman@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Telephone: (213) 977-5232
Facsimile: (213) 201-7878

Anne Lai (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT RIGHTS CLINIC
401 E. Peltason Drive,
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-2747

Anjan Choudhury (SBN 236039)
*anjan.choudhury@mto.com*
Jacob Kreilkamp (SBN 248210)
*jacob.kreilkamp@mto.com*
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Terra Castillo Laughton (SBN 321683)
*terra.laughton@mto.com*
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2020, I electronically filed the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO USE PSEUDONYMS AND FOR PROTECTIVE ORDER** with the Clerk of the Court using the CM/ECF system for filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Service of all documents filed under seal will be served via electronic service to parties addresses as registered with CM/ECF.

DATED: September 14, 2020
Bakersfield, CA

/s/ Stephanie Padilla
Stephanie Padilla