O

# United States District Court
# Central District of California

| | |
|---|---|
| OSNY SORTO-VASQUEZ KIDD; INLAND COALITION FOR IMMIGRANT JUSTICE; COALITION FOR HUMANE IMMIGRANT RIGHTS, | Case No. 2:20-cv-03512-ODW (JPRx) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT DEFENDANTS' MOTION TO DISMISS [44] AND DENYING INDIVIDUAL OFFICER DEFENDANTS' MOTION TO DISMISS [49]** |
| v. | |
| ALEJANDRO MAYORKAS, United States Secretary of Homeland Security, in his official capacity, et al.,[1] | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiffs Osny Sorto-Vasquez Kidd ("Kidd"), the Inland Coalition for Immigrant Justice ("ICIJ"), and the Coalition for Humane Immigrant Rights ("CHIRLA" and together with ICIJ, the "Coalitions") allege that U.S. Immigration and Customs Enforcement ("ICE") officers use unconstitutional  means to arrest and

---

[1] *See* Fed. R. Civ. P. 25(d).

detain removable immigrants in their own homes.  (*See* First Am. Compl. ("FAC"), ECF No. 1.)  Plaintiffs allege, among other things, that ICE agents violate the Fourth Amendment's prohibition on unreasonable searches and seizures by presenting themselves as officers of other law enforcement agencies (e.g., local police or probation workers) to gain entry to community members' homes to make removal arrests without true consent or a judicial warrant.

Plaintiffs bring claims against various officials for ICE and the U.S. Department of Homeland Security ("DHS") working in their official capacities (together, the "Directors"), the United States of America ("Government"), and individual ICE officers O.M., C.C., J.H., and J.N. (together, the "Officers").  The Coalitions bring claims against the Directors on behalf of the Coalitions themselves, their members and volunteers, and others similarly situated, seeking declaratory and injunctive relief to compel the Directors to comply with the Fourth Amendment when conducting removal arrests.  (*Id.* ¶¶ 149–77.)  Kidd asserts claims against the Government for damages under the Federal Tort Claims Act ("FTCA") and claims against the Officers under *Bivens* for violating his Fourth Amendment rights when he was arrested and detained.  (*Id.* ¶¶ 178–99.)

The Directors and the Government move to dismiss all claims asserted against them.  (Gov.'s Mot. Dismiss ("Gov.'s Mot."), ECF No. 44.)  The Officers also move separately to dismiss all claims asserted against them.  (Officers' Mot. Dismiss ("Officers' Mot."), ECF No. 49.)  Both Motions cite Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) as grounds for dismissal, and both Motions are fully briefed.  (Gov.'s Mot.; Opp'n Gov.'s Mot., ECF No. 45; Reply Gov.'s Mot., ECF No. 47; Officers' Mot.; Opp'n Officers' Mot., ECF No. 53; Reply Officers' Mot. 55.)  For the following reasons, the Government's Motion is **GRANTED in part** and **DENIED in part** (ECF No. 44), and the Officers' Motion is **DENIED** (ECF No. 49).[2]

---

[2] After considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[3]

In October 2018, the Officers waited outside Kidd's gated community until they gained access from an egressing tenant.  (*Id.* ¶¶ 51–52.)  Kidd's mother answered the door, upon which C.C. described herself as a "detective" with local police investigating a dangerous criminal using Kidd's address.  (*Id.* ¶ 53.)  This shocked Kidd's mother, who agreed to help to ensure her family's safety.  (*Id.*)  Once the Officers were inside the home, they visited every room, "banging on doors" and requesting identification from Kidd's siblings, who at the time were between the ages of eleven and sixteen.  (*Id.*)  Kidd was absent and, realizing as much, the Officers asked Kidd's mother to call him.  (Id. ¶ 54.)  When Kidd answered his mother's call, he could hear his siblings crying, and his mother "worriedly stated that the police told her there was a dangerous criminal 'out to get' their family."  (*Id.*)  Kidd then spoke with C.C., who again identified herself as police and said she needed to speak with Kidd in person to guarantee his family's safety.  (*Id.*)  She told Kidd they were tracking an extremely dangerous criminal, so Kidd agreed to meet with C.C.  (*Id.*)  Two days later, Kidd received a call from C.C. asking him to come outside with a form of identification to speak to the Officers.  (*Id.* ¶ 55.)  Kidd exited the complex to find the Officers donning tactical vests emblazoned with "POLICE" waiting for him.  (*Id.*)  After checking Kidd's identification, the Officers revealed his family was not at risk and that they had invented the story to induce his compliance.  (*Id.*)  They then admitted their true identities as ICE officers and arrested Kidd for removal.  (*Id.*)

Plaintiffs identify nine other individuals with similar stories.  In four of these instances,[4] the ICE officers identified themselves as "police" and often wore vests emblazoned with the word "POLICE."  (*Id.* ¶¶ 59–60, 62, 64–65, 67, 69.)  For the

---

[3] For purposes of these Rule 12 Motions, the Court takes all of Plaintiffs' well-pleaded allegations as true.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

[4] These individuals are Jesus Maria Del Rio, Xaviera Alyssa Lazo, Cruz Manuel Reyes Maldonado, and Carlos Ortiz Becerra.

