O

# United States District Court
# Central District of California

| | |
|---|---|
| OSNY SORTO-VASQUEZ KIDD et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO MAYORKAS,[1] United States Secretary of Homeland Security, in his official capacity et al., <br><br> Defendants. | Case № 2:20-cv-03512-ODW (JPRx) <br><br> **ORDER DENYING INDIVIDUAL OFFICER DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS [193]** |

## I.  INTRODUCTION

Plaintiffs Osny Sorto-Vasquez Kidd, the Inland Coalition for Immigrant Justice, and the Coalition for Humane Immigrant Rights allege that U.S. Immigration and Customs Enforcement ("ICE") officers violate the Fourth Amendment's prohibition on unreasonable searches and seizures in arresting and detaining removable immigrants in and near their own homes.  Plaintiffs bring claims against several officials for ICE and the U.S. Department of Homeland Security working in their official capacities; the United States of America; and individual ICE officers O.M., C.C., J.H., and J.N. (together, the "Officers").  As is relevant to the present Motion,

---

[1] *See* Fed. R. Civ. P. 25(d).

Kidd asserts claims against the Officers under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), for violating his Fourth Amendment rights in arresting and detaining him. (First Am. Compl. ("FAC") ¶¶ 194–199, ECF No. 38.)

The Officers previously moved to dismiss the claims asserted against them, including the *Bivens* claim. (Officers' Mot. Dismiss, ECF No. 49.) The Court denied their motion. (Order Den. Mot. Dismiss ("Order") 21, ECF No. 58.) More recently, on June 8, 2022, the United States Supreme Court issued its opinion in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), reversing a decision by the Ninth Circuit that a *Bivens* claim that arose in the border patrol context withstood summary judgment. The Officers now move for judgment on the pleadings, asserting that, under *Egbert*, the *Bivens* claim against them must now be dismissed. (Mot. J. Pleadings ("Motion" or "Mot."), ECF No. 193.) For the following reasons, the Court **DENIES** the Motion.[2]

## II. BACKGROUND

In this putative class action, Plaintiffs allege that ICE agents violate the Fourth Amendment's prohibition on unreasonable searches and seizures by (1) entering the curtilage of individuals' homes without a valid warrant and (2) obtaining consent or compliance by falsely presenting themselves as local police or probation officials. For the purpose of this Motion, the Court takes all of Plaintiffs' well-pleaded factual allegations as true. *See Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017).

The events involving Kidd took place in October 2018, when Kidd lived in a gated apartment complex. (FAC ¶¶ 51–52.) The Officers first gained access to Kidd's apartment complex by waiting outside until a different tenant opened the parking gate while exiting. (*Id.* ¶ 52.) Upon knocking on Kidd's door, the Officers were greeted by Kidd's mother. (*Id.* ¶ 53.) Officer C.C. told Kidd's mother that she was a "detective" with local police investigating a dangerous criminal using Kidd's

---

[2] After considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

address. (*Id.*) Kidd's mother was shocked and agreed to help the "detective." (*Id.*) Once the Officers were inside the home, they visited every room, banging on doors and requesting identification from Kidd's siblings, who at the time were between the ages of eleven and sixteen. (*Id.*)

Realizing that Kidd was absent, the Officers asked Kidd's mother to call him. (*Id.* ¶ 54.) Kidd answered his mother's call, and he could hear his siblings crying as his mother "worriedly stated that the police told her there was a dangerous criminal 'out to get' their family." (*Id.*) Kidd then spoke with C.C., who again identified herself as police and said she needed to speak with Kidd in person to guarantee that his family was safe from an extremely dangerous criminal. (*Id.*) Kidd agreed to meet with C.C. (*Id.*)

Two days later, Kidd received a call from C.C. asking him to come outside with a form of identification. (*Id.* ¶ 55.) Kidd exited his apartment complex to find the Officers waiting for him in tactical vests emblazoned with the word "POLICE." (*Id.*) After checking Kidd's identification, the Officers revealed that his family was not at risk and that they had invented the story to induce his compliance. (*Id.*) They admitted their true identities as ICE officers and arrested Kidd for removal. (*Id.*)

