JOSEPH T. MCNALLY
Attorney for Defendants,
Acting Under Authority Conferred by 28 U.S.C. § 515
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL LA SCALA (Cal. Bar No,186939)
ADAM GAFNI (Cal. Bar No. 2330045)
CHRISTINA MARQUEZ (Cal. Bar No. 305301)
JONATHAN R. BLAKEY (Cal. Bar No. 333584)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-2083
        E-mail: Paul.LaScala@usdoj.gov
                Adam.Gafni@usdoj.gov
                Christina.Marquez@usdoj.gov
                Jonathan.Blakey@usdoj.gov

Attorneys for Official Capacity
Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OSNY SORTO-VASQUEZ KIDD, et al., | No. CV 20-3512-ODW (JPRx) |
| Plaintiffs, | **OFFICIAL CAPACITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE CLASS CLAIMS** |
| v. | |
| ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security, in his official capacity, et al., | Hearing Date:    January 8, 2024<br>Hearing Time:    1:30 p.m.<br>Ctrm:              5D<br>Hon.              Otis D. Wright, II |
| Defendants. | |

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                              PAGE

TABLE OF AUTHORITIES .................................................................................ii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' KNOCK AND TALK CLAIMS ...............................................v

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I.     INTRODUCTION ......................................................................................1

II.    STATEMENT OF FACTS .........................................................................2

       A.    Structure And Mission of ICE Field Operations Teams .............2

       B.    ICE Imposes a Robust Training Regimen for Its Field Officers To Help Ensure Compliance With The Fourth Amendment ............3

       C.    ICE's Policy and Training on Knock and Talks .........................3

       D.    ICE's Policy and Training on the Authority of Administrative Warrants ..........................................................................................4

       E.    The Los Angeles Field Office's Use of Knock and Talks ...........4

III.   ARGUMENT ..............................................................................................4

       A.    Plaintiffs Cannot Establish That ICE Uses System-Wide Practices and Procedures Related to Knock and Talks That Violate the Fourth Amendment. ....................................................................5

             1.    ICE Training on Knock and Talks is Consistent with the Fourth Amendment. ..............................................................5

             2.    The Constitutionality of ICE Officer Entries onto Curtilage Hinges on Each Officer's Actions in the Context and Cannot be the Basis for Class-wide Relief. .......................................6

             3.    ICE Field Officers' Execution of an Administrative Warrant Following a Consensual Encounter is Not a Fourth Amendment Violation. .........................................................8

       B.    ICE's Practice of Knock and Talks Does Not Violate the APA. ...............11

       C.    Plaintiffs Also Cannot Establish That the Same Fourth Amendment Rights Apply To All Members Of the Certified Class. ...........................12

       D.    The Court Lacks the Authority to Order Class-wide Injunctive Relief In This Immigration Enforcement Case. ..............................14

       E.    Class-Wide Declaratory Relief Is Also Unavailable. ...................17

IV.    CONCLUSION ........................................................................................18

# TABLE OF AUTHORITIES

DESCRIPTION                                                                    PAGE

**Cases**

*Al Otro Lado, Inc. v. Mayorkas*,
   2022 WL 3135914 (S.D. Cal.Aug.5, 2022) ............................................... 19

*Carlson v. Landon*,
   342 U.S. 524 (1952) ............................................................................... 15

*Florida v. Jardines*,
   569 U.S. 1 (2013) ................................................................................... 12

*Garland v. Aleman Gonzalez*,
   142 S. Ct. 2057 (2022) ..................................................................... 18, 19

*Gonzalez v. ICE*,
   975 F.3d 788 (9th Cir. 2020) ................................................................ 15

*Immigrant Defenders Law Center v. Mayorkas*,
   2023 WL 3149243 (C.D. Cal. March 15, 2023) .................................... 19

*Ixchop-Perez v. Barr*,
   821 Fed. Appx. 690 (9th Cir. 2020) ................................................. 10, 9

*Kentucky v. King*,
   563 U.S. 452 (2011) ............................................................................... 12

*London v. Plasencia*,
   459 U.S. 21 (1982) ........................................................................... 14, 15

*Los Angeles County Bar Ass'n v. Eu*,
   979 F.2d 697 (9th Cir. 1992) ........................................................... 19, 20

*Matias Rauda v. Wilkinson*,
   844 Fed. Appx. 945 (9th Cir. 2021) ..................................................... 15

*Nielsen v. Preap*,
   139 S. Ct. 954 (2019) ............................................................................ 19

*Ortiz Becerra v. Garland*,
   851 Fed. Appx. 739 (9th Cir. 2021) ............................................. 10, 11, 9

*Samson v. California*,
   547 U.S. 843 (2006) ............................................................................... 18

*Tun-Cos v. Perrotte,*
   922 F.3d 514 (4th Cir. 2022) ...................................................................... 15

*U.S. v. Lundin,*
   817 F.3d 1151 (9th Cir. 2016) .................................................................... 12

*U.S. v. Perea-Rey,*
   680 F.3d 1179 (9th Cir. 2012) ............................................................ 12, 13

*United States v. Barona,*
   56 F.3d 1087 (9th Cir. 1995) ................................................................ 17, 18

*United States v. Bosse,*
   898 F.2d 113 (9th Cir. 1990) (per curiam) .............................................. 10

*United States v. Estrella,*
   ---F.4th---, 2023 WL 3831806 (9th Cir. 2023) ...................................... 18

*United States v. King,*
   736 F.3d 805 (9th Cir. 2013) .................................................................... 18

*United States v. Verdudo-Urquidez,*
   494 U.S. 259 (1990) .................................................................................. 17

*Wal-Mart, Inc. v. Dukes,*
   564 U.S. 338 (2011) ........................................................................... *passim*

*Wit v. United Behavioral Health,*
   58 F.4th 1080 (9th Cir. 2023) .................................................................. 17

**Statutes**

8 U.S.C. § 1226 .............................................................................................. 14, 19

8 U.S.C. § 1226(a) ............................................................................................... 14

8 U.S.C. § 1231 .............................................................................................. 14, 19

8 U.S.C. § 1231(a) ............................................................................................... 19

8 U.S.C. § 1252 (f)(1) ......................................................................................... 19

8 U.S.C. § 1357 .............................................................................................. 14, 19

8 U.S.C. § 1357(a)(2) .................................................................................. 14, 15, 5

28 U.S.C. § 515 ........................................................................................... 1, 21, vi

28 U.S.C. § 2072(b) ............................................................................................. 17

**Federal Rules**

Federal Rule of Civil Procedure 23(a) ................................................................ 8

Fed. R. Civ. P. 56 ................................................................................................ vi

**Federal Code of Regulations**

8 C.F.R. § 287.8(f)(2) ......................................................................................... 10

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' KNOCK AND TALK CLAIMS

PLEASE TAKE NOTICE that, on January 8, 2024 at 1:30 p.m. or as soon thereafter as they may be heard, the Official Capacity Defendants will, and hereby do, move this Court for an order granting summary judgment in their favor pursuant to Fed. R. Civ. P. 56. This motion will be made in the First Street Federal Courthouse before the Honorable Otis D. Wright, II, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the declarations of Christina Marquez, A.P., C.M., Request for Judicial Notice, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on June 13, 2023 and November 1, 2023.

Dated: November 20, 2023                  Respectfully submitted,

JOSEPH T. MCNALLY
Attorney for Defendants,
Acting Under Authority Conferred by 28
U.S.C. § 515
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation
Section


/s/ *Christina Marquez*
PAUL B. LA SCALA
CHRISTINA MARQUEZ
JONATHAN RUSSELL BLAKEY
ADAM GAFNI
Assistant United States Attorney

Attorneys for Defendants

v

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Organizational Plaintiffs Inland Coalition for Immigrant Justice and the Coalition for Humane Immigrant Rights seek class-wide declaratory relief finding that various actions, policies, and practices by which ICE officers allegedly enter residences or curtilage to arrest occupants categorically violate the Fourth Amendment and the Administrative Procedure Act. Plaintiffs also seek class-wide injunctive relief to enjoin Defendants from engaging in the challenged actions, policies, and practices in the future. Defendants now move for summary judgment against these claims.

This Court previously certified two classes comprised of approximately 18 million people residing in ICE's Los Angeles area of responsibility (AOR). The claims related to the first class—the "Ruse Class"— have been stayed because the parties are in agreement on most basic terms of a settlement as to that class and believe they will be able to finalize a proposed agreement by following their process. Dkt. 485. Accordingly, only the second class of claims—the "Knock and Talk Class"—are at issue in this motion. Pursuant to the Court's certification order [Dkt. 335], the "Knock and Talk Class" includes all individuals residing at a home in the Los Angeles AOR where ICE has conducted or will conduct a warrantless civil immigration enforcement operation using a "knock and talk" wherein officers approach the residence and knock on the door to question the occupants.

Plaintiffs' "Knock and Talk" claims fail as a matter of law for several reasons:

*First*, ICE's training on knock and talks is consistent with the Fourth Amendment.

*Second,* this court does not have jurisdiction to entertain requests for class-wide injunctive relief involving certain provisions of the Immigration and Nationality Act (INA). *See Garland v. Aleman-Gonzalez*, 142 S. Ct. 2057 (2022).

*Third*, such claims are not subject to class-wide relief because ICE's knock and talk practices in the field relative to an arrest operation are inherently fact intensive, and assessing their constitutionality requires examination of each officer's actions under the

1

specific circumstances presented. In this Court's order granting class certification, this Court acknowledged that it could not issue class-wide relief as to Defendants' disparate "actions" on a general level. ECF No. 335 at 19.

*Fourth*, ICE's execution of an arrest pursuant to an administrative warrant following a consensual encounter does not violate the Fourth Amendment.

*Fifth*, to the extent Plaintiffs argue that administrative warrants should not be considered in issuing declaratory relief regarding "Knock and Talk" encounters, there would be nothing to resolve at a class-wide level since any such declaratory relief would have no application to future ICE arrests made pursuant to an administrative warrant.

*Lastly*, Plaintiffs similarly cannot establish claims under the Administrative Procedures Act because they fail to establish a final agency action and a systemwide practice of violating 8 C.F.R. § 287.8(f)(2).

Because Plaintiffs cannot meet their burden to show entitlement to class-wide relief, Defendants respectfully request that summary judgment be granted in their favor.

## II.    STATEMENT OF FACTS

### A.    Structure And Mission of ICE Field Operations Teams

Pro-CAP (Proactive Criminal Apprehension Program) and fugitive operations teams are the only teams that conduct ICE field operations. SUF 1. The mission of both teams is to apprehend removable noncitizens, prioritizing those with criminal records, final orders of removal, or those who present a public safety threat. SUF 2-3. Both teams typically conduct operations in the field pursuant to administrative warrants. SUF 4. And both teams have the same supervisory structure, which consists of a Field Office Director (FOD), Deputy Field Office Directors (DFOD), Assistant Field Office Director (AFOD), Supervisory Deportation Defense Officers (SDDOs), and Deportation Officers (DOs). SUF 5.

The Los Angeles Field Office currently consists of over 200 officers who are responsible for the Los Angeles AOR, which spans seven counties and contains a population of over 18 million people.  SUF 6-8.

**B.** **ICE Imposes a Robust Training Regimen for Its Field Officers To Help Ensure Compliance With The Fourth Amendment**

To become a full-fledged field officer, a prospective ICE officer must complete a 16–20-week Basic Immigration Enforcement Training Program at the Federal Law Enforcement Training Center (FLETC), also known as the academy. SUF 9. Field officers also receive bi-annual Fourth Amendment training administered by ICE's local Office of Principal Legal Advisor (OPLA). SUF 10-11. The materials and content presented in such trainings are generated by ICE headquarters in Washington, D.C. SUF 11. The bi-annual training addresses Fourth Amendment compliance topics, including knock-and-talks, curtilage, and consent. SUF 12. The training "often will be tailored by local OPLA to address situations that they may have in their specific circuit." SUF 13. Further, when there is a headquarters-driven operation, the Los Angeles Field Office conducts another Fourth Amendment training for all participating officers to ensure full understanding of ICE's policies and the agency's expectations concerning the Fourth Amendment. SUF 14.

**C.** **ICE's Policy and Training on Knock and Talks**

ICE defines knock and talks as the practice of walking up to the door of a residence to speak with an occupant. SUF 15. Field officers are trained that knock and talks may only take place during daytime hours— from 6 a.m. to 9 p.m. SUF 16. Field officers are also trained that they may enter the curtilage of a residence to conduct a knock and talk under the theory of an implied license that allows them to walk across curtilage to speak to the occupants if the general public (e.g., a mailman, a political canvasser, or a delivery person) could so as well. SUF 17-18. However, field officers are instructed that the implied license is limited to a specific area and for the specific purpose of making contact with the occupant. SUF 19-20. If the attempt to initiate a consensual encounter with the occupant of the home fails, field officers are trained to leave the property. SUF 21. If the occupant of the home answers the door, field officers may state that they are conducting an investigation. SUF 22-23. This is factually accurate

since field officers conduct investigations into their targets. SUF 22-23.

### D. ICE's Policy and Training on the Authority of Administrative Warrants

When conducting a targeted arrest, field officers must possess either a Form I-205 (Warrant of Removal) or Form I-200 (Warrant for Arrest of Noncitizen). SUF 24. Field officers are trained that administrative warrants do not authorize entry into a dwelling without consent. SUF 25. The difference between a Warrant of Removal and a Warrant of Arrest is that a Warrant of Removal is based upon a final order of removal entered by an Immigration Judge, a Designated Official, the Board of Immigration Appeals, or a United States District or Magistrate Judge. SUF 26. Warrants of Arrest are issued to removable noncitizens without prior orders of removal. SUF 26.

### E. The Los Angeles Field Office's Use of Knock and Talks

For safety reasons, the field officers in the Los Angeles AOR typically use knock and talks only as a last resort. SUF 27. Field officers are required to have an administrative warrant when conducting a targeted enforcement action. SUF 28. As discussed above, field officers understand they may enter the curtilage of a property if the general public can do so but that they must leave if there is a failed attempt to initiate a consensual encounter. SUF 29, 31.

Plaintiffs claim that ICE has a policy and practice of entering homes and surrounding curtilage without a judicial warrant or consent and with the intent to conduct an immigration arrest, which violates both the Fourth Amendment and Administrative Procedures Act. *See* FAC, Dkt. 38 at 45. As for the APA claim, Plaintiffs allege that field officers violate 8 C.F.R. § 287.8(f)(2), which prohibits field officers from entering a "residence including the curtilage of such residence…for the purpose of questioning the occupants or employees concerning their right to be or remain in the United states" without a warrant or valid consent. *See id.* at 46.

### III. ARGUMENT

Pursuant to the Court's class certification order [Dkt.335], to prevail on their class

claims, Plaintiffs must establish an entitlement to class-wide relief regarding a systemwide practice or policy that they prove ICE uses in the LA AOR and that violates the Fourth Amendment. For the reasons explained below, Plaintiffs cannot establish any such entitlement with respect to their "Knock and Talk" class claims.

A.    **Plaintiffs Cannot Establish That ICE Uses System-Wide Practices and Procedures Related to Knock and Talks That Violate the Fourth Amendment.**

1.    **ICE Training on Knock and Talks is Consistent with the Fourth Amendment.**

ICE's training on "knock and talks" is consistent with the Fourth Amendment because it recognizes the limits that the Fourth Amendment imposes and explains those limits. "Law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants," this is known as the "knock and talk" exception. *See U.S. v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012). "[O]fficers may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs" and, "[i]f consent is freely given, it makes no difference that an officer may have approached the person with the hope or expectation of obtaining consent." *See Kentucky v. King*, 563 U.S. 452, 463 (2011). "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do,'" as an implied license. *See Florida v. Jardines*, 569 U.S. 1, 8 (2013) (quoting *King*, 563 U.S. at 469). "The scope of this license—express or implied—is limited not only to a particular area but also to a specific purpose." *See Jardines*, 569 U.S. at 9. The implied license may also be time sensitive. *See U.S. v. Lundin*, 817 F.3d 1151, 1159 (9th Cir. 2016) ("[U]nexpected visitors are customarily expected to knock on the front door of a home only during normal waking hours."). Lastly, "once an attempt to initiate a consensual encounter with the occupants of a home fails, 'the officers should end the knock and talk and change their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance.'" *Perea-Rey*

680 F.3d at 1188.

ICE instructs its field officers that "knock and talks" may only take place during daytime hours—6 a.m. to 9 p.m. SUF 16. While field officers almost always have administrative warrants when they conduct a home arrest, field officers are trained that they still need consent to enter onto the curtilage of a property, either express or implied. SUF 24-25. Field officers are trained that the scope of implied consent or an implied license is limited to both a particular area and purpose. SUF 17-19. Specifically, they are trained that they may walk across curtilage to speak to the occupants only if the public could do so under the same conditions—i.e., they are in the same position as the general public. SUF 20. ICE officers are also trained that if the attempt to initiate a consensual encounter with the occupant of the home fails, they are to leave the property. SUF 21.

Plaintiffs cannot establish that ICE's policy, conveyed by and through its national training, violates the Fourth Amendment because ICE's policy accurately conveys the concept of a knock and talk and the limitations imposed by the Fourth Amendment.

### 2. The Constitutionality of ICE Officer Entries onto Curtilage Hinges on Each Officer's Actions in the Context and Cannot be the Basis for Class-wide Relief.

The Ninth Circuit has made clear that "it is permissible for officers to approach a home to contact the inhabitants. The constitutionality of such entries into the curtilage hinges on whether the ***officer's actions*** are consistent with an attempt to initiate consensual contact with the occupants of the home." *Perea-Rey*, 680 F.3d at 1188 (emphasis added). Relying on *Lundin*, Plaintiffs contend that field officers have a practice of exceeding the scope of the implied license because they enter onto the curtilage with the intent to arrest pursuant to an administrative warrant. But *Lundin* is inapposite—and cannot be generalized into conflicting with *Perea-Rey* in the manner that Plaintiffs advocate—because *Lundin* arose in the criminal context, involved a warrantless arrest, and took place at 4:00 a.m. Indeed, entering onto a property's curtilage with the intent to arrest *without* consensual contact is distinct from attempting

6

to initiate a consensual encounter with the hope of being able to make an arrest at or outside the door. Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, Section 6.1(b) The Warrant Requirement at n.62, (6th ed. 2022) ("It is to be doubted…that police cannot proceed with a 'knock and talk' procedure in the hopes of being able to make a warrantless arrest at or outside the door.").

The factual complexity of this inquiry relative to the approach to a residence that ICE officers may have been used in any particular case is evidenced in the deposition testimony of the officers in this lawsuit as well as class members. SUF 30; *see also* ECF 38, 243. The circumstances of each encounter are widely disparate. A declaratory order on this issue that sets aside that complexity and attempts to generalize it would result in an untenable proclamation that all law enforcement officers, ***except ICE officers***, can go up to the front door of a home and conduct a knock-and-talk—a result that is entirely inconsistent with Fourth Amendment law and with the Ninth Circuit's holding in *Perea-Rey*.[1]

ICE officers' conduct of knock and talks in the field relative to a potential arrest operation are inherently fact-intensive, and assessing their constitutionality requires an examination of the particular circumstances presented. That cannot be the basis for class-wide relief.

---

[1] The Organizational Plaintiffs advocate for that anomalous result precisely because they seek to specially stigmatize ICE officers and place them outside of the rules that apply to other law enforcement officers—thereby ensuring that there is *one* set of law enforcement officers who should be cooperated with (local police, enforcing California state law), and *another* special set of law enforcement officers who should not be cooperated with (ICE, enforcing federal immigration law). *See* FAC, ¶¶ 3, 6 (accusing ICE officers of "impersonating" being police officers); *id.*, ¶¶ 94-101 (advocating "sanctuary cities" where no police can perform an immigration enforcement function).

### 3. ICE Field Officers' Execution of an Administrative Warrant Following a Consensual Encounter is Not a Fourth Amendment Violation.

Plaintiffs cannot establish that field officers' execution of an administrative warrant following a consensual encounter is a Fourth Amendment violation because that would be inconsistent with the plain language of the INA and recent Ninth Circuit law.

The INA grants ICE the authority to arrest aliens and detain them prior to removal. *See* 8 U.S.C. §§ 1226, 1231, 1357. Specifically, the INA provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). An ICE officer may arrest an alien without a warrant "if he has reason to believe that the alien so arrested is in the United States in violation of any ... law or regulation and is likely to escape before a warrant can be obtained for his arrest," so long as the alien is taken "without unnecessary delay for examination before an officer of [ICE] having authority to examine aliens as to their right to enter or remain in the United States." *See* 8 U.S.C. § 1357(a)(2).[2] "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *See* 8 U.S.C. § 1231(a). None of the detention authority statutes refer to a judicial warrant.

Courts have consistently recognized that immigration proceedings are civil rather than criminal in nature, and that their implementation therefore falls primarily within the purview of the legislative and executive—not the judicial—branches. *See London v. Plasencia*, 459 U.S. 21, 34 (1982) ("Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature."); *Carlson v. Landon*, 342 U.S. 524, 537 (1952) ("Deportation is not a criminal proceeding and has never been held to be punishment. No

---

[2] Under the INA, this is considered to be a warrantless arrest. Plaintiffs define a warrantless arrest to be any arrest that does not involve a judicial warrant. Defendants define a warrantless arrest as an arrest made pursuant to 8 U.S.C. § 1357(a)(2).

jury sits. No judicial review is guaranteed by the Constitution."); *Tun-Cos v. Perrotte*, 922 F.3d 514, 524 (4th Cir. 2022) (recognizing the differences between immigration enforcement and criminal enforcement including the enforcement of immigration law versus criminal law, that it is enforced against noncitizens, the distinct policy concerns, and removal versus incarceration). Additionally, in *Gonzalez v. ICE*, 975 F.3d 788, 825 (9th Cir. 2020), the Ninth Circuit endorsed the use of administrative warrants, finding that Congress may delegate certain decisions to executive officials in the immigration context and that a probable cause determination by an immigration judge would satisfy the Fourth Amendment.

Recently, in *Matias Rauda v. Wilkinson*, 844 Fed. Appx. 945, 948 (9th Cir. 2021), the Ninth Circuit addressed the question whether ICE officers acted unlawfully by knocking on the front door of petitioner's residence for the purpose of effectuating an arrest without a judicial warrant. The Ninth Circuit declined to extend *Lundin* and held that "the ICE officers were privileged to approach the residence to execute an immigration warrant" because it "licensed the officers to solicit consent to entry [sic] for the limited purpose of enforcing the civil immigration laws, a context that implicates distinct constitutional interests from those involved in a criminal case." *Matias Rauda* at 948. In declining to extend *Lundin*, the *Matias Rauda* panel considered the significant factual differences in the cases, including that *Matias Rauda* arose in the immigration context and so raised distinct constitutional interests, the officers had an administrative warrant, and the arrest was executed within reasonable hours. *Id.* This defect in the Organizational Plaintiffs' claims cannot be set aside. Nor can the type of fact-intensive inquiry into constitutionality of such encounters that the Ninth Circuit has applied in this context be set aside for an over-simplified test (as Plaintiffs advocate) that is bluntly applied across the extremely broad "Knock and Talk" class that has been certified.

All knock and talks require an administrative warrant (i.e., Warrant of Removal or a Warrant for Arrest of Noncitizen) because it is considered a targeted arrest. SUF 28. A warrant of removal is based upon a final order by an immigration judge, a designated

official, the Board of Immigration Appeals, or a United States District or Magistrate Judge. SUF 26. On the other hand, a warrant of arrest is issued to a noncitizen without a prior final order. SUF 26.

Moreover, the Organizational Plaintiffs' claims have an additional defect that is specific to the class action context. Since the Ninth Circuit has already implicitly held that a warrant of removal premised on a removal order by an Immigration Judge satisfies the Fourth Amendment, class members who have been arrested pursuant to a warrant of removal following a consensual encounter cannot establish a Fourth Amendment violation. This is not to say that class members subject to a warrant of arrest can (by contrast) establish a Fourth Amendment violation, but the Court need not decide that question because Plaintiffs must establish a Fourth Amendment violation as to *all* class members in order to show an entitlement to class-wide relief; non-eligible class members cannot obtain remedies they are not entitled to. Plaintiffs cannot do so, and therefore this claim fails as a matter of law for this additional reason.

Finally, Plaintiffs have argued that administrative warrants should not be considered in assessing the lawfulness of knock and talks based on a discovery stipulation entered into this action that narrowed its scope, providing that Defendants will not rely on administrative warrants as a factor supporting any defense (Dkt. 152 at 8). Defendants are not relying on the existence of administrative warrants as a factor supporting their *defense*, but rather to show that Plaintiffs cannot establish their *prima facie* case of a Fourth Amendment violation. And to the extent the stipulation applies so broadly as to narrow this case in the manner that Plaintiffs suggest (which it should not), it is by the same token fatal to Plaintiffs' request for class-wide relief because it makes any such relief *irrelevant* to any common legal issue that applies across the class. Put another way, the scope of relief issued in this lawsuit would be rendered fatally defective across the class. No common issue ruled upon by the Court could meaningfully inform any further ICE operations that are conducted pursuant to administrative warrants, if the ruling does not address the import of such warrants when assessing the lawfulness of

1    arrests conducted by knock and talks with a warrant.

2        While Plaintiffs may complain that this limitation on available remedies ruins the

3    entire point of their stipulation, that stipulation expressly applied *to this litigation* and

4    not to any further or future litigation or actions by ICE field officers. Plaintiffs

5    themselves requested this artificial limitation for this lawsuit, prior to class certification,

6    and they cannot complain about the fact that—if the limitation is applied in the broad

7    manner they now seek—it renders any class-wide relief unavailable and defective.

8        **B.    ICE's Practice of Knock and Talks Does Not Violate the APA.**

9        To establish an APA violation, Plaintiffs must demonstrate that they have suffered

10    a legal wrong or have been adversely affected by an agency action. *See* 5 U.S.C. § 502.

11    The agency action must be a final agency action for which there is not any other

12    adequate court remedy, or be reviewable by statute. *See* 5 U.S.C. § 704. Plaintiffs allege

13    that ICE has committed regulatory and constitutional violations that merit issuing relief

14    under the APA. Plaintiffs do not identify any specific agency "action" that could be

15    reviewed under the APA, however.

16        8 C.F.R. § 287.8(f)(2) states in pertinent part, "[a]n immigration officer may not

17    enter into non-public areas of a business, a residence including the curtilage of such

18    residence…for the purpose of questioning the occupants or employees concerning their

19    right to be or remain in the United States unless the officer has either a warrant[3] or the

20    consent of the owner or other person in control of the site to be inspected."

21        Plaintiffs allege that ICE field officers violate this regulation when entering onto

22    the curtilage without a judicial warrant to effectuate an arrest. *See* Mot. 19-20. Yet the

23    regulation expressly allows field officers to enter public areas of a residence, i.e. areas

24    that are open to the general public. That meaning is confirmed by the following

25    subsection of the same provision, 8 C.F.R. § 287.8(f)(4), which specifically authorizes

26

27    ---
        [3] The term "warrant" is used throughout 8 C.F.R. § 236.1(b)(defining "warrant of
28    arrest" as a "Form I-200, Warrant of Arrest" issued by authorized immigration officers;
        8 C.F.R. § 287.8(c)(2)(i)(authorizing arrests for both federal criminal offenses and
        federal civil immigration offenses, i.e. "alien illegally in the United States.").

immigration officers to enter "any area of a business or other activity to which the general public has access or onto open field that are not farms or other outdoor agricultural operations without a warrant, consent, or any particularized suspicion in order to question any person who the officer believes to be an alien concerning his or her right to be or remain in the United States." *See* 8 C.F.R. § 287.8(f)(4). This facial interpretation is also consistent with the holding in *Matias Rauda* where the Ninth Circuit acknowledged 8 C.F.R. § 287.8(f)(2) when finding that ICE officers did not act unlawfully by knocking on the front door of the residence for the purpose of effectuating an arrest without a judicial warrant. *See Matias Rauda*, 844 Fed.Appx. at 948.

Here, the undisputed evidence demonstrates that field officers do not violate 8 C.F.R. 287.8(f)(2) because they are trained to only enter onto a property where the public has general access, and they are required to have an administrative warrant. SUF 24, 29. Almost every officer deposed testified that is their practice. SUF 29.

Accordingly, Plaintiffs' attempt to base an APA claim on the theory that ICE officers may violate 8 C.F.R. § 287.8(f) fails as a matter of law.

## C.  Plaintiffs Also Cannot Establish That the Same Fourth Amendment Rights Apply To All Members Of the Certified Class.

As an additional reason why summary judgment should be granted, there is a fatal mismatch between the certified classes and the relief that Plaintiffs seek. As defined by the Court's certification order, the class members do not all share the same Fourth Amendment rights. Plaintiffs are impermissibly trying to use the class vehicle to obtain relief that would enlarge and modify the substantive legal rights of **all** class members, which is forbidden by the Rules Enabling Act. *See* 28 U.S.C. § 2072(b); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'"); *Wit v. United Behavioral Health*, 58 F.4th 1080, 1095 (9th Cir. 2023) ("Doing so improperly allowed Plaintiffs to use Rule 23 as a vehicle for enlarging or modifying their substantive rights where ERISA does not provide reprocessing as a standalone

1   remedy.").

2      The "Knock and Talk" class consists of citizens and noncitizens who have varying

3   immigration statuses—some are entitled to Fourth Amendment protection, some have

4   lesser Fourth Amendment rights, and some are not entitled to any Fourth Amendment

5   rights. *See* 8 U.S.C. § 1182 (statutes pertaining to inadmissible noncitizens); 8 U.S.C.

6   § 1227 (statutes pertaining to deportable noncitizens). The Supreme Court has held that

7   the Fourth Amendment applies only to "a class of persons who are part of a national

8   community or who have otherwise developed sufficient connection with this country to

9   be considered part of that community." *United States v. Verdudo-Urquidez*, 494 U.S.

10  259, 265 (1990); *see also United States v. Barona*, 56 F.3d 1087, 1093 (9th Cir. 1995)

11  ("the Fourth Amendment protects only 'the People of the United States'…the term

12  'People of the United States' includes 'American citizens at home and abroad' and

13  lawful resident noncitizens within the borders of the United States").

14     Additionally, some of the defined class members have a lower expectation of

15  privacy or have waived their Fourth Amendment rights altogether as a term of probation

16  or parole. *See* SUF 2.  It is firmly established that "[a] search of a parolee that complies

17  with the terms of a valid search condition will usually be deemed reasonable under the

18  Fourth Amendment." *See United States v. Estrella*, ---F.4th---, 2023 WL 3831806, at *2

19  (9th Cir. 2023); *see also Samson v. California*, 547 U.S. 843, 856 (2006) ("Fourth

20  Amendment does not prohibit a police officer from conducting a suspicionless search of

21  a parolee"); *United States v. King*, 736 F.3d 805, 810 (9th Cir. 2013) ("[A] suspicionless

22  search, conducted pursuant to a suspicionless-search condition of a violent felon's

23  probation agreement does not violate the Fourth Amendment.").

24     Plaintiffs thus cannot establish that all class members have the same Fourth

25  Amendment right. Nevertheless, Plaintiffs ask this Court to grant the entire class the

26  same Fourth Amendment protections. Not only does that requested relief violate the

27  Rules Enabling Act, but it is also fatal to Plaintiffs' Fourth Amendment claims, given

28  that the Court can only issue class-wide relief if the Fourth Amendment applies equally

to all class members. *See Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'").

Accordingly, class-wide declaratory relief is unavailable.

### D. The Court Lacks the Authority to Order Class-wide Injunctive Relief In This Immigration Enforcement Case.

Even if the Court could grant declaratory relief to the class (which it cannot), Plaintiffs cannot prevail on their claims for injunctive relief because this Court is barred from issuing the requested relief pursuant to 8 U.S.C. § 1252 (f)(1). *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2065.

In *Aleman Gonzalez,* the Supreme Court held that 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specific statutory provisions," 142 S. Ct. at 2065, which include two statutes at issue in this case, §§1226(a) and 1231(a). This prohibition cannot be narrowly circumscribed. The Supreme Court rejected the argument that the application of § 1252(f)(1) depends on the nature of the claim in question. *Aleman Gonzalez*, at 2066-67. It noted that such an interpretation "clashes with § 1252(f)(1)'s prefatory clause, which states that the bar applies "[r]egardless of the nature of the action or claim." *Id.* (citing *Nielsen v. Preap*, 139 S. Ct. 954, 975 (2019) (Thomas, J., concurring in part and concurring in judgment)). District courts have acknowledged the dramatic reduction in their jurisdictional authority post-*Aleman Gonzalez*, and this Court should do the same. *See Immigrant Defenders Law Center v. Mayorkas*, 2023 WL 3149243, at *12 (C.D. Cal. March 15, 2023); *see also Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029 (S.D. Cal. Aug. 5, 2022).

Here, the purported class members are individuals who may be subject to a "civil immigration enforcement operation" by the government pursuant to 8 U.S.C. §§ 1226(a) and 1231(a), which this Court already recognized. Dkt. 226 at 1; Dkt. 58 at 9 n.7. These

sections fall within the statutory provisions the "operation of" which cannot be "enjoin[ed] or restrain[ed]" under § 1252(f)(1). *See Aleman Gonzales*, at 2063 (referring to §§ 1221-1231). Plaintiffs cannot circumvent *Aleman-Gonzales* by merely asking for relief based on a statute outside the purview of 8 U.S.C. § 1252(f)(1), because the specific statutory basis for an injunction is not the governing test under *Aleman Gonzales*—rather the test is whether the injunction would interfere with §§1221-1231. *See Al Otro Lado*, 619 F. Supp. 3d 1029 (rejecting attempt to anchor an injunction in §§ 1158, 1103, and 6 U.S.C. § 202 because any class-wide injunction would "interfere" with Defendants' "operation" of § 1225).

In *Al Otro Lado*, Plaintiffs challenged Defendants' alleged "turnback policy" implicating certain statutes including § 1158, 1103, 1225, and 6 U.S.C. § 202. *See Al Otro Lado* at 1032. While *Al Otro Lado* was pending, the Supreme Court issued its decision in *Aleman Gonzales*. *See id*. at 1033. Trying to circumvent *Aleman Gonzales*, the *Al Otro Lado* plaintiffs argued that the district court should anchor its injunction in § 1158, rather than § 1225, suggesting this would make a difference. Rejecting that argument, the district court found that these statutes are inextricably intertwined given that § 1158(a)(1) expressly incorporates § 1225; therefore, an injunction anchored in § 1158 would not only have collateral consequences on Defendants' operation of § 1225. *See id*. at 1046-1047.

The *Al Otro Lado* plaintiffs then argued that an injunction should be "anchored in the statutory provisions Defendants claimed authorized their Turnback Policy: 8 U.S.C. § 1103(a)(1) and 6 U.S.C. § 202." *Id*. at 1047. The district court again rejected that defective attempt to evade the Supreme Court's jurisdictional limitation, noting that "*Aleman Gonzales* requires this Court to inquire whether an injunction would 'interfere with [Defendants'] efforts to operate' § 1225," which is "analytically distinct from the narrower question that Plaintiffs appear to propose as the relevant inquiry: under which statute did Defendants principally invoke as a legal basis to implement the unlawful regulation?" *See id*. Accordingly, "because any class-wide injunction in this case would

'interfere' with Defendants' "operation" of § 1225, as that word is construed in *Aleman Gonzalez*, this Court cannot simply anchor injunctive relief in 6 U.S.C. § 202 and 8 U.S.C. § 1103(a)(1) to evade § 1252(f)(1)'s remedial bar." *See id*. Plaintiffs do not and cannot deny that certain class members are arrested pursuant to §§ 1226 and 1231—making *Aleman Gonzalez* squarely applicable to bar class wide injunctive relief. *See, e.g.,* 8 C.F.R. § 236.1("[T]he respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."); 8 C.F.R. § 241.2 ("A Form I-205, Warrant of Removal, based on the final administrative removal order in the alien's case will be issued by any of the following immigration officials").

Plaintiffs' APA claims similarly fail because the policies or regulations that apply to ICE's arrest practices are part of "the Government's efforts to enforce or implement" §§ 1226 and 1231. *Aleman Gonzalez*, 142 S.Ct. at 2063. And 8 C.F.R. § 287.5 cites § 1226 as one of its sources of statutory authority. A court order vacating ICE's arrest policies under the APA would thus inevitably "interfere with the Government's efforts to operate" those statutes by forcing "officials to take actions . . . and to refrain from actions that," "in the Government's view," are not statutorily required or prohibited. *Id.* at 2065. Section 1252(f)(1) prohibits the class wide relief that Plaintiffs seek under the APA because a judicial vacatur of agency action, like an injunction, is a form of coercive relief that "restricts[s] or stop[s] official action," *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015), by prohibiting officials from applying the agency's policies and regulations. This also creates an issue of redressability. *See United States v. Texas*, 143 S.Ct. 1964, 1976 (2023) (Gorsuch, concurring) (States lack Article III standing because they can show no redressability due to 8 U.S.C. 1252(f)(1)).

Plaintiffs have argued that pursuant to the stipulation referenced above (Dkt. 152 at 8), Defendants waived any defense that relies on officers having an administrative warrant, and the presence of an administrative warrant is required to bring the injunctive relief within the purview of Section 1226(a). However, *Aleman-Gonzalez* presents a jurisdictional remedy limitation that cannot be waived, not a mere 'defense' to a liability

charge. *See Immigrant Defenders Law Center*, 2023 WL 3149243, at *12 (recognizing that while §1252(f)(2) does not implicate a question of subject matter jurisdiction, it implicates a question of jurisdiction related to a court's ability to grant a particular remedy); *see American States Ins.Co. v. Dastar Corp.*, 318 F.3d 881, 885 (9th Cir. 2003) ("A party may not engage in manipulation either to create appellate jurisdiction or prevent it"); *see also U.S. v. Ceja-Prado*, 333 F.3d 1046, 1049 (9th Cir. 2003) (citing a series of cases recognizing that jurisdiction cannot be created or waived). Indeed, it would be nonsensical for an injunction to be issued in the LA AOR that is jurisdictionally prohibited across every other part of the United States.

### E.    Class-Wide Declaratory Relief Is Also Unavailable

Assuming class-wide declaratory relief is available—which it is not, as discussed above—and assuming the Supreme Court's broad prohibition against class-wide injunctive relief could be evaded—which it cannot, as discussed above—the next question is whether the Court can issue an indivisible declaratory judgment that would serve a useful purpose in clarifying and settling the legal relations between the parties and will terminate the controversy. *See Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992) ("[F]ederal courts should consider whether a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations between the parties, and whether it will terminate the controversy"); *Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy.") Practically speaking, a declaratory judgment in this case is only useful if it forces Defendants to change its policies or practices, which operates like an injunction, which is foreclosed by *Aleman-Gonzalez*. Alternatively, if the purpose of the declaratory judgment is for individual class members to rely on in it in hypothetical future litigation, the Court cannot issue an indivisible declaratory judgment since the judgment may not apply equally among each class member as discussed above.

Accordingly, this Court cannot enter class-wide injunctive relief in this case and should deny Plaintiffs' request for "[a]n order enjoining Defendants from engaging in

the above challenged actions, policies, and practices in the future." FAC at 52.

**IV.    CONCLUSION**

Defendants respectfully request that the Court grant this motion in its entirety and enter judgment in Defendants' favor.


Dated: November 20, 2023                 Respectfully submitted,

                                         JOSEPH T. MCNALLY
                                         Attorney for Defendants,
                                         Acting Under Authority Conferred by 28
                                         U.S.C. § 515
                                         DAVID M. HARRIS
                                         Assistant United States Attorney
                                         Chief, Civil Division
                                         JOANNE S. OSINOFF
                                         Assistant United States Attorney
                                         Chief, Complex and Defensive Litigation
                                         Section




                                         _____/s/ Christina Marquez_____
                                         CHRISTINA MARQUEZ
                                         PAUL LA SCALA
                                         ADAM GAFNI
                                         JONATHAN BLAKEY
                                         Assistant United States Attorney

                                         Attorneys for Defendants