O

United States District Court
Central District of California

| | |
|---|---|
| OSNY SORTO-VASQUEZ KIDD et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM,[1]<br>United States Secretary of Homeland Security, in her official capacity, et al.,<br><br>Defendants. | Case № 2:20-cv-03512-ODW (JPRx)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [525]** |

## I.  INTRODUCTION

In this action, Organizational Plaintiffs Inland Coalition for Immigrant Justice ("ICIJ") and the Coalition for Humane Immigrant Rights Los Angeles ("CHIRLA") seek class-wide declaratory relief that various ICE actions, policies, and practices violate the Fourth Amendment and the Administrative Procedure Act ("APA") and injunctive relief to enjoin these practices. (First Am. Compl. ("FAC"), ECF No. 38.)[2] Organizational Plaintiffs, on behalf of themselves and the Ruse Class, defined below, seek an order granting preliminary approval of a proposed settlement ("Proposed

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kristi Noem substituted in as Defendant for Alejandro Mayorkas.
[2] Plaintiff Osny Sorto-Vasquez Kidd also asserts individual claims for various torts and violation of the Fourth Amendment. (*Id.* ¶¶ 178–199.)

Settlement"). (Mot. Prelim. Approval ("Mot." or "Motion"), ECF No. 525; Decl. Stephanie Padilla ISO Mot. ("Padilla Decl.") Ex. 1 ("Agreement" or "SA"), ECF No. 525-1.) For the reasons below, the Court **GRANTS** Organizational Plaintiffs' Motion.[3]

## II. BACKGROUND

Organizational Plaintiffs challenge how ICE conducts law enforcement in its Los Angeles Area of Responsibility ("AOR"), which includes the counties of Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, and San Luis Obispo. (Order Summ. J. 2, ECF No. 506.) Organizational Plaintiffs allege two methods by which ICE officers in this district "routinely conduct arrests in or near the home that violate the Constitution": (1) ICE officers misrepresent themselves as police or probation to trick individuals into granting them entry into or otherwise relinquishing the privacy of their homes (the "Ruse" claims), and (2) ICE officers enter the constitutionally protected private areas around individuals' homes to arrest occupants without consent or a judicial warrant (the "Knock and Talk" claims). (FAC ¶ 1.) As the Agreement concerns the Ruse claims only, the Court focuses on those claims.

### A. Ruses

In the FAC, Organizational Plaintiffs claim that ICE officers routinely use "ruses" in which they impersonate non-immigration law enforcement officials to induce people to "consent" to officers entering their homes or to lure them out of them homes to conduct warrantless immigration arrests. (*Id.* ¶ 3.) During these "ruses," ICE officers often wear uniforms with "POLICE" written on them. (*Id.*) One such "ruse" is when ICE officers try to get consent to enter a home or lure residents outside by claiming to be police investigating a fake crime and show a picture of a "suspect" for whom they are looking. (*Id.* ¶ 28.) Another is when ICE officers say they are with "probation" and

---

[3] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

there to do a home inspection. (*Id.*) Organizational Plaintiffs contend that ICE policy encourages the use of such ruses. (*Id.* ¶ 32.)

In the FAC, Organizational Plaintiffs provide examples of these "ruses." In one example, officers knocked on the home of Carlos Ortiz Becerra and identified themselves as "police." (FAC ¶ 69.) When they said they were looking for someone named "Rodrigo," Becerra's daughter opened the door and told them no one by that name lived in the house. (*Id.*) Becerra's daughter let the officer enter the home after they told her they needed to verify that Rodrigo was not present. (*Id.*) The officers demanded that everyone in the home provide identification, and they arrested Becerra after checking his identification. (*Id.* ¶ 70.) Becerra and his daughter did not know why he was being arrested and only learned that the officers were immigration officials when they provided business cards after arresting Becerra. (*Id.*)

In another example, two ICE officers wearing vests that said "POLICE" went to Jose Urbano Vasquez's residence and told his sister, who opened the door, that they were probation offices. (FAC ¶ 81.) At the time, Vasquez was on probation. (*Id.*) The officers asked Vasquez's sister to bring Vasquez to the font door. (*Id.*) Thinking this was a routine home visit from a probation officer, Vasquez grabbed identification and headed to the front door. (*Id.*) He then gave his identification to the officers after they asked for it. (*Id.* ¶ 82.) The officers then arrested Vasquez, and only while he was being handcuffed did one of the officers tell him they were from ICE. (*Id.*)

**B.    This Lawsuit**

On April 16, 2020, Organizational Plaintiffs initiated this lawsuit against various ICE and DHS officials in their official capacities ("Official Capacity Defendants"), the United States of America, and individual officers O.M., C.C., J.H., and J.N ("Individual Officer Defendants"). (Compl., ECF No. 1.) ICIJ and CHIRLA sought class-wide declaratory relief that various ICE actions, policies, and practices violate the Fourth Amendment and the Administrative Procedure Act. (FAC ¶¶ 149–77.) They also sought injunctive relief to enjoin these practices. (*Id.*) Plaintiff Kidd separately asserted

individual claims for trespass, false imprisonment, negligence and negligent infliction of emotional distress, and violation of the Fourth Amendment against the United States and Individual Officer Defendants. (*Id.* ¶¶ 178–99.)

On February 7, 2023, the Court granted Organizational Plaintiffs' motion to certify two classes of individuals who have been or will be affected by Official Capacity Defendants' alleged unconstitutional practices: the "Ruse Class" and the "Knock and Talk" Class. (Order Certify Class, ECF No. 335.) The Ruse Class is defined as:

> All individuals residing at a home in the Los Angeles Area of Responsibility where U.S. Immigration and Customs Enforcement has conducted or will conduct a warrantless civil immigration enforcement operation in which officers enter the home under a claim of consent, or where the individual exits their home at the request of ICE, without officers first verbally stating their true identity as immigration officers or their immigration law purpose.

(*Id.* at 23–24.) The Court also appointed CHIRLA and ICIJ as Lead Plaintiffs and the ACLU Foundation of Southern California, UC Irvine School of Law Immigrant Rights Clinic, and Munger, Tolles & Olson LLP as Class Counsel. (*Id.* at 24.)

On October 10, 2023, after the parties informed the Court that they had reached or believed they would reach a settlement of the Ruse Class claims, the Court stayed the action as to all claims, except those related to the Knock and Talk Class. (Min. Order, ECF No. 485.) On April 30, 2024, the parties informed the Court that they had reached agreement on the remaining non-monetary issues in this case, other than those related to the Knock and Talk Class, subject to the resolution of the monetary issues. (April 30, 2024 Status Report, ECF No. 503.)

On May 15, 2024, the Court granted Organizational Plaintiffs' Motion for Partial Summary Judgment under Rule 56(e) as to the Knock and Talk Class's first, second, and third causes of action, and denied Official Capacity Defendants' Motion for Summary Judgment as to those same claims. (Order Summ. J 25–26.)

On November 1, 2024, pursuant to the parties' joint stipulation, the Court dismissed Kidd's remaining individual Federal Tort Claims Act and *Bivens* claims.[4] (Order, ECF No. 521; *see* FAC ¶¶ 178–199.) Then, on November 26, 2024, the parties informed the Court that they had reached an agreement regarding the claims for fees and costs associated with settlement of the Ruse Class claims. (Nov. 26, 2024 Status Report, ECF No. 524.) Organizational Plaintiffs now seek preliminary approval of the Proposed Settlement, which Defendants do not oppose. (Mot.; SA.)

### III.   TERMS OF THE PROPOSED SETTLEMENT[5]

The Proposed Settlement can be summarized as follows:[6]

***Effective Date.***  The Agreement will become effective upon final approval by the Court and will terminate three years thereafter. (SA § VII(C).) The parties will ask the Court to retain jurisdiction over this action for this entire period to enforce the Agreement. (SA § VII(D).)

***Verbal and Visual Identification.***  "ICE Officers are prohibited from identifying as a specific state or local law enforcement agency," like the LAPD, "probation, parole, detectives, or any other non-federal government agency when conducting a civil immigration enforcement action at a residence." (SA § III(A)(1)(a).) Moreover, with few exceptions,[7] when conducting a civil immigration enforcement action at a residence in "vest placards," "clothing clearly identifying them as law enforcement officers," or "in external body armor carriers," ICE Officers must have visible "ICE" identifiers when there is a visible "POLICE" identifier. (SA § III(A)(1)(b).) The text of the "ICE" identifier must be at least the size of the "POLICE" identifier. (SA § III(A)(1)(b).) ICE Officers must identify as "ICE" or "immigration" "at the time of an arrest, or as soon

---

[4] The Court previously dismissed Kidd's negligence and false imprisonment claims against the United States. (Order Mot. Dismiss 24, ECF No. 58.)

[5] All capitalized terms not otherwise defined are defined in the Agreement.

[6] The Court notes that this is merely a summary of the Agreement and that the terms of the Agreement control.

[7] These exceptions are for special response teams and medical officers, who will still bear an ICE identifier. (SA § III(1)(b).)

as it is practical and safe to do so." (SA § III(A)(1)(c).) ICE Los Angeles Field Office training will provide that an ICE Officer initially identifying as "police" or an "officer" related to a civil immigration enforcement action at a residence must also identify as "ICE" or "immigration" before seeking entry to a residence or requesting that a resident exit their home. (SA § III(A)(1)(c).)

**Prohibited Ruses.** ICE Officers from the Los Angeles Field Office may not engage "in a ruse during a civil immigration enforcement action that identifies the officers as governmental officials and misrepresents their" identity or purpose. (SA § III(B)(1).) When ICE Officers in the Los Angeles Field Office, as part of a civil immigration enforcement action, seek consent to enter a residence or a resident's agreement to exit a home, they *cannot*: (1) misrepresent that their purpose involves danger to the resident or public safety; (2) state that they are conducting a criminal investigation, unless true; (3) show photos of or identify by name persons other than the target and falsely claim that they looking for those other individuals at the residence; (4) falsely claim that there is a problem with an occupant's car; or (5) claim they are conducting a probation or parole check, unless it is an immigration parole check (collectively, "Ruse Categories").[8] (SA § III(B)(2)(a)–(e).)

**Directives and Trainings.** Within thirty days after final approval of the settlement, the ICE Enforcement and Removal Operations ("ERO") "Los Angeles Field Director shall issue a broadcast message to ICE Officers in the Los Angeles Field Office" concerning their obligations under the Agreement.[9] (SA § III(C)(1).) Within sixty days of final approval of the settlement, the Director will revise training materials

---

[8] ICE Officers can only say that they have authority to enter a residence or require a resident to exit a residence under the resident's probation or parole terms if the officers first verify that the resident's probation or parole terms authorize ICE to make such a claim under applicable law. (SA § III(B)(2)(e).)

[9] Official Capacity Defendants must provide a copy of the broadcast message and any Fourth Amendment training materials to Class Counsel at least fourteen days before issuance. (SA § III(C)(4).) For the duration of the agreement, Official Capacity Defendants must provide a copy of future versions of these same documents within thirty days after any changes relates to their obligations under the Agreement. (SA.)

to implement the Agreement.  (SA § III(C)(3).)  The Director will ensure that Los Angeles Field Office ICE Officers are trained on the Agreement's requirements by providing, among other things, Fourth Amendment training to Los Angeles Field Office ICE Officers at least three times per year and training concerning proper documentation of civil immigration enforcement actions at residences.  (SA§ III(C)(2).)

***Documentation and Monitoring.***  For residential civil immigration arrests where ICE Officers request to enter the residence or for an individual to exit the residence, ICE Officers must document if they verbally identified themselves as anything other than "DHS," "ERO," "ICE," or "immigration.[10]  (SA § IV(A)(1).)  In these same circumstances, ICE Officers must also record if they state a governmental purpose for their visit that concerns any of the Ruse Categories.  (SA § IV(A)(2).)  ICE Officer supervisors will revise this documentation to monitor compliance with the Agreement, and Official Capacity Defendants will provide Class Counsel with a semiannual production of "an Arrest Activity Report of ERO Los Angeles civil immigration residential operations" for the prior six-month period.  (SA § IV(C).)[11]  At Class Counsel's request, Official Capacity Defendants will provide no more than 110 ERO Los Angeles Form I-213s and up to 15 Field Operation Worksheets from each semiannual Arrest Activity Report so that Class Counsel can monitor compliance with the Agreement.  (SA § IV(D).)

***Settled Claims.***  As of the date of final approval of the Proposed Settlement, Organizational Plaintiffs agree to release Official Capacity Defendants from "any and all claims for prospective equitable relief (i.e., declaratory and injunctive relief) arising out of the alleged statutory and constitutional violations asserted by" Organizational Plaintiffs "on behalf of themselves and the Ruse Class," Organizational Plaintiffs'

---

[10] This requirement will be in place for eighteen months, beginning on the date of final approval of the Proposed Settlement.  (SA § IV(A)(1).)

[11] Official Capacity Defendants will make the sixth (and last) production forty-five days before the termination of the Agreement.  (SA § IV(C).)

"sanctions/fee motions, and Organizational Plaintiffs' "claims for attorneys' fees and costs related to the Ruse Class claims." (SA §§ II(M), V.)

***Dispute Resolution.*** The parties "agree to work cooperatively with one another and in good faith and agree to use their best efforts to effectuate the purposes of th[e] Agreement and to resolve informally any differences regarding interpretation of and compliance with th[e] Agreement prior to bringing such matters to the Court for resolution." (SA. § VI(A).) Parties must abide by the following dispute resolution process. First, if any party's counsel thinks another party has violated the Agreement, then counsel shall notify, in writing, counsel of the opposing party "of the specific grounds upon which noncompliance is alleged (the 'Notice of Dispute')." (SA § VI(B)–(C).) Within thirty calendar days of receiving a Notice of Dispute, the opposing party must respond with their position on the issue "and any action it has taken or intends to take to address the alleged non-compliance." (SA § VI(D).) Within three business days of this response, the parties shall meet and confer. (SA § VI(D).) Only if the parties cannot resolve the dispute within five business days of the meet and confer, the complaining party may then move to enforce the terms of this Agreement in this Court through a Motion to Enforce. (SA § VI(E).) The Court will resolve the dispute in the manner it deems appropriate and will "have the power to award such relief and issue such judgment as the Court deems proper." (SA § VI(E).)

***Attorneys' Fees.*** When the parties jointly request the Court's final approval of the Proposed Settlement, Class Counsel will file a separate motion for approval of $2,600,000 in attorneys' fees and costs on account of work done for the Ruse Class claims. (SA § X(A).) Official Capacity Defendants agree not to oppose Class Counsel's motion for attorneys' fees and costs in this amount.

## IV.  LEGAL STANDARD

The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "If the proposal would bind class

members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate . . . . " Fed. R. Civ. P. 23(e)(2).

Courts scrutinize class action settlements "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Nonetheless, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Id.* at 1101. Once a court preliminarily approves the settlement, the court "may direct appropriate notice to the class" and grant final approval "only after a hearing." Fed. R. Civ. P. 23(c)(2), (e)(2). With respect to a settlement of a class certified under Rule 23(b)(2), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## V.     DISCUSSION

The Court first considers whether it may grant preliminary approval for the Proposed Settlement. (*See* SA.) The Court then reviews whether the class notice ("Proposed Class Notice") is sufficient. (*See* Padilla Decl. Exs. 2–3 ("Proposed Class Notice"), ECF No. 525-1.)

### A.     Preliminary Settlement Approval

In class actions, courts may approve a settlement agreement only when the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "At the preliminary approval stage, the court evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval." *Spann v. J.C. Penny Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (cleaned up). At this stage, a "full fairness analysis is unnecessary" because the court must hold a hearing before giving final approval. *Grady v. RCM Techs. Inc.*, 671 F. Supp. 3d 1065, 1072 (C.D. Cal. 2023). Thus, "the settlement need only be *potentially* fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Ultimately, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

To determine whether a settlement is "fair, reasonable, and adequate," courts consider the following factors: whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2), *Lalli v. First Team Real Est.—Orange Cnty.*, No. 8:20-cv-00027-JWH (ADSx), 2022 WL 8207530, at *3 (C.D. Cal. Sept. 6, 2022).

### 1. *Adequate Class Representation*

Having previously found that Class Counsel and Organizational Plaintiffs were adequate representatives for purposes of class certification, (Order Certify Class 23–24), the Court now finds that Class Counsel and Organizational Plaintiffs adequately represented the class.  *See In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (finding adequate representation where court had previously appointed class representatives and class counsel and both had "prosecuted the case with diligence and success").  Class Counsel and Organizational Plaintiffs defeated Official Capacity Defendants' motion to dismiss.  (*See* Order Mot. Dismiss.)  Additionally, starting in early 2023, (Mot. 3), class representatives participated in extensive settlement negotiations and mediation with Judge Laurel Beeler to resolve the claims the Ruse Class brought against Official Capacity Defendants, (*see, e.g.*, Nov. 30, 2023 Status Report, ECF No. 490; Nov. 26, 2024 Status Report.)  Therefore, at this preliminary approval stage, the Court finds adequate class representation.

### 2. *Negotiated at Arm's Length*

In evaluating a proposed settlement, courts focus on whether "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Just.*, 688 F.2d at 625.  A court may preliminarily approve a settlement if the proposed settlement, among other things "appears to be the product of

serious, informed, non-collusive negotiations, [and] has no obvious deficiencies." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Where attorneys' fees originate from a common recovery fund that feeds monetary relief to class members, courts assess the fees with more skepticism because of the "potential for conflict in the allocation." *Lopez-Venegas v. Johnson*, No. 2:13-cv-03972-JAK (PLAx), 2015 WL 13916876, at *9 (C.D. Cal. Feb. 25, 2015); *cf. Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002) (stating that one of the risks of class action settlement is that "class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee").

The parties have litigated this case for more than four years. Settlement negotiations lasted for nearly two years, which included a settlement conference in front of Judge Beeler. (Mot. 3; *see, e.g.*, Nov. 30, 2023 Status Report; Nov. 26, 2024 Status Report.) The Court has not been presented with any facts suggesting fraud, overreaching, or collusion. In fact, the risk of collusion is not high because Organizational Plaintiffs lack monetary relief, and Class Counsel's compensation does not originate from a common fund. *Cf. Lopez-Venegas*, 2015 WL 13916876, at *9 (approving attorneys' fee award where fees were not paid from common fund). Therefore, for the purpose of preliminary approval of the settlement, the Court finds the parties negotiated the Proposed Settlement at arm's length.

3. *Adequate Relief for the Class*

To determine whether "relief provided for the class is adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . .; (iii) the terms of any proposed award of attorney's fees, including timing of payment;" and (iv) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C); *Lalli*, 2022 WL 8207530, at *4. Further, "the Ninth Circuit asks district courts to undertake an additional search for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Lalli*, 2022 WL 8207530,

at *3. (internal quotation marks omitted). This additional search requires courts to consider: "(1) whether counsel 'receive[d] a disproportionate distribution of the settlement'; (2) whether the parties agreed to a 'clear sailing arrangement'; and (3) whether the settlement includes a 'kicker' or 'reverter' clause." *Id.* (alteration in original) (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1026–27 (9th Cir. 2021)).

First, the Court finds that the costs, risks, and delay of appeal favor preliminary approval of the Proposed Settlement—without a settlement, there is a substantial risk that the parties will expend resources litigating the Ruse Class claims and associated attorneys' fees. (*See* Mot. 9–10.) In connection with settlement negotiations, the parties sought to stay, and later withdrew, their respective cross-motions for summary judgment related to the Ruse Class claims. (ECF Nos. 447, 451, 484, 485.) Plaintiffs also withdrew their motion for sanctions related to spoilation of evidence. (ECF No. 458.) Without a settlement, these motions would need to be litigated, followed by possible trial and appeals. Second, because the class received declaratory—not monetary—relief, the Court has no concerns with the effectiveness of distributing relief to the class. Also, the Settlement Agreement contains mechanisms to ensure Official Capacity Defendants compliance with the terms of the Agreement. Third, the parties submitted the Agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."); (SA.)

There is also no indication of foul play in the negotiations by Class Counsel. The Proposed Settlement does not contain a kicker or a reverter clause. The Proposed Settlement includes a clear sailing arrangement whereby Official Capacity Defendants agree not to oppose the request for attorneys' fees in the amount stated. (*See* SA § X(A).) However, this is not cause for concern because it does not reduce recovery for the Ruse Class. For the same reason, there is no unfair distribution of the settlement to class members. Therefore, negotiations do not contain "subtle signs" that Class

Counsel may have prioritized their gains over those of the class members. *See Lalli*, 2022 WL 8207530, at *3.

The Court also finds that the Proposed Settlement provides adequate relief to the class. Without getting into the merits of the case, the Court notes that Organizational Plaintiffs defeated Official Capacity Defendants' motion to dismiss challenging the Ruse Class claims, (ECF No. 58), certified a class, (ECF No. 335), and received summary judgment on the Knock and Talk Class claims, (ECF No. 506), which raised procedural issues that may have overlapped with the Ruse Class claims, (*see* Mot. 9.) Organizational Plaintiffs brought the Ruse Class claims to challenge and enjoin certain of Official Capacity Defendants' policies and practices, (*see* FAC), and the Proposed Settlement will remedy at least some of the challenged policies and practices, (Padilla Decl. ¶ 6; SA).

For the foregoing reasons, the Proposed Settlement provides adequate relief to the class.

    4.  *Equitable Treatment of Class Members*

Lastly, the Court must ensure that "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement . . . does not improperly grant preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Because the Proposed Settlement makes no distinctions among class members, the Court finds that the Proposed Settlement treats class members equitably relative to each other. Therefore, the Court finds that the Proposed Settlement is within the range of possible judicial approval, and preliminary approves the Proposed Settlement.

**B.  Sufficiency of Notice**

To evaluate a class settlement notice, the Court must analyze the notice type and the notice content.

*1.     Type of Notice*

Once a court determines it is likely to approve a class settlement, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties plan to post the Proposed Class Notice, in English and in Spanish, prominently in ICE detention centers in the Los Angeles AOR. (Padilla Decl. ¶ 9; *see* SA § VII(B)(1).) The parties will also post the Proposed Class Notice on the websites for ICE, the ACLU, CHIRLA, and ICIJ. (Padilla Decl. ¶ 9; *see* SA § VII(B)(2).) Additionally, the parties will ensure distribution of the Proposed Class Notice to immigration attorneys through the local American Immigration Lawyers' Association listserv. (Padilla Decl. ¶ 9; *see* SA § VII(B)(3).) The Court finds, under the circumstances of this case, the notice reasonable for class members.

*2.     Content of Notice*

The Court certified the class under Rule 23(b)(2) for injunctive and declaratory relief. (Order Certify Class.) For a class certified under Rule 23(b)(2), the Court "may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

Here, the parties sufficiently describe the nature of the action, the class certified, claims, and the issues in the action. (*See* Proposed Class Notice.) The parties also adequately explain the terms of the Settlement Agreement. (*Id.* at 2–4.) The parties will also inform class members of the rights that will be waived if the Court finally approves the Proposed Settlement. (*Id.* at 4.) Moreover, the parties will provide instructions for opposing class members to object to the Proposed Settlement. Therefore, the Court finds Proposed Class Notice sufficient with the following two required changes.

First, in the language informing class members of the rights that will be waived upon final approval, the parties should clarify that class members will not be able to bring the released claims in future lawsuits and inform class members that Organizational Plaintiffs and their attorneys have agreed to release claims for attorneys'

fees and costs related to the Ruse Class claims. (*See id.* at 4.) The parties should add the following bolded language to the Proposed Noticed:

> In exchange for the terms above, plaintiffs will agree to release, or drop, the settled claims in the lawsuit. **Class members will not be able to bring these claims in any current or future lawsuit.** However, this release shall not prevent class members from bringing claims that could not have been raised in this lawsuit, such as an individual suit for money damages, or efforts by the class to enforce this settlement. The proposed settlement does not involve the payment of money damages to Ruse Class members. **Plaintiffs and their attorneys will also agree to release claims for attorneys' fees and costs related to the Ruse Class claims.**

This added language should not be bolded in the Proposed Notice. (*See* Proposed Class Notice 4.)

Second, given the update to the case caption, the parties shall amend the Proposed Class Notice to reflect that this case is now *Kidd v. Noem*, No. 2:20-cv-03513-ODW-JPR.

## VI.   CONCLUSION

The Court **GRANTS** Organizational Plaintiffs' Motion for Preliminary Approval. (ECF No. 525.) The Court (1) preliminary approves the Proposed Settlement and (2) approves the form and method of the parties' Proposed Class Notice, provided that the parties make the changes noted above.

Within three days of the date of this Order, the parties shall publish the Proposed Notice, consistent with this Order, for **forty-two (42) days** as outlined in the Settlement Agreement § VII(B). Ruse Class members shall have **forty-five (45) days** from the date of this Order (i.e., **forty-two (42) days** from the date the parties are required to give notice) to respond and register any objections to the Settlement Agreement.

The Final Approval Hearing shall be held on **August 4, at 9:00 a.m.**, at the United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012. No later than **five (5) days** after the objection deadline provided in the Proposed Class Notice, the parties shall file with the Court any objections received or a notice

that no objections were received. No later than **twenty-eight (28) days** before the Final Approval Hearing, Organizational Plaintiffs shall file with the Court a motion for final approval of the settlement along with an application for attorneys' fees and costs in accordance with Rule 23(h). Oppositions to either motion must be filed no later than **twenty-one (21) days** before the Final Approval Hearing. If any opposition is filed, either party may file a reply in support of any objected-to motion no later than **fourteen (14) days** before the Final Approval Hearing.

**IT IS SO ORDERED.**

May 5, 2025

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**