remaining five individuals,[5] ICE officers identified themselves as "probation officers" instead of "police." (*Id.* ¶¶ 76, 81, 84, 89, 90.) Again, the officers' vestiture often indicated affiliation with police forces. (*Id.* ¶¶ 74, 81, 86, 89.) Universal to all alleged incidents, ICE officers made misrepresentations in order to induce "consent" to enter and search the individuals' homes. (*Id. passim.*)

## III.   LEGAL STANDARD

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A challenge pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where a defendant brings a facial attack on the district court's subject-matter jurisdiction under Rule 12(b)(1) the court "assume[s] [plaintiff's] [factual] allegations to be true and draw[s] all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 360 (9th Cir. 2004). By contrast, in a factual attack the challenger disputes the "truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Wolfe*, 392 F.3d at 362 (citing *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

Under Rule 12(b)(6), a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). But factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[5] These individuals are Diana Rubick Rodriguez, Jose Urbano Vasquez, Eduardo Rojas, Octavio Rocha Garcia, and Sigifredo Zendejas Lopez.

1  (2009) (internal quotation marks omitted).  Testing the plausibility standard is a

2  "context-specific task that requires the reviewing court to draw on its judicial

3  experience and common sense." *Id.* at 679.  A court is generally limited to the

4  pleadings on a motion to dismiss and must construe all "factual allegations set forth in

5  the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*,

6  250 F.3d at 679.  However, a court need not blindly accept conclusory allegations,

7  unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State*

8  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

9  ### IV.  DISCUSSION

10  Defendants move to dismiss Plaintiffs' claims for lack of subject-matter

11  jurisdiction and failure to state a claim for relief.  (*See* Gov.'s Mot.; Officers' Mot.)

12  Because both Motions challenge subject-matter jurisdiction for the same reasons, the

13  Court addresses that threshold question first before turning to the respective

14  Rule 12(b)(6) arguments.

15  **A.  RULE 12(b)(1) ARGUMENTS – SUBJECT-MATTER JURISDICTION**

16  Defendants offer three reasons for finding that the Court lacks subject-matter

17  jurisdiction, none of which are convincing.

18  **1.  8 U.S.C § 1252(g)**

19  First, Defendants argue the Court lacks subject matter jurisdiction because

20  8 U.S.C. § 1252(g) states, "[N]o court shall have jurisdiction to hear any cause or

21  claim by or on behalf of any alien arising from the decision or action by the Attorney

22  General to commence proceedings, adjudicate cases, or execute removal orders

23  against any alien under this chapter."  8 U.S.C. § 1252(g); (*see* Gov.'s Mot. 7–11;

24  Officers' Mot. 5–9).

25  Both the Supreme Court and Ninth Circuit have explained that "§ 1252(g)

26  applies only to three discrete actions that the Attorney General may take: her decision

27  or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders."

28  *Kwai Fun Wong v. United States*, 373 F.3d 952, 963–64 (9th Cir. 2004) (internal

quotation marks omitted) (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) [hereinafter *AADC*]).   Indeed, the Supreme Court has "read the language [of § 1252(g)] to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (citing *AADC*, 525 U.S. at 482–83).   Section 1252(g) does not bar "all claims relating in any way to deportation proceedings." *Wong*, 373 F.3d at 964 (quoting *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000)).   Rather, "Section 1252(g) was directed against a particular evil: *attempts to impose judicial constraints upon prosecutorial discretion*." *AADC*, 525 U.S. at 485 n.9 (emphasis added).

Here, § 1252(g) does not divest the Court of subject-matter jurisdiction over Plaintiffs' claims.   Although the allegedly unlawful actions may have resulted from a decision to execute a removal order, Plaintiffs expressly disclaim any challenge against the removal order itself or the decision to execute it.   (Opp'n Officers' Mot. 4–5, ECF No. 49 ("Kidd does not challenge the government's decision to 'commence' proceedings or 'execute' a removal order, or even whether the government had the authority to arrest him.   Rather, Mr. Kidd solely challenges the unconstitutional manner of his arrest.").)   Therefore, Plaintiff's claims fall outside of § 1252(g)'s reach. *See, e.g.*, *Wong*, 373 F.3d at 964 (finding that § 1252(g) did not apply where the plaintiff "disclaim[ed] any challenge to the execution of the removal itself" and challenged "only actions *other than* that removal, or the commencement of proceedings . . . leading to that removal").   Thus, to the extent Defendants challenge subject-matter jurisdiction based on § 1252(g), their Motions are **DENIED**.

**2.     8 U.S.C. §§ 1252(a)(5), (b)(9)**

Second, Defendants argue the Court lacks subject-matter jurisdiction because 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) provide, in relevant parts:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of

an order of removal entered or issued under any provision of this chapter . . . .

8 U.S.C. § 1252(a)(5); and

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien* from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9) (emphasis added); (Gov.'s Mot. 11–15; Officers' Mot. 9–13). The Ninth Circuit has explained that § 1252(b)(9) is "breathtaking in scope and vise-like in grip and therefore swallows up virtually all claims that are tied to removal proceedings." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007)). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR process." *Id.*

However, the Supreme Court has also addressed the limits of the "arising from" language which appears in both § 1252(b)(9) and § 1252(g) discussed above. *See Jennings*, 138 S. Ct. at 839–41. In *Jennings*, although the Court considered a separate issue, it specifically discussed how "the applicability of § 1252(b)(9) turns on whether the legal questions . . . 'aris[e] from' the actions taken" to remove aliens. *See id.* at 836. The Court explained:

It may be argued that . . . if those actions had never been taken, the aliens would not be in custody at all. But this expansive interpretation of § 1252(b)(9) would lead to staggering results. *Suppose, for example, that a detained alien wishes to assert a claim under Bivens* . . . based on allegedly inhumane conditions of confinement. . . . The 'questions of law and fact' in all those cases could be said to 'aris[e] from' actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. *But cramming judicial review of those questions into the review of final removal orders would be absurd.*

[. . .]

> For present purposes, *it is enough to note that respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined.*  Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.

*Id.* at 840–41 (emphases added).  Notably, this interpretation of "arising from" comports with the notion that the jurisdictional bars of § 1252 seek to guard prosecutorial discretion, and nothing more.

Here, Plaintiffs' claims are akin to the examples the Supreme Court listed in *Jennings*, and as mentioned, Kidd disclaims any challenge to the status of his removal. (*See* Opp'n Officers' Mot. 4–5.)  Thus, "§ 1252(b)(9) does not present a jurisdictional bar." *Jennings*, 138 S. Ct. at 841.  To the extent Defendants challenge subject-matter jurisdiction based on §§ 1252(a)(5) and 1252(b)(9), their Motions are **DENIED**.

### 3. 8 U.S.C. § 1252(f)(1)

Third, the Directors argue that 8 U.S.C. § 1252(f)(1) deprives the Court of subject-matter jurisdiction to grant class-wide injunctive relief.  (Gov.'s Mot. 15–16.)  That statute provides:

> [N]o court (other than the Supreme Court) shall have jurisdiction . . . to enjoin or restrain the operation of the provisions of part IV of this subchapter, . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).  In other words, § 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief against the operation of [8 U.S.C.] §§ 1221–1231, but specifies that this ban does not extend to individual cases."  *AADC*, 525 U.S. at 481–82.[6]  Significantly, "[§] 1252(f) prohibits only injunction of 'the operation of'

---

[6] Notably, the statute limits only injunctive relief, not declaratory relief. *See Nielsen v. Preap*, 139 S. Ct. 954, 962 (2019).  But the Coalitions request both declaratory and injunctive relief.  (FAC 52.)

the detention statutes, not injunction of a violation of the statutes." *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010).

Here, the Coalitions seek, among other things, injunctive relief. (FAC at 52.) The Directors argue that § 1252(f)(1) bars that request because an injunction requiring ICE agents to obtain judicial warrants before entering homes would impact the operation of 8 U.S.C. §§ 1226(a) and 1231(a).[7]   The Coalitions counter that § 1252(f)(1) does not apply, however, because Plaintiffs challenge ICE's alleged unconstitutional practices, not any specific provision of the INA.  The Court agrees with the Coalitions.  "Where . . . a petitioner seeks to enjoin conduct that allegedly is not even authorized by the [INA], the court is not enjoining the operation of part IV of subchapter II, and § 1252(f)(1) therefore is not implicated." *Ali v. Ashcroft*, 346 F.3d 873, 886 (9th Cir. 2003), *vacated on other grounds sub nom. Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005); *see also Rodriguez*, 591 F.3d at 1121 ("The requested injunction at issue does not seek to enjoin the operation of Part IV provisions . . . , but to enjoin conduct alleged not to be authorized by the proper operation of Part IV provisions."). Whereas Plaintiffs seek a declaration that Defendants violated the Constitution and the APA, as well as an injunction to prevent further violations, such requested relief does not target "the operation of" the INA.  Plaintiffs' attempt to enjoin "violation of" the INA through unconstitutional practices falls outside the injunction bar of § 1252(f)(1). Thus, to the extent the Directors challenge subject-matter jurisdiction based on § 1252(f)(1), their Motion is **DENIED**.

**B.    RULE 12(b)(6) ARGUMENTS – SUFFICIENCY OF CLAIMS**

Having determined that the Court has subject-matter jurisdiction over this action, the Court turns to Defendants' Rule 12(b)(6) arguments.

---

Even if § 1252(f)(1) deprived the Court of subject-matter jurisdiction to grant class-wide injunctive relief, the Coalitions' request for declaratory relief could not be properly dismissed on that basis.

[7] Those statutes authorize the arrest of noncitizens with an administrative warrant, 8 U.S.C. § 1226(a), and mandate that noncitizens be taken into custody for removal, 8 U.S.C. § 1231(a).

### 1.    Fourth Amendment Violation (Claims One & Seven)

The Fourth Amendment commands: "The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."   U.S. Const. amend. IV.   "The simple language of the Amendment applies equally to seizures of persons and to seizures of property" and contains "two separate clauses, the first protecting the basic right to be free from unreasonable searches and seizures and the second requiring that warrants be particular and supported by probable cause." *Payton v. New York*, 445 U.S. 573, 584, 586 (1980).  Absent consent or exigent circumstances, "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971)); *see Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").

With the first cause of action, the Coalitions allege that the Directors violate the Fourth Amendment by "hav[ing] a policy and practice of misrepresenting themselves as government agents with a different identity and/or purpose in order to . . . enter[] community members' homes and surrounding curtilage without a judicial warrant or permission, and with the intent to conduct warrantless immigration arrests."  (FAC ¶¶ 152-53.)  Similarly, with the seventh cause of action, Kidd alleges that the Officers violated his Fourth Amendment rights "by falsely claiming to be police officers conducting a criminal investigation and by concealing their true identity and purpose to arrest [him] for alleged immigration violations," thereby entering his home and its curtilage "without a warrant or valid consent."  (*Id.* ¶¶ 195–96.)

In defense, the Directors argue that there is nothing unconstitutional about their policies or practices because the Officers had an *administrative* arrest warrant for

Kidd, and such a warrant is sufficient for ICE agents to enter an individual's home to arrest them for removal. (Gov.'s Mot. 17–18.) Similarly, the Officers argue that they did not violate Kidd's Fourth Amendment rights because they had an administrative warrant for his arrest. (Officers' Mot. 19–21.) And with respect to Kidd, the Officers also argue that they obtained valid consent from his mother to enter his home. (*Id.* at 21.) Defendants' arguments are not convincing.

*First*, the Directors fail to meaningfully address the first cause of action to the extent they focus their arguments on Kidd's experiences only. (*See* Gov.'s Mot. 18.) The claim is brought by the Coalitions against the Directors for agency-wide policies and practices. (FAC ¶¶ 149–55.) Even if Defendants were correct that Kidd's rights were not violated because in his case, the Officers obtained an administrative warrant, such an argument could not provide grounds to dismiss the entire first cause of action.

*Second*, the administrative warrants upon which Defendants rely do not satisfy the Fourth Amendment's warrant requirement. To start, the Court acknowledges that a judicial "arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within," *Payton*, 445 U.S. at 603, and the Supreme Court has "opined that, consistent with the Fourth Amendment, immigration authorities may arrest individuals for civil immigration removal purposes pursuant to an administrative arrest warrant issued by an executive official, rather than by a judge," *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 825 (9th Cir. 2020) (discussing *Abel v. United States*, 362 U.S. 217, 230–34 (1960)).

However, in *Abel*, the case upon which Defendants primarily rely, the Supreme Court expressly *declined* to consider whether the administrative warrant there satisfied the requirements for "warrants" under the Fourth Amendment. *See Abel*, 362 U.S. at 230. And at the time of *Abel*, immigration laws required that "[a]pplication for a warrant [had to] be made to an *independent* responsible officer, the District Director of the I.N.S." *Id.* at 236–37 (emphasis added). This is no longer the regulatory

1   requirement.   There are now fifty-two immigration officer categories expressly

2   authorized to issue arrest warrants for immigration violations, as well as "[o]ther duly

3   authorized officers or employees of [DHS] or the United States who are delegated the

4   authority."   8 C.F.R.  § 287.5(e)(2).   Several cases since *Abel* emphasize the

5   importance of independent judgment in issuing warrants.  *See, e.g.*, *Shadwick v. City*

6   *of Tampa*, 407 U.S. 345, 350 (1972) ("The warrant traditionally has represented an

7   independent assurance that a search and arrest will not proceed without probable

8   cause . . . .  Thus, an issuing magistrate must . . . be neutral and detached."); *Coolidge*

9   *v. New Hampshire*, 403 U.S. 443, 449 (1971) ("[T]he whole point of the basic rule . . .

10  is that prosecutors and policemen simply cannot be asked to maintain the requisite

11  neutrality with regard to their own investigations.").   Because the administrative

12  warrants at issue here lack the independent assurance guaranteed by the Fourth

13  Amendment, they do not immunize the alleged conduct.

14       **Third**, the fact that the Officers obtained an administrative warrant for Kidd's

15  arrest—even if such a warrant were sufficient to enter a person's home—is not

16  dispositive at the pleading stage because Plaintiffs do not allege the Officers presented

17  an administrative warrant to gain entry to Kidd's home.  Rather, Plaintiffs allege that

18  the Officers tricked Kidd's mother into inviting them inside the home, and the obvious

19  inference to be drawn from these allegations is that they did not rely on any warrant,

20  administrative or otherwise, to gain such entry.  (*See* FAC ¶¶ 151–52, 195–96.)

21       "It is incumbent on the officer executing a search warrant to ensure the search is

22  lawfully authorized and lawfully conducted," *Groh v. Ramirez*, 540 U.S. 551, 563

23  (2004), and "[a]n otherwise lawful seizure can violate the Fourth Amendment if it is

24  executed in an unreasonable manner," *United States v. Alverez-Tejeda*, 491 F.3d 1013,

25  1016 (9th Cir. 2007).  Relevantly, "it may be unreasonable if officers fail entirely to

26  serve a sufficient warrant at any time." *United States v. Martinez-Garcia*, 397 F.3d

27  1205, 1212 n.3 (9th Cir. 2005); *see also United States v. Grubbs*, 457 U.S. 90, 101

28  (2006) (Souter, J., concurring) ("[R]egardless of any right on the owner's part,

showing an accurate warrant reliably assures the individual . . . of the lawful authority of the executing officer, his need to search, and the limits of his power to search." (internal quotation marks omitted)).

To be sure, "law enforcement may use deceit in certain circumstances." *States v. Ramirez*, 976 F.3d 946, 952 (9th Cir. 2020). But "access gained by a government agent, known to be such by the person with whom the agent is dealing, violates the fourth amendment's bar against unreasonable search and seizures if such entry was acquired by affirmative or deliberate misrepresentation of the nature of the government's investigation." *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir. 1984); *accord Ramirez*, 976 F.3d at 955 ("A ruse that reveals the officers' identity as law enforcement but misrepresents the purpose of their investigation so that officers can evade limitations on their authority raises serious Fourth Amendment concerns."). Similarly, "[a] ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry *cannot be justified by consent*." *United States v. Bosse*, 898 F.2d 113, 115 (9th Cir. 1990) (emphasis added). After all, "[i]f people can't trust the representations of government officials, the phrase 'I'm from the government and I'm here to help' will become even more terrifying." *Alvarez-Tejeda*, 491 F.3d at 1017.

Here, Plaintiffs adequately plead that the Directors employ unconstitutional policies or practices, and that the Officers violated Kidd's Fourth Amendment rights. For instance, they allege that "ICE rarely if ever obtains . . . a judicial warrant before conducting a home search or arrest operation." (FAC ¶ 27.) Even if administrative warrants could satisfy the Fourth Amendment's requirements, the alleged practice of "misrepresenting themselves as government agents with a different identity and/or purpose in order to persuade community members to allow [ICE agents] into their homes," (FAC ¶ 151), abuses the public trust in law enforcement authorities and "raises serious Fourth Amendment concerns," *Ramirez*, 976 F.3d at 955. The FAC is filled with numerous allegations of this conduct. (FAC ¶¶ 50–92.) Thus, even if ICE

agents had valid warrants in every situation, a fact that is not readily evident to this Court, Plaintiffs' allegations that Defendants routinely employ unreasonable ruses to gain entry to people's homes are sufficient to state a claim.   Accordingly, as to Plaintiffs' first cause of action, the Government's Motion is **DENIED**.[8]

### 2.   APA Violations (Claims Two & Three)

With the second and third causes of action, the Coalitions sue the Directors for regulatory and constitutional violations of the APA.   (FAC ¶¶ 156–77.)   Moving to dismiss these claims, the Directors argue that (1) Plaintiffs fail to allege a final agency action upon which to base either claim; (2) the regulations cited by Plaintiffs do not prohibit the alleged conduct; and (3) the alleged conduct does not violate the Fourth Amendment.   The Court addresses these unpersuasive arguments in turn.

#### a.   *Final Agency Action*

Agency action can be challenged under the APA if it is "reviewable by statute" or a "final agency action for which there is no other adequate remedy."   5 U.S.C. § 704; *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017).   In this context, finality requires satisfaction of two conditions: "First, the action must mark the consummation of the agency's decisionmaking process, and second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."   *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016) (internal quotations marks omitted).

"The finality element must be interpreted in a pragmatic and flexible manner." *Dietary Supplemental Coal., Inc. v. Sullivan*, 978 F.2d 560, 562 (9th Cir. 1992) (internal quotation marks omitted); *accord Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).   "Agency action need not be in writing to be final and judicially reviewable pursuant to the APA."   *Al Otro Lado v. McAleenan*, 394 F. Supp. 3d 1168, 1206 (S.D. Cal. 2019) (internal quotation marks and alterations omitted).   However, "[a] plaintiff may not simply attach a policy label to disparate

---

[8] The Court addresses Defendants' other challenges to Plaintiffs' seventh cause of action below.

agency practices or conduct." *Id.* ("The question is not whether a constellation of disparate but equally suspect practices may be distilled from the varying experiences of the class; rather, Plaintiffs must first identify the policy or custom they contend violates the law and then establish that the policy or custom is common to the class." (internal quotation marks and brackets omitted) (quoting *Lightfoot v. Dist. of Columbia*, 273 F.R.D. 314, 326 (D.D.C. 2011).

Here, the Coalitions allege that the Directors employ a policy of using ruses to gain entry to people's homes, thereby violating federal regulations, the agencies' own written guidance, and the Fourth Amendment.  (FAC ¶¶ 3–5, 27–29, 31–33, 47–48.) It is apparent from the allegations that such conduct is not merely a "constellation of disparate but equally suspect practices distilled from the varying experiences of the class," *McAleenan*, 394 F. Supp. 3d at 1206, but instead reflects an agency-wide practice or custom "from which legal consequences will flow," *Hawkes*, 136 S. Ct. at 1813.  Indeed, taking all allegations as true, "execution of [the alleged] policy has already imposed tangible legal consequences on those whose Fourth Amendment rights were violated.  *See Amadei v. Nielsen*, 348 F. Supp. 3d 145, 166 (E.D.N.Y. 2018) (finding finality where execution of a policy resulted in Fourth Amendment violations).  Accordingly, the Court concludes that Plaintiffs adequately allege the existence of a policy that constitutes a final agency action.  As to that issue, the Government's Motion is **DENIED**.

### b.  *Regulatory APA Violation (Claim Two)*

A court reviewing an APA claim must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Relevantly, an APA claim seeking such relief may be brought where an agency is alleged to have done "precisely what [its] regulations forbid [it] to do." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954); *accord Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (1990) ("Pursuant to the *Accardi* doctrine, an administrative

agency is required to adhere to its own internal operating procedures."); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").

In this case, the Coalitions allege that the agencies fail to comply with 8 C.F.R. § 287.8(f)(2), as well as internal agency guidelines—namely, a 2005 ICE memorandum and a 2010 DHS Enforcement and Removal Operations ("ERO") Handbook which provide guidance to officers in employing ruses.  (*See* FAC ¶¶ 33, 156–67.)[9]  In relevant part, 8 C.F.R. § 287.8(f)(2) states:

> An immigration officer may not enter into the non-public areas of . . . a residence including the curtilage of such residence . . . for the purpose of questioning the occupants or employees concerning their right to be or remain in the United States unless the officer has either a warrant or the consent of the owner or other person in control of the site to be inspected. . . .  If the immigration officer is denied access to conduct a site inspection, a warrant may be obtained.

8 C.F.R. § 287.8(f)(2).  This regulation applies to "[s]ite inspections," which are "enforcement activities undertaken to locate and identify aliens illegally in the United States . . . at locations where there is a reasonable suspicion, based on articulable facts, that such aliens are present."  8 C.F.R. § 287.8(f)(1).  And as for the 2005 memorandum and 2010 ERO Handbook, they instruct that an ICE agent intending to employ a ruse must "notify an agency or entity it plans to impersonate and provide it with an opportunity to object."  (*See* FAC ¶ 33.)

As to this regulatory claim, the Directors first contend that the Coalitions lack standing to enforce these regulations because they are not "within the zone of interests to be protected or regulated by the statute in question."  (Gov. Mot. 21–22 (quoting *Nw. Requirements Utils. v. F.E.R.C.*, 798 F.3d 796, 807 (9th Cir. 2015).)  However,

---

[9] A Request for Judicial Notice accompanied use of these documents.  (Request for Judicial Notice, ECF No. 46.)  The Court need not take judicial notice of these documents but may consider them nonetheless, as they are incorporated by reference in the FAC.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

the "zone of interests" test does not apply to agency regulations and instead governs only statutory challenges.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (stating that zone of interests formulation "applies to all statutorily created causes of action"); *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 18 n.2 (D.D.C. 2019) ("Defendants can point to no . . . instruction that the zone-of-interests doctrine applies . . . to a *regulation* promulgated by an agency."). Thus, the Directors' standing argument falls short.

The Directors also argue that Plaintiffs fail to allege any actual violations of the regulations or guidelines in question.  But that is not true.  Plaintiffs detail many examples of "questioning . . . concerning [the] right to be or remain in the United States," as officers asked for identification or proof of status.  (FAC ¶¶ 55, 62, 67, 70, 78, 82, 89, 91.)  And while the Directors suggest that ICE officers always possess valid warrants, that is a factual matter inappropriate for resolution at this stage of proceedings.  Further, any argument of consent is vitiated through the alleged use of an unreasonable ruse.  *See Ramirez*, 976 F.3d at 955; *Bosse*, 898 F.2d at 115.  Thus, the Coalitions plausibly allege that the agencies' policy violates 8 C.F.R. § 287.8(f)(2), which expressly limits questioning absent a warrant or consent.

Similarly, Plaintiffs allege that ICE fails to notify or obtain permission from law enforcement agencies they impersonate.  (*See, e.g.*, FAC ¶ 34.)  The Directors contend that Plaintiffs fail to allege violations of these guidelines because the allegations only establish that ICE officers use generic terms such as "police" rather than identifying a particular law enforcement agency such as "LAPD" or even "State police."  (Gov.'s Mot. 22.)  But again, that is not correct.  Plaintiffs do allege that the Officers identified themselves as detectives with local law enforcement.  (*See* FAC ¶¶ 8, 39, 53, 91.) Thus, the Coalitions also plausibly allege that the agencies' policy violates internal guidelines governing the use of ruses.  Accordingly, to the extent the Directors seek to dismiss the second cause of action, their Motion is **DENIED**.

### c.      Constitutional APA Violation (Claim Three)

An APA claim can also be brought against a final agency action that is "contrary to constitutional right, power, privilege, or immunity."   5 U.S.C. § 706(2)(B).  As discussed above, the Coalitions sufficiently plead a Fourth Amendment violation resulting from the agencies' policy.  Accordingly, to the extent the Directors seek to dismiss the third cause of action—i.e., the Coalitions' constitutional APA claim—their Motion is **DENIED**.

### 3.      Federal Tort Claims Act (Claims Four, Five, & Six)

Kidd brings the fourth, fifth, and sixth causes of action against the Government for damages under the FTCA.  (FAC ¶¶ 178–93.)  Under the FTCA, "[t]he United States [is] liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  "The FTCA specifies that the liability of the United States is to be determined 'in accordance with the law of the place where the [allegedly tortious] act or omission occurred.'"  *Rhoden v. United States*, 55 F.3d 428, 430 (9th Cir. 1995) (quoting 28 U.S.C. § 1346(b)).  In this case, Kidd alleges three FTCA claims based on trespass, false imprisonment, and negligence/NIED, respectively.  (FAC ¶¶ 178–93.)

### a.      FTCA – Trespass (Claim Four)

In California, a plaintiff alleging trespass must prove: "(1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission . . . ; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm."  *Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245, 262 (2017).  Here, the Government argues only that Kidd cannot satisfy the third element, lack of permission, because the Officers had a valid administrative warrant for Kidd's arrest. (*See* Gov. Mot. 23 (citing *Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1076 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1292 (2019) (stating "properly issued warrant" does not give rise to "trespass").)  But as already explained above, that is not what is

1   alleged, nor is the sufficiency of an administrative warrant at issue where the
2   execution of such a warrant was unreasonable in any event.  Thus, the Government
3   fails to raise a valid basis for dismissing Kidd's FTCA trespass claim, and to the
4   extent it seeks to dismiss that claim, the Government's Motion is **DENIED**.

5                    ***b.***   ***FTCA – False Imprisonment (Claim Five)***

6          To properly allege false arrest or false imprisonment, plaintiffs must show
7   (1) nonconsensual, intentional confinement and (2) lack of lawful privilege (3) for an
8   appreciable period of time.  *See Tekle v. United States*, 511 F.3d 839, 854 (9th Cir.
9   2007) (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485 (2000)); *see also*
10  *Watts v. Cnty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) ("A cause of action
11  for false imprisonment based on unlawful arrest will lie where there was an arrest
12  without process followed by imprisonment.").  Again, the Government argues that
13  Kidd cannot satisfy the element regarding lawful privilege, as the Officers had an
14  administrative warrant for Kidd's arrest and an outstanding final order of removal.
15  This time, the Government is correct.  While Kidd contests the "*manner* of his arrest,"
16  he admits "the government *had the authority* to arrest him."  (Opp'n Gov.'s Mot. 4, 24
17  (emphasis in original).)  The tort of false imprisonment protects against "the unlawful
18  violation of the personal liberty of another."  *Tekle*, 511 F.3d at 854.  While the
19  manner of the arrest may violate the Fourth Amendment, the validity of the arrest
20  itself is not contested by Kidd.  Thus, the pleadings do not sufficiently allege facts
21  giving rise to a claim for false arrest.  To the extent the Government seeks to dismiss
22  this claim, its Motion is **GRANTED**, and Kidd's fifth claim for false arrest is
23  **DISMISSED with prejudice**.[10]

24

25

---

26  [10] Reasons to deny leave to amend include "bad faith, undue delay, prejudice to the opposing party,
27  and/or futility."  *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilly
    Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)); *see also Foman v. Davis*,
28  371 U.S. 178, 182 (1962).  Here, the Court finds that amendment would be futile, as Kidd has
    already conceded he does not challenge whether Defendants had the right to arrest him.

### c. *FTCA – Negligence / NIED (Claim Six)*

"In California, the negligen[t] causing of emotional distress is not an independent tort but the tort of negligence." *Robinson v. United States*, 175 F. Supp. 2d 1215, 1224 (E.D. Cal. 2001). To prove negligence, plaintiffs must establish duty, breach of duty, causation, and damages. *Id.* Here, Kidd alleges "ICE officers owe a duty of care to community members . . . to not enter their property without consent" and that this duty was breached, causing various forms of harm. (FAC ¶¶ 189–91.) The Government argues that this negligence claim must be dismissed because the allegations make clear that the Officers' alleged breach of this duty was intentional, in which case the conduct falls under Kidd's trespass claim. (Gov.'s Mot. 24–25; Reply Gov.'s Mot. 12 (citing FAC ¶¶ 51–56).) The Court finds the Government's argument persuasive. Although it is true that a plaintiff could theoretically plead alternative theories of negligent and intentional trespass, the allegations here establish only a theory of intentional trespass or perhaps an intentional violation of Kidd's Fourth Amendment rights. *See generally Doody v. Knight*, No. D046208, 2006 WL 2673293, at *9 (Cal. Ct. App. Sept. 19, 2006) ("There was no negligent entry here . . . ."). Thus, the Government's Motion is **GRANTED** as to the sixth cause of action, which is **DISMISSED with prejudice**.[11]

### 4. *Bivens* Liability (Claim Seven)

Lastly, Kidd asserts the seventh cause of action against the Officers under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971),[12] for allegedly violating his Fourth Amendment rights. (FAC ¶¶ 194–99.) The Officers move to dismiss this claim on grounds that (1) the case presents a "new context" in which a

---

[11] Again, the Court finds that amendment would be futile, as "[a] party cannot amend pleadings to 'directly contradict an earlier assertion made in the same proceeding.'" *Airs Aromatics, LLC v. Op. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (brackets omitted) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1307 (9th Cir. 1990)).

[12] "In *Bivens*, the Supreme Court recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018).

1   *Bivens* claim is inapplicable; (2) the Officers enjoy qualified immunity; and (3) the

2   factual allegations are in any event insufficient.   (*See* Officers' Mot.)   The Court

3   addresses these arguments in turn.

4                    **a.      Applicability of <u>Bivens</u>**

5           First, the Officers argue that Kidd cannot recover under the implied right of

6   action recognized in *Bivens* because this case presents a "new context" distinguishable

7   from the context in which *Bivens* arose.   (Officers' Mot. 13–18.)   To determine

8   whether a *Bivens* claim is appropriate, courts consider (1) whether the claim arises in a

9   new context and (2) if so, whether special factors counsel hesitation in the absence of

10  affirmative action by Congress.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857, 1864 (2017).

11  As to the first factor, a claim arises in a new context whenever it is "different in a

12  meaningful way from previous Bivens cases decided by the Court."  *Id.* at 1864.  Such

13  meaningful differences may arise from "the rank of officers involved; the

14  constitutional right at issue; the generality or specificity of the official action; the

15  extent of judicial guidance as to how the officer should [have responded;] . . . the

16  statutory or other legal mandate under which the officer was operating; the risk of

17  disruptive intrusion . . . into the function[ ]of other branches;" or the presence of

18  factors not previously considered.  *Id.* at 1860.

19          Here, a *Bivens* claim is appropriate because the circumstances do not present a

20  "new context."    Indeed, the Ninth Circuit has allowed *Bivens* claims against

21  immigration enforcement officers in the past.  *See, e.g.*, *Boule v. Egbert*, 980 F.3d

22  1309, 1314 (9th Cir. 2020) (permitting "a conventional Fourth Amendment claim

23  based on actions by a rank-and-file border patrol agent"); *Chavez v. United States*, 683

24  F.3d 1102, 1106 (9th Cir. 2012) (same).  While those cases concerned border patrol

25  rather than ICE agents, such differences are not "meaningful" for purposes of the

26  *Abbasi* test.  *See also Prado v. Perez*, 451 F. Supp. 3d 306 (S.D.N.Y. 2020)

27  ("[F]ailure to provide plaintiffs a *Bivens* remedy . . . would hold ICE to a lower

28

standard of conduct than the FBI must adhere to in an identical set of circumstances without any compelling reason to do so.").

This case, like *Bivens*, "concern[s] an individual's Fourth Amendment right to be free from unreasonable searches and seizures." *See Ioane v. Hodges*, 939 F.3d 945, 952 (9th Cir. 2018). And there are no special factors counseling hesitation in allowing a *Bivens* action to proceed. *See Boule*, 900 F.3d at 1313. To the contrary, "[r]ecognizing a *Bivens* action here will produce widespread litigation only if ICE [officers] routinely [violate the Fourth Amendment]. And if this problem is indeed widespread, it demonstrates a dire need for deterrence, validating *Bivens*'s purpose." *Lanuza v. Love*, 899 F.3d 1019, 1033 (9th Cir. 2018). Accordingly, the Court concludes that Kidd may proceed with his *Bivens* claim, and to the extent the Officers seek to dismiss on this basis, their Motion is **DENIED**.

### b.  *Qualified Immunity*

The Officers next contend they are entitled to qualified immunity, insulating them from Kidd's claims. (Officers' Mot. 19.) "The doctrine [of qualified immunity] protects public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009))." "[A] right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (internal quotation marks and brackets omitted).

Here, as already discussed, Kidd sufficiently alleges that the Officers violated his Fourth Amendment rights. And surely, this right is clearly established. "Among constitutional rules, few are as well established, frequently applied, and familiar to police officers as the warrant requirement and its exceptions." *Bonivert v. City of Clarkston*, 883 F.3d 865, 873 (9th Cir. 2018). As such, "[t]his is not a case involving

'such an underdeveloped state of the law' that qualified immunity is necessary to protect the officers from the special unfairness that results when they are 'expected to predict the future course of constitutional law.'"  *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 617–18 (1999)).  Rather, a reasonable government agent would understand the need for a warrant or valid consent, not tainted by an unreasonable ruse, to enter and search a dwelling.  Thus, to the extent the Officers attempt to rely on a theory of qualified immunity, their Motion is **DENIED**.

### c.  *Sufficiency of Allegations*

Finally, the Officers argue that Kidd fails to establish his Fourth Amendment *Bivens* claim because he (1) does not specify how the Officers obtained invalid consent from his mother, and (2) does not identify any misconduct specifically by J.H., J.N., or O.M.  (Officers' Mot. 24.)  Neither argument is convincing.

First, Kidd *does* allege that: his mother "answered the door" to greet the Officers; "C.C. identified herself as a 'detective' with the local police"; "Kidd's mother was shocked and agreed to help . . . and ensure her family's safety"; and, "[o]nce inside the home," the Officers searched the entire home for Kidd.  (FAC ¶ 53.)  Thus, the Court finds that Kidd adequately alleges the Officers accessed the residence based on the alleged ruse.  Second, Kidd's failure to include allegations specific to J.H., J.N., or O.M.'s actions is not fatal to the claim, as "[a]n officer may be liable for the conduct of others where he or she has been an 'integral participant' in the alleged constitutional violation," *Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 926 (E.D. Cal. 2015) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)), and Kidd alleges that the Officers acted in concert with full knowledge of the established law, (FAC ¶¶ 196–97).  This is sufficient to put the Officers on notice of the claim against them.  Accordingly, to the extent the Officers seek to dismiss the seventh cause of action, their Motion is **DENIED**.

# V.   CONCLUSION

In summary, the Government's Motion is **GRANTED in part** and **DENIED in part**.   (ECF No. 44.)   The fifth and sixth causes of action are **DISMISSED with prejudice**.   The Officers' Motion is **DENIED**.   (ECF No. 49.)   Defendants shall file their Answer(s) to the surviving claims within fourteen (14) days of the date of this Order.   *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

April 26, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**