Plaintiffs identify nine other individuals with similar stories. In all the alleged incidents, ICE officers made some sort of misrepresentation in order to induce consent to enter an individual's home or induce them to step outside. (*Id.* ¶¶ 59–60, 62, 64–65, 67, 69 (impersonation of police), ¶¶ 76, 81, 84, 89, 90 (impersonation of probation officers).) As alleged, the community members ICE targeted were particularly susceptible to the probation officer ruse because those on probation are typically required by law to permit probation officers to access their homes and persons, leaving probationers with no choice but to comply with officers' requests. (*Id.* ¶ 71.)

On April 16, 2020, Plaintiffs filed their Complaint, and on October 27, 2020, they filed the operative First Amended Complaint. (Compl., ECF No. 1; FAC.) The Officers filed a motion to dismiss, and the remaining Defendants filed a separate

motion to dismiss, with both motions brought pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  The Court denied the former motion and granted in part and denied in part the latter motion.  (Order 2.)  Defendants proceeded to answer.  (Answers, ECF Nos. 66, 67.)

On September 12, 2022, the Officers filed the Motion now under consideration.  The parties briefed the Motion, (Opp'n, ECF No. 196; Reply, ECF No. 200), and the Officers later filed two Notices of Supplemental Authority, (Notice Suppl. Authority, ECF No. 207; Second Notice Suppl. Authority, ECF No. 239).

### III.   LEGAL STANDARD

After the pleadings are closed, but within such time as to not delay the trial, any party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  The standard applied to a Rule 12(c) motion is essentially the same as that applied to Rule 12(b)(6) motions, *Gregg*, 870 F.3d at 887; a judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations omitted)); *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

When ruling on a motion for judgment on the pleadings, a court should construe the facts in the complaint in the light most favorable to the plaintiff, and the movant must clearly establish that no material issue of fact remains to be resolved. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  However, "conclusory allegations without more are insufficient" to withstand a motion for judgment on the pleadings.  *Id.*

If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter a judgment.  *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).  Leave to amend may

be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) ("[Leave to amend] is properly denied . . . if amendment would be futile.").

### IV. DISCUSSION

The starting point for this analysis is this Court's pre-*Egbert* determination that Plaintiffs state a valid *Bivens* claim against the Officers. In denying the Officers' motion to dismiss, the Court found that this case, which involves claims against immigration officers for unreasonable searches and seizures committed in and around individuals' homes, was not "different in a meaningful way from previous Bivens cases decided by the Court." (Order 21 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017)).) The Officers now ask this Court to revisit its finding in light of the Supreme Court's opinion in *Egbert*.

The Officers' request implicates the law of the case doctrine, which applies whenever a court is asked to revisit a decision on a rule of law previously made by that same court or a higher court in the same case. *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014). The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618 (1983). "Law of the case rules are founded upon 'the sound public policy that litigation must come to an end. . . . [A] court cannot efficiently perform its duty to provide expeditious justice to all if a question once considered and decided by it were to be litigated anew in the same case . . . .'" *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (quoting *Kimball v. Callahan*, 590 F.2d 768, 771 (9th Cir. 1979)), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012). The law of the case doctrine "also serves to maintain consistency." *Id.* (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and*

*Procedure* § 4478 (1981)).  The doctrine "is not a limitation on a tribunal's power, but rather a guide to discretion."  *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

Here, given that the Court's prior finding was based on the same pleading and legal standard that are presently at issue, that finding—that the First Amended Complaint states a legally valid *Bivens* claim against the Officers—constitutes law of the case.  Even so, a court may depart from the law of the case when: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."  *Gonzalez*, 677 F.3d at 389 n.4; *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002). Some cases articulate the first prong as two separate, independently sufficient prongs—that is, they replace the "and" in prong (1) with "or"—and further recognize an additional catch-all prong of "other changed circumstances."  *Alexander*, 106 F.3d at 876. The Ninth Circuit has recognized this apparent split of authority but has declined to rule on it.  *United States ex rel. Godecke v. Kinetic Concepts, Inc.*, No. 2:08-cv-06403-GHK (AGRx), 2016 WL 11673222, at *4 n.7 (C.D. Cal. Nov. 16, 2016)

Of particular relevance here, intervening controlling authority makes reconsideration appropriate only if the new case is "a binding 'opinion directly on point and irreconcilable with the earlier decision in the period between the first and second decisions of the lower court.'"  *See Godecke*, 2016 WL 11673222, at *5 (quoting 3-30 *Moore's Manual—Federal Practice & Procedure* § 30.31).  By contrast, if an intervening, binding opinion merely "'clarifie[s] and refine[s] the law,' and would not have changed the result of the original decision," law of the case applies, and the original decision remains unchanged.  *Id.* (quoting *Merritt v. Mackey*, 932 F.2d 1317, 1321 (9th Cir. 1991)).

The Court's denial of the present Motion rests on two separate but related bases. First, the Officers fail in their burden of presenting a persuasive argument demonstrating that *Egbert* is "irreconcilable" with this Court's prior Order. *See id.* Second, the Court's own independent analysis confirms that *Egbert* did not fundamentally alter the law of *Bivens* in a way that renders Plaintiffs' *Bivens* claim inviable in this case.

### A.     Officer Defendants' Burden

First, the Officers' Motion fails because it is facially apparent that the Court's prior Order, and specifically the ruling that the *Bivens* claim in the FAC is viable, constitutes law of the case, and the Officers do not carry their burden of demonstrating that an exception to the law of the case doctrine applies. As the Officers are the ones seeking dismissal of claims, the Officers bear the burden of persuasion; that is, they must present arguments demonstrating that dismissal is appropriate in spite of the law of the case. *Mil-Ray v. EVP Int'l, LLC*, No. 3:19-cv-00944-YY, 2021 WL 2903225, at *1 (D. Ore. July 8, 2021) (noting consensus among federal courts that, "Federal Rule 12(b)(6) places th[e] burden [of persuasion] on the moving party" (alterations in original) (quoting *Cohen v. Bd. of Trs. of Univ. of D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016))); *cf. Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 856 (7th Cir. 2001) ("[T]hat earlier ruling was the law of the case, and if the plaintiffs wanted us to depart from it they had to acknowledge the ruling and give reasons for our abandoning it. This they had failed to do . . . .").

Here, the Officers fail in this burden. Their moving papers are devoid of any reference whatsoever to the Court's prior Order or the law of the case doctrine. (*See generally* Mot.) Moreover, though Plaintiffs devote much of their Opposition brief to the law of the case issue, Defendants make short shrift of the issue in the Reply. While Defendants argue forcefully and at length that "*Bivens* law patently changed with *Egbert*," (Reply 3), they do not complete the argument by demonstrating that *Egbert* changed *Bivens* law in a way that is irreconcilable with this Court's prior

Case 2:20-cv-03512-ODW-JPR   Document 298   Filed 12/12/22   Page 8 of 14   Page ID
#:11905

opinion. Their only reference to the law of the case and any potential exceptions is their assertion that the doctrine "does not permit, much less require, district courts to ignore intervening – and indeed watershed – Supreme Court decisions defining the law at issue." (*Id.*) Strictly and technically speaking, this assertion is not an accurate statement of the law. The law of the case doctrine indeed either permits or requires trial courts to "ignore" intervening Supreme Court decisions defining the law at issue when the Supreme Court decision <u>is reconcilable</u> with the trial court's prior order. *Godecke*, 2016 WL 11673222, at *5. Here, the Officers simply make no attempt to explain how *Egbert* is irreconcilable with this Court's Order. Instead, they present the same arguments they presented in favor of their previous unsuccessful motion to dismiss without ever pointing out exactly (1) what part of *Egbert* constitutes the controlling change in the law, and (2) what part of the Court's prior holding is rendered wrong by that change. Accordingly, the Officers' argument is incomplete, and they fail in their burden of demonstrating dismissal is appropriate.

**B.   Independent Analysis**

Moreover, the Court's own independent analysis of *Egbert* and the *Bivens* claim in this case confirms that *Egbert* is not irreconcilable with this Court's prior decision—in other words, that this Court's prior decision remains correct, including under *Egbert*. The Court reaches this conclusion in two steps: first, by observing that *Egbert* did not fundamentally alter the two-step *Bivens* test, and second, by concluding that, whatever incremental changes *Egbert* may have made to *Bivens* law, those changes do not remove the claim in the present case from the sphere of viable *Bivens* claims.

*1.*   Egbert *did not fundamentally alter the two-step* Bivens *test.*

Factually, *Egbert* involved the aptly named Smuggler's Inn, a bed-and-breakfast situated a few feet from the U.S.-Canada border, and its enterprising proprietor, Mr. Boule. 142 S. Ct. at 1800. Boule would sometimes act as a paid confidential informant for U.S. Border Patrol by providing the agency with

information about persons of interest Boule was scheduled to lodge or transport. *Id.* at 1800–01. On one occasion, Boule informed Border Patrol Agent Erik Egbert of a certain Turkish national who had arrived in the United States via New York and was staying at the Smuggler's Inn for a night. *Id.* at 1801. Based on these facts, Egbert grew suspicious of possible immigration violations. *Id.* He waited in his patrol vehicle outside the inn in anticipation of the Turkish national's arrival. *Id.* When the Turkish national arrived in a SUV, Egbert followed the SUV onto the property. Then:

> Agent Egbert exited his patrol vehicle and approached the car. Boule's employee also exited the car; the guest remained inside. From the front porch of his inn, Boule asked Agent Egbert to leave. When Agent Egbert refused, Boule stepped off the porch, positioned himself between Agent Egbert and the vehicle, and explained that the person in the car was a guest who had come from New York to Seattle and who had been through security at the airport. Boule again asked Agent Egbert to leave. Agent Egbert grabbed Boule by his chest, lifted him up, and shoved him against the vehicle and then threw him to the ground. Boule landed on his hip and shoulder.
>
> Agent Egbert opened the car door and asked the guest about his immigration status. . . . After concluding that the guest was lawfully in the country (just as Boule had previously informed Agent Egbert), the three officers departed. Boule later sought medical treatment for his injuries.

*Id.* at 1811–12 (Sotomayor, J., concurring in part and dissenting in part). The Supreme Court found that these facts presented reasons to hesitate before recognizing a *Bivens* cause of action against Egbert for two reasons: (1) "Congress is better positioned to create remedies in the border-security context," and (2) "the Government has already provided alternative remedies that protect plaintiffs like Boule." *Id.* at 1804. The Supreme Court went on to discuss each of these two points in detail, identifying each as an "independent reason" foreclosing a *Bivens* claim. *Id.* Reason (1) was based on the "potential" for "harmful or inappropriate" consequences of "judicial intrusion" into the field of border security, *id.* at 1805, and reason (2)

arose from the fact that the grievance Boule filed against Agent Egbert "secured adequate deterrence and afforded Boule an alternative remedy," *id.* at 1807.

Contrary to the Officers' suggestions, this Court does not read *Egbert* as constituting a "sea change" in *Bivens* jurisprudence. (*See* Mot. 4.) Both before and after *Egbert*, courts engage in a two-step inquiry to determine if a *Bivens* claim is viable. First, courts ask whether the case presents "a new *Bivens* context," that is, whether it "is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859–60; *see id.* at 1865 (noting "trivial" differences do not "suffice to create a new Bivens context"). If the case does not present a new context, the inquiry ends, and the *Bivens* claim is viable. If, on the other hand, the case does present a new context, courts then ask whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1858). This "inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action." *Id.* at 1805. Instead, "[a] court faces only one question: whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1858).

*Egbert* did not alter the structure of this two-step inquiry. After describing the two steps in some detail, the Court in *Egbert* merely observes that "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1803. This Court does not read this language as fundamentally altering the *Bivens* inquiry because the language does not suggest any intent to uproot five decades of *Bivens* jurisprudence. A Court with such an intent would undoubtedly use stronger language in supplanting a well-used rule with a new one. Moreover, the choice of the word "often" plainly acknowledges that there are some cases where the

*Bivens* analysis will *not* resolve to this single question; in those cases, the well-known two-part inquiry would continue to apply.

The remainder of the *Egbert* opinion dispels any remaining doubt about this conclusion by acknowledging and proceeding according to the two-step inquiry. At the outset of the analysis section (section III), the Court states that "[t]he Court of Appeals conceded that Boule's Fourth Amendment claim presented a new context for *Bivens* purposes, yet it concluded there was no reason to hesitate before recognizing a cause of action against Agent Egbert. That conclusion was incorrect for two independent reasons." *Id.* at 1804 (citation omitted). The remainder of the Fourth Amendment part of the opinion focuses on those two reasons. By acknowledging and applying the two-step inquiry, the Supreme Court reinforced that the two-step inquiry remains the appropriate approach to *Bivens* analysis. *See Mejia v. Miller*, 53 F.4th 501, 504 (9th Cir. 2022) (describing "longstanding" two-part framework for analyzing *Bivens* claims).

   2. *To the extent* Egbert *refined the law of* Bivens*, the refinements do not alter the result in the present case.*

Rather than fundamentally altering *Bivens* jurisprudence, *Egbert* appears to provide courts with two special factors to consider in determining whether to hesitate to recognize a *Bivens* cause of action. First, in discussing why Congress is better positioned to create remedies in the border-security context, the Supreme Court may have narrowed the field of viable *Bivens* claims by noting that courts are "plainly" not "competent to authorize a damages action . . . against Border Patrol agents generally." 142 S. Ct. at 1806. Second, in discussing how the government already provides alternative remedies that protect plaintiffs like Boule, the Supreme Court may have expanded the sort of alternative remedies whose availability forecloses *Bivens* relief. *Id.* at 1806–07.

Regardless, this Court need not and does not expressly decide whether *Egbert* changed *Bivens* law in these ways, because, even if it did, these changes do not bear

on the present case or on the reasoning supporting the Court's prior ruling on the issue. This Court's previous finding that Plaintiffs' *Bivens* claim is viable was fundamentally based on the conclusion that this case does not present a new *Bivens* context. (Order 21 ("Here, a Bivens claim is appropriate because the circumstances do not present a 'new context.'").) That reasoning remains undisturbed by *Egbert* for the simple reason that *Egbert* was not a case about the context inquiry (step one of the *Bivens* analysis); instead, it was a case about the special factors inquiry (step two of the *Bivens* analysis). *See Mejia*, 53 F.4th at 505 ("*Egbert* reiterates the longstanding first step of the *Bivens*, question, but clarifie[s] . . . the second step . . . .").

As mentioned above, the Supreme Court noted only briefly that the Ninth Circuit conceded Boule's case presented a new *Bivens* context; it then proceeded straight to the special factors analysis. *Egbert*, 142 S. Ct. at 1804. It devoted no substantive analysis to the context question. *Id.* Moreover, it is clear that the remaining Fourth Amendment analysis—sections III.A.1 and 2 of the opinion—is a special factors analysis, not a context analysis. *See id.* at 1804–07. Throughout these two sections, the Court confirms its focus on the special factors in concluding that "the Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate," *id.* at 1805, and that "Congress has provided alternative remedies for aggrieved parties in Boule's position that independently foreclose a *Bivens* action here," *id.* at 1806. This is the language of a Court grappling with whether special considerations counsel hesitation in recognizing a *Bivens* claim; this is not the language of a Court comparing the facts of the case before it to prior *Bivens* cases to determine whether the context is new. This conclusion is confirmed by the sharp contrast between the *Egbert* Court's language and that of opinions that are undoubtedly focused on the step-one context inquiry, such as *Ziglar*. *Compare id.*, *with Ziglar*, 137 S. Ct. at 1859 ("The proper test for determining whether a case presents a new *Bivens* context is as follows.").

Thus, to the extent *Egbert* changed the law of *Bivens*, it did so only with respect to part two of the *Bivens* inquiry, the special-factors analysis. *Egbert* is not irreconcilable with this Court's prior holding because this Court's holding rested independently on its finding with respect to part one of the *Bivens* inquiry, that this case does not present a new context. (*See* Order 21); *cf. Mejia*, 53 F.4th at 504 (emphasizing "the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose" (quoting *Abassi*, 137 S. Ct. 1843, 1857 (2017))). *Egbert* does not render this finding incorrect or outdated because *Egbert* did not change the law regarding what constitutes a new *Bivens* context. And while this Court additionally noted that no special factors counseled hesitation, it need not have reached this second step, as its finding of no new context was sufficient to end the inquiry.³ *See Mejia*, 53 F.4th at 504 (describing "longstanding framework" under which "courts . . . first . . . determine whether the *Bivens* claim arose in a 'new context'").

C.  **Supplemental Authority**

On October 17, 2022, the Officers filed a Notice of Supplemental Authority, informing the Court of *Monroe v. Kirby*, No. 2:21-cv-00017-GW (PDx) ("*Monroe*") (C.D. Cal. filed Jan. 4, 2021), a case decided by a different court in the Central District of California. However, *Monroe* adds nothing meaningful to the analysis here and in any event is nonbinding. In *Monroe*, the court found a new context because the incident in question happened at a Veterans Administration hospital rather than in or around an individual's home. (*See* Tentative Ruling on Federal Defs.' Mot. J. Pleadings ("Tentative Ruling") at 5, *Monroe* (C.D. Cal. Oct. 11, 2022), ECF No. 207-1; Order Adopting Tentative Ruling at 1, *Monroe* (C.D. Cal. Oct. 13, 2022), ECF No. 207-2.) This difference was key to the court's holding, and the court further noted that the result would have been the same "even pre-*Egbert*." (Tentative

---

³ For these same reasons, this Court's previous citation to the Ninth Circuit's now-reversed opinion in *Boule v. Egbert*, 980 F.3d 1309, 1314 (9th Cir. 2020), for support that the claim here does not present a new context, does not make this Court's prior conclusion irreconcilable with *Egbert*.

Ruling 5.) The case before this Court is inapposite to *Monroe* because the incidents in question here all happened in or around individuals' homes. Moreover, and in any case, even if *Monroe* interpreted *Egbert* in a way that aided this Court's analysis, the law of the case doctrine does not require district courts to revisit their own rulings merely because a fellow district court issues an opinion, no matter how potentially relevant or helpful the opinion to the case at hand. *See Godecke*, 2016 WL 11673222, at *5.

Finally, both parties argue that the Ninth Circuit's very recent opinion in *Mejia v. Miller* supports their respective positions. (Second Notice Suppl. Authority; Opp'n Second Notice Suppl. Authority, ECF No. 271.) Regardless of whose position *Mejia* supports, the Court has taken care to ensure its own interpretation of *Egbert* is consistent with the Ninth Circuit's recent guidance in *Mejia*. Beyond that, *Mejia* cannot further bind this Court in this case, because it is factually inapposite in at least two senses. *Mejia* involved Bureau of Land Management officers, and, like in *Monroe*, none of the events in question occurred in or near the plaintiff's home. 53 F.4th at 506.

## V. CONCLUSION

The Officers do not show, and the Court does not find, that *Egbert* is irreconcilable with this Court's prior finding that Plaintiffs' *Bivens* claim is viable. Thus, the Officers' Motion for Judgment on the Pleadings is **DENIED**. (ECF No. 193.)

**IT IS SO ORDERED.**

December 12, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**