STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
EVA BITRAN (SBN 302081)
ebitran@aclusocal.org
DIANA SANCHEZ (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Telephone: (213) 977-5232
Facsimile:  (213) 201-7878
Attorneys for Plaintiffs

*(additional counsel information on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| OSNY SORTO-VASQUEZ KIDD, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> KRISTI NOEM, United States Secretary of Homeland Security, in her official capacity, et al., <br><br> Defendants. | Case No. 2:20-cv-03512-ODW-JPR <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF RUSE CLASS ACTION SETTLEMENT** <br><br> Date: August 4, 2025 <br> Time: 9:00AM <br> Courtroom: 5D <br> Judge: Hon. Otis D. Wright II |

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT RIGHTS CLINIC
401 E. Peltason Drive,
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-2747

JACOB KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile:  (213) 687-3702

GIOVANNI SAARMAN GONZÁLEZ (SBN 314435)
*giovanni.saarmangonzalez@mto.com*
GABRIEL BRONSHTEYN (SBN 338011)
*gabriel.bronshteyn@mto.com*
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile:  (415) 512-4077

Attorneys for Plaintiffs

**PLEASE TAKE NOTICE** that on August 4, 2025 at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Otis D. Wright, in Courtroom 5D, Fifth Floor of the First Street United States Courthouse, 350 1st Street, Los Angeles, CA 90012, Plaintiffs Coalition for Humane Immigrant Rights ("CHIRLA") and Inland Coalition for Immigrant Justice ("ICIJ," and together with CHIRLA, the "Plaintiffs"), on behalf of themselves and the Ruse Class, will and hereby do move the Court under Rule 23 of the Federal Rules of Civil Procedure (1) for an order granting final approval of the Ruse Class Settlement Agreement ("Ruse Class Agreement," or "Agreement") that was preliminarily approved by this Court, Dkt. 535, (2) to grant final certification of the Ruse Settlement Class, (3) to enter judgment pursuant to the Ruse Class Agreement, and (4) to provide for ongoing jurisdiction to enforce the terms of the Ruse Class Agreement. Notice of the Ruse Class Agreement has been properly given, and no objections or requests for exclusion from the Ruse Class have been received. Further, the Ruse Class Agreement is fair, adequate, and reasonable.

This motion is based upon this Notice, the Memorandum of Points and Authorities, the Declaration of Diana Sánchez, the Declaration of Giovanni Saarman González, the Declaration of Jackson Lara, all accompanying exhibits, the filings in this action, the Proposed Order, and any and all evidence, argument, or other matters that may be presented at the hearing.

The Parties have conferred pursuant to Local Rule 7-3, and the Defendants have indicated that they do not oppose this motion.

Dated: July 7, 2025

MUNGER, TOLLES & OLSON LLP
JACOB KREILKAMP
GIOVANNI SAARMAN GONZÁLEZ
GABRIEL BRONSHTEYN


 _/s/ Giovanni Saarman González_
Giovanni Saarman González
Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................... 1

II.  BACKGROUND AND TERMS OF THE AGREEMENT .......................... 2

A.  Factual and Procedural History ................................................. 2

B.  Notice to Class Members and Class Members' Comments and Objections ................................................................................ 3

C.  Settlement Negotiations ............................................................ 4

1.  The Proposed Agreement ................................................. 5

(a)  The Settlement Class ............................................. 5

(b)  Terms of the Settlement ........................................ 6

2.  Continued Jurisdiction of the Court ................................. 8

3.  Attorneys' Fees and Costs ............................................... 9

III.  THE RUSE CLASS AGREEMENT MEETS THE STANDARD FOR FINAL APPROVAL ............................................................................. 9

A.  The Ruse Class Notice Met the Requirements ......................... 10

B.  The Ruse Class Agreement is Fair, Reasonable, and Adequate .......... 11

1.  The Settlement is a Result of the Strength of Plaintiff's Case and Provides a Substantial Benefit to the Class ............... 11

2.  The Agreement Avoids the Risk of Lengthy, Protracted and Complex Litigation .................................................. 12

3.  The Parties Have a Comprehensive Understanding of the Case Due to the Stage of the Proceedings and the Extent of Discovery .................................................................... 12

4.  The Agreement is the Result of At Arms-Length Negotiations by Experienced Counsel ................................ 13

C.  Ruse Class Members Did Not Submit Any Objections ................. 14

D.  Plaintiffs' Unopposed Request for Attorneys' Fees and Costs ............ 15

IV.  CONCLUSION ................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979)........................................................................13

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)...............................................................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)...........................................................................9

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982)................................................................9, 10, 12

*Song v. THC-Orange County, Inc.*,
    No. 8:17-cv-00965-JLS-DFM, 2019 WL 13030225 (C.D. Cal. Feb. 28, 2019)................................................................................................5

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)..................................................................................10

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014)....................................................................12, 13

**RULES - OTHER**

Fed. R. Civ. P. 23.........................................................................................5, 10

Fed. R. Civ. P. 23(a) ............................................................................................3

Fed. R. Civ. P. 23(b)(2) .......................................................................................3

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................9, 11

Fed. R. Civ. P. 23(e) ..............................................................................1, 2, 9, 15

Fed. R. Civ. P. 23(e)(2).........................................................................................9

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment.............................................................................................7, 8

-ii-

1

**OTHER AUTHORITIES**

2

5 *Moore Federal Practice,* § 23.85[2][b] ..................................................................11

3

4

Newberg and Rubenstein on Class Actions, *Settlement notice manner
and method*, § 8:15 (6th ed. 2025).........................................................................11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After years of vigorous litigation and a year and a half of negotiations mediated by Magistrate Laurel Beeler, the Plaintiffs Coalition for Humane Immigrant Rights ("CHIRLA") and Inland Coalition for Immigrant Justice ("ICIJ," and together with CHIRLA, the "Plaintiffs"), on behalf of themselves and the Ruse Class, and Defendants Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), Todd M. Lyons, the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), and Ernesto Santacruz Jr., the Acting Director of the Los Angeles Field Office of ICE (the "Official Capacity Defendants") (collectively, the "Parties,") reached a settlement agreement of the Ruse Class claims in this action ("Ruse Class Agreement," or "Agreement"). *See* Dkt. 525-1, Padilla Decl., Ex. 1. The Court granted preliminary approval of the Ruse Class Agreement on May 5, 2025, and set a hearing for final approval on August 4, 2025. Dkt. 535.

The Agreement is fair, reasonable, and adequate, as required by Rule 23(e) of the Federal Rules of Civil Procedure. The Agreement requires that ICE officers in the Los Angeles Field Office, among other things, be equipped with identifiers on their clothing prominently identifying them with ICE during civil immigration enforcement operations and to refrain from leading class members to believe that they are state or local law enforcement. Additionally, the Agreement prohibits ICE officers from using certain ruses to enter a home, such as photo ruses, falsely stating they are conducting a criminal investigation, or misrepresenting safety issues, vehicle issues, or probation or parole checks. Plaintiffs' Counsel will monitor compliance with the terms of the Agreement, and the Court will retain jurisdiction

over enforcement of the Agreement and any matters arising therefrom for its duration.[1]

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Order (Dkt. 535 at 16), Plaintiffs now seek the Court's final approval of the Ruse Class Agreement. The proposed settlement satisfies all of the standards necessary for court approval. The Court should grant final approval of the Ruse Class Agreement, grant final certification of the Ruse Settlement Class, and provide for ongoing jurisdiction to enforce the terms of the Ruse Class Agreement.

## II.    BACKGROUND AND TERMS OF THE AGREEMENT

This section restates the Background and Terms of the Agreement section of Plaintiffs' Motion for Preliminary Approval, Dkt. 525.

### A.    Factual and Procedural History

Plaintiffs filed a class action complaint on April 16, 2020, challenging: (1) ICE officers' use of deceptive ruses wherein officers misrepresent their governmental identity and/or purpose to induce "consent" to enter a home or a resident's agreement to exit a home (the Ruse Class claims), and (2) ICE officers' entry into the protected curtilage of homes under a "knock and talk" theory for purposes, i.e., arrest, that exceed the scope of any implied license to enter (the "Knock and Talk" Class claims). *See* Dkt. 38.

On November 10, 2020, Defendants moved to dismiss Plaintiffs' Complaint. Dkt. 44. The Court denied the motion in large part on April 26, 2021. Dkt. 58. On

---

[1] Pursuant to the Ruse Class Agreement, the Parties request that for purposes of jurisdiction and enforcement that the Court "incorporate all the terms of the Agreement into its Order . . . and expressly retain jurisdiction for a period of three (3) years from the date of this Order to enforce the Settlement Agreement and to resolve any future disputes regarding interpretation, performance, or enforcement of the Settlement Agreement, including and expressly, the non-monetary terms set forth in the Settlement Agreement, as agreed to by the Parties as a condition of resolving their disputes[.]" *See* Dkt. 525-1, Padilla Decl., Appdx. A – Joint Stipulation.

1    February 7, 2023, the Court certified two classes—the Ruse Class and "Knock and
2    Talk" Class under Federal Rules of Civil Procedure 23(a) and (b)(2). Dkt. 335.

3          Discovery in this case was extensive and sometimes contentious, requiring
4    intervention from the District Court Magistrate Judge. For instance, there were
5    multiple motions to compel, including requests for sanctions, *see, e.g.*, Dkts. 94,
6    117, 185, 201, 206, disputes over depositions, *see, e.g.*, Dkts. 106, 160, 274, and
7    disputes over redactions and confidentiality designations, *see, e.g.*, Dkt. 163. The
8    Magistrate Judge ultimately ordered the Parties to attend weekly status conferences
9    to ensure discovery remained on track. Dkt. 201. As discovery neared its end,
10   Defendants revealed there had been improper destruction and "recreation" of arrest
11   records by ICE officers, leading to additional discovery and a motion for sanctions
12   filed by Plaintiffs. *See* Dkts. 420, 432, 458.

13         After the close of discovery, the Parties submitted cross-motions for summary
14   judgment on the Ruse and "Knock and Talk" Classes, Dkts. 447, 451, along with
15   Plaintiffs' motion for sanctions on document spoliation, Dkt. 458. The Parties then
16   reached a settlement in principle on the Ruse Class claims, and, to promote good
17   faith negotiations, on October 5, 2023, the Parties filed a stipulation requesting a
18   partial stay of proceedings for all claims except the "Knock and Talk" Class claims.
19   Dkt. 484. On May 15, 2024, the Court granted summary judgment in large part to
20   Plaintiffs on their "Knock and Talk" Class claims, Dkt. 506, and entered partial final
21   judgment with respect to those claims on June 24, 2025. Dkt. 542.

22   **B.**    **Notice to Class Members and Class Members' Comments and Objections**

23         After making the changes to the Notice requested by the Court in its order
24   granting preliminary approval of the Agreement, Dkt. 535 at 15, Declaration of
25   Diana Sánchez ("Sánchez Decl.") ¶ 2 & Ex. 1, the Parties provided notice to class
26   members through several avenues.

27

28

On May 8, 2025, the Notice was posted prominently in ICE detention centers in the Los Angeles Area of Responsibility. *See* Declaration of Assistant Field Office Director Jackson Lara ("Lara Decl."), ¶¶ 3-4. ICE also published the Notice on its public-facing legal notice website. Lara Decl. ¶ 5. In addition, by May 8, 2025, Plaintiffs published the Notice to the websites of the American Civil Liberties Union of Southern California ("ACLU"), CHIRLA, and ICIJ. *See* Sánchez Decl. ¶¶ 3-5 & Ex. 2. The Notice was also distributed directly to immigration attorneys through the local American Immigration Lawyers' Association listserv. *See* Sánchez Decl., ¶ 6 & Ex. 3.

The Notice states that the deadline for class members to submit an objection was June 20, 2025.[2] As of this date, no objections have been received by either the Plaintiffs or the Court. *See infra* at 14.

## C.    <u>Settlement Negotiations</u>

Settlement negotiations were lengthy and extensive, beginning in early 2023. Over the course of more than a year and a half, the Parties engaged in arm's-length negotiations, which included several settlement conferences with Judge Beeler, numerous conference calls between the Parties, and multiple rounds of exchanging proposed settlement terms.

As noted above, by October 2023, the Parties reached an agreement in principle regarding the Ruse Class claims. After that, the Parties spent approximately six (6) months reducing their agreement in principle to a written settlement agreement and working out provisions for documentation and monitoring. The Parties reached agreement on the final substantive terms resolving the Ruse Class claims in March 2024. After the Parties subsequently reached agreement on the amount to be paid for Plaintiffs' attorneys fees and costs on

---

[2] Forty-five days from the date of the Court's order fell on June 19, 2025, a federal holiday, therefore the Notice provided until June 20, 2025 to submit objections.

November 20, 2024, they added the final details to the settlement and executed the signed Agreement for the Ruse Class claims in late November 2024.

### 1.    The Proposed Agreement

#### (a)    The Settlement Class

The Parties have agreed that the Settlement Class will consist of:

> "all individuals residing at a home within the Los Angeles Area of Responsibility where ICE has conducted or will conduct a warrantless civil immigration enforcement operation in which ICE officers enter the home under a claim of consent, or where the individual exits their home at the request of ICE, without officers first verbally stating their true identity as immigration officers or their immigration law purpose."

*See* Dkt. 525-1, Padilla Decl., Ex. 1, at § II(D). The Court adapted this definition into its Order Granting Motion for Preliminary Approval of Class Action Settlement. *See* Dkt. 535, p. 4.

The Ruse Class as defined in the Agreement and this Court's Order is identical to the Ruse Class certified by the Court on February 7, 2023. Dkt. 335. For purposes of this Motion, the Court need not re-engage in an analysis of whether the class can be certified as this Court has already found that the elements of Rule 23 have been met. *See, e.g.*, *Song v. THC-Orange County, Inc*., No. 8:17-cv-00965-JLS-DFM, 2019 WL 13030225, at *2 (C.D. Cal. Feb. 28, 2019) ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.") (quoting Rule 23 advisory committee's notes to 2018 amendment). Certification of the class is proper for settlement purposes here for the same reasons the Court previously granted class certification.

1

(b)    *Terms of the Settlement*

2    The substantive terms of the Agreement address how ICE officers should

3 visually and verbally identify themselves when conducting civil immigration

4 enforcement operations at residences. The Agreement prohibits ICE officers from

5 identifying as state or local law enforcement when conducting such actions. It

6 further prohibits the use of certain ruses to gain consent to enter a home or ask a

7 resident to come outside. Additionally, the Agreement requires that ICE officers

8 document how they verbally identify themselves and how they explain their

9 governmental purpose for being at the home in certain cases. It also contains

10 provisions for training and monitoring of compliance with the Agreement.

11    The specific terms of the Agreement are summarized below:

12    ***Verbal and Visual Identification***

13    • ICE officers are prohibited from identifying as a state or local law

14      enforcement agency (like LAPD), probation, parole, or other non-federal

15      government agency when conducting an immigration enforcement action

16      at a home. *See* Dkt. 525-1, Padilla Decl., Ex. 1 at § III(A)(1)(a).

17    • ICE training will emphasize that if officers initially verbally identify as

18      "police" or as an "officer," they are expected to explain that they are with

19      "ICE" or "immigration" *before* asking to enter a home or asking someone

20      to exit a home. *Id*. at § III(A)(1)(c).

21    • ICE officers must identify as "ICE" or "immigration" when making an

22      arrest, or as soon as it is safe and possible. *Id*. at § III(A)(1)(c).

23    • With a few exceptions, ICE officers must have a visible "ICE" identifier

24      on their vest placards or body armor if they also have a "POLICE"

25      identifier. The "ICE" identifier must be at least the same size as the

26      "POLICE" identifier. *Id*. at § III(A)(1)(b).

27

28

***Prohibited Ruses***

- ICE officers must follow the Ninth Circuit rule and cannot engage in a ruse during a civil immigration enforcement action that misrepresents the officers' governmental identity or purpose. *Id*. at § III(B)(1).

- When ICE officers seek consent from a resident to enter their home or ask a resident to come outside, ICE officers *cannot* make false claims about why they are at the home. More specifically, ICE officers cannot:

  o Misrepresent that their purpose involves danger to the resident and/or public safety. *Id*. at § III(B)(2)(a).

  o State that they are conducting a criminal investigation when that is not true. *Id*. at § III(B)(2)(b).

  o Show photos of people who are not the person they want to arrest, or identify other individuals by name, and falsely claim that they are looking for those individual(s) at the home. *Id*. at § III(B)(2)(c).

  o Falsely claim that there is a legal or safety problem with a resident's car. *Id*. at § III(B)(2)(d).

  o Claim they are conducting a parole or probation check if that is not true, i.e., *unless* it is specifically an immigration parole check. ICE officers can only claim they have permission to enter a home or require a resident to exit a home under a resident's probation or parole terms *if* the ICE officer first verifies that the resident's probation or parole terms authorize ICE to make such a claim. *Id*. at § III(B)(2)(e).

***Directives and Trainings***

Within 30 days after the Effective Date of the Agreement, ICE will send a broadcast message to officers in the Los Angeles Field Office explaining their obligations under the Ruse Class Agreement. *Id*. at § III(C)(1). ICE officers in the Los Angeles Field Office will receive regular trainings on the requirements of the Agreement. *Id*. at § III(C)(2)(a)-(d) (including Fourth Amendment training (e.g.,

ruses and curtilage), proper documentation of enforcement actions, and compliance with ICE policies on record retention and preservation (e.g., retention of Field Operation Worksheets). Within 60 days after the Effective Date of the Agreement, the ICE in the Los Angeles Field Office will adopt or amend training materials implement the Ruse Class Agreement. *Id*. at § III(C)(3).

### *Documentation and Monitoring*

ICE officers must document information about how they verbally identified themselves and represented their purpose for being at a home. ICE supervisor(s) will review officers' documentation to make sure officers are complying with the terms of the Agreement. *Id*. at §§ IV(A)(1)-(2), (b). Every six months, ICE will provide Class Counsel with an Arrest Activity Report of ERO Los Angeles civil immigration residential operations. *Id*. at § IV(C). ICE will provide up to one hundred and ten (110) Form I-213s and fifteen (15) Field Operation Worksheets (FOWs) from each semiannual report to ensure ICE's compliance with the Agreement. *Id*. at § IV(D).

### *Dispute Resolution*

Violations of the Agreement are enforceable through a good-faith dispute resolution process between the Parties and, if needed, through Court intervention. *Id*. at § VI.

### 2.    Continued Jurisdiction of the Court

The Agreement provides that the Court will retain jurisdiction for enforcement purposes for three years from the Effective Date. *Id*. at § VII(C). The Agreement also requires the parties to exhaust a certain dispute resolution process before invoking the Court's jurisdiction. *Id*. at § VI. Should the Parties need to invoke the Court's jurisdiction to enforce the Agreement, the Parties agree that the Court has the power to award such relief and issue such judgment as the Court deems proper. *Id*. at § VI(E).

### D.    <u>Attorneys' Fees and Costs</u>

As part of the Agreement, Defendants have agreed to pay $2,600,000 to Class Counsel for fees and costs incurred in litigating the Ruse Class claims in this case. *Id*. at § X. Plaintiffs will file a separate request along with their motion for final approval of the settlement for Court approval of their attorneys' fees and costs. Defendants shall not oppose Plaintiffs' motion for fees and costs in the amount of $2,600,000. *Id*. at § X(A).

## III.    <u>THE RUSE CLASS AGREEMENT MEETS THE STANDARD FOR FINAL APPROVAL</u>

Settlement is "the preferred means of dispute resolution[,] . . . especially . . . in a complex class action litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). A "strong judicial policy" favors settlement in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under Federal Rule of Civil Procedure 23(e), a class action settlement that is binding on absent class members requires court approval. *See Officers for Just.*, 688 F.2d at 623. This court approval is a two-step process: (1) preliminary approval of the settlement, and (2) final determination that the settlement is fair, reasonable, and adequate after a notice period. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

In reviewing proposed class-action settlement agreements, there is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class. *See* Manual for Complex Litigation (Third) § 30.42 (1995). *See also Nat'l Telecomms. Coop.,* 221 F.R.D. at 528. The Court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. And, finally it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2).

In determining whether a settlement warrants approval, the court considers the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense,

complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of the counsel. *Officers for Just.,* 688 F.2d at 625. This list is non-exhaustive, and a reviewing Court need not find that all factors were satisfied. *Id.* "[D]ifferent factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The Ruse Class Agreement is fundamentally fair, adequate, and reasonable.

### A.    <u>The Ruse Class Notice Met the Requirements</u>

The notice method, timing, and content complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The notice also constituted the best notice practicable under the circumstances.

The Parties fully complied with the Court's order regarding the provision of notice to the Ruse Class. *See* Dkt. 535. By May 8, 2025, within three (3) days of the Court's preliminary approval of the Ruse Class Agreement, the Parties published the Notice at ICE detention centers and on the websites of the ACLU, CHIRLA, ICIJ, and ICE. *See* Lara Decl. ¶ 3-5; *see also* Sánchez Decl. ¶¶ 3-5 & Ex. 2. The Notice was published for at least forty-two (42) days. *See* Dkt. 535 at 15. The Notice was also distributed directly to immigration attorneys through the local American Immigration Lawyers' Association listserv. *See* Sánchez Decl., ¶ 6 & Ex. 3.[3]

Plaintiff's counsel chose to distribute the Class Notice in this manner to prioritize urgency and reach as many people as possible in the most efficient way. The Notice used accessible language and provided a brief description of the case and parties, the definition of the Ruse Class, the key provisions of the Ruse Class

---

[3] Class Counsel ACLU also published a post on social media networks about the Preliminary Settlement Approval and directing individuals to the ACLU's website where the Notice and Proposed Settlement Agreement are posted. Sánchez Decl. ¶ 7.

Agreement, and the award for attorneys' fees and costs to Class Counsel. *See* Fed. R. Civ. P. 23(c)(2)(B). Additionally, the Notice identified Plaintiffs' Counsel and clearly explained how the members of the Ruse Class may ask questions and/or lodge objections to the Agreement either with Class Counsel or directly with the Court. *See* Dkt. 535 (finding content of notice "sufficiently described" the nature of the action, the claims, and issues, and that it "adequately explain[ed] the terms of the Settlement Agreement"). The Notice was available in English and Spanish. *See* Sánchez Decl. ¶¶ 2-4; Lara Decl., ¶ 3-5.

The Notice plan was reasonably calculated to alert all interested Ruse Class members to the existence of the lawsuit, the nature of the allegations and claims, the terms of the proposed settlement, and their opportunity to file comments and/or objections to the Ruse Class Agreement. See Newberg and Rubenstein on Class Actions, *Settlement notice manner and method*, § 8:15 (6th ed. 2025).

**B.    The Ruse Class Agreement is Fair, Reasonable, and Adequate**

**1.    The Settlement Is a Result of the Strength of Plaintiff's Case and Provides a Substantial Benefit to the Class**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against [that which is] offered in the settlement." 5 *Moore Federal Practice*, § 23.85[2][b] (Matthew Bender 3d. ed.). In this case, the strength of Plaintiffs' claims, when balanced against what is offered in the Agreement, weighs in favor of approving the Agreement. Prior to negotiations, Plaintiffs vigorously litigated their case. Plaintiffs successfully overcame motions to dismiss, *see* Dkt. 58, and obtained class certification, *see* Dkt. 335. Plaintiffs were also successful in their motion for summary judgment on their "Knock and Talk" class claims before the District Court, *see* Dkt. 506, which raised some of the same procedural issues that would ultimately need to be decided in connection with Plaintiffs' Ruse Class claims. While the Parties hold differing views on Plaintiffs' likelihood of success on the

-11-

Ruse Class claims, the Agreement offers "fair, reasonable, and adequate" relief to the Ruse Class members on those claims without the need for continued litigation. *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014) (internal quotation marks omitted).

### 2.    The Agreement Avoids the Risk of Lengthy, Protracted and Complex Litigation

The Agreement is reasonable because it avoids the risk of lengthy and protracted litigation, while providing the Ruse Class with meaningful relief. In connection with settlement, the Parties sought to stay, and later withdrew, their cross-motions for summary judgment related to the Ruse Class claims, Dkts. 447, 451, 484, 485, as well as Plaintiffs' motion for sanctions related to spoliation, Dkt. 458. Continuing to litigate the Ruse Class claims now, including potentially to trial, would likely entail "substantial additional risk, discovery, time, and expense." *In re Toys R Us,* 295 F.R.D. at 451 (internal quotation marks omitted). This lengthy litigation would also create uncertainties for Plaintiffs, and lead to considerable delays before they, and the Ruse Class members, could obtain any relief.

The substantial costs and duration of continued litigation are important factors "'considered in evaluating the reasonableness of [a] settlement,'" highlighting the reasonableness of the Agreement. *Id*. at 452 (alteration in original, citation omitted); *see also Officers for Just.*, 688 F.2d at 626. The Agreement preserves resources by rendering further litigation unnecessary, providing beneficial resolution to both the Ruse Class members and the Defendants.

### 3.    The Parties Have a Comprehensive Understanding of the Case Due to the Stage of the Proceedings and the Extent of Discovery

The proceedings are at an advanced stage, with the Parties having completed discovery, including fact and expert discovery. Plaintiffs also conducted an additional round of discovery on the issue of ICE officers' destruction and "recreation" of arrest records, including multiple depositions. Dkt. 420, 432.

1   Furthermore, the Parties fully briefed voluminous cross-motions for summary

2   judgment on the Ruse Class claims, as well as a motion for sanctions on document

3   spoliation. Dkts. 447, 451, 458. Through this process, Class Counsel gained a

4   comprehensive understanding of ICE's ruse policies and practices, the evidence in

5   the case, as well as the outstanding legal questions, which informed the negotiation

6   of the Agreement. The Court should approve the Agreement for these reasons, as "it

7   suggests that the parties arrived at a compromise based on a full understanding of

8   the legal and factual issues surrounding the case." *In re Toys R-Us*, 295 F.R.D. at

9   454 (internal quotation marks omitted).

10          **4.      The Agreement Is the Result of Arms-Length Negotiations by Experienced Counsel**

11

12          This Court should give "'a presumption of reasonableness'" to the

13   recommendations of Class Counsel. *Id.* at 455 (quoting *Boyd v. Bechtel Corp.*, 485

14   F. Supp. 610, 622 (N.D. Cal. 1979). Class Counsel has substantial experience with

15   immigration issues, civil rights actions, and complex class action litigation. And

16   Defendants' counsel has extensive experience defending lawsuits raising

17   constitutional and statutory claims related to ICE. Finally, Judge Beeler, who helped

18   to broker the Agreement, has a great deal of experience with lawsuits against ICE.

19          The Agreement is the product of extensive, non-collusive negotiation between

20   Counsel for the Parties. The Parties have vigorously litigated this case for over four

21   years, and have negotiated the Agreement for over a year, at arms-length.

22   Negotiations included settlement conferences, numerous conference calls between

23   the Parties, and multiple rounds of exchanging proposed settlement terms. Class

24   Counsel believes that the Agreement is in the best interest of the Ruse Class

25   members, as it provides them with meaningful benefits and protections from further

26   violations of their rights, benefits that they may not receive if the case proceeds to

27   trial. Furthermore, the Ruse Class will receive those benefits immediately, avoiding

28   the possibility of waiting years for litigation and any appeals to run their course.

Given Class Counsel's extensive experience with similar complex litigation, this endorsement strongly supports preliminary approval of the Agreement.

### C.     <u>Ruse Class Members Did Not Submit Any Objections</u>

Ruse Class members had forty-five (45) days—from May 8, 2025, through June 20, 2025—to file comments and/or objections with the Court or to Class Counsel. As of this filing, no class members have objected to the settlement. *See* Sánchez Decl. ¶¶ 8-14; Saarman González Decl. ¶¶ 2-6; Dkt. 543 (Parties' Notice of No Objections Received); Dkt. 544 (Notice from Court Confirming No Objections to Settlement Agreement).

Ruse Class members were able to file their objections and any supporting papers with the Court electronically, in person, or by mail. Any member of the Ruse Class could also submit objections to Class Counsel by mail, email, or telephone.

As stated in the Notice and on ACLU's website, (1) Class Counsel ACLU maintains a telephone hotline for individuals to submit objections and find out more information about the settlement, (2) Class Counsel Munger, Tolles, and Olson LLP maintains an email address where class members can email objections or questions about the settlement, and (3) Class Counsel Munger, Tolles, and Olson LLP receives and monitors any objections submitted by mail. Sánchez Decl. ¶¶ 8-9; Saarman González Decl. ¶¶ 2-5.

As of July 3, 2025, a total of three individuals contacted the hotline and one individual contacted Class Counsel by email. Sánchez Decl. ¶¶ 11-13; Saarman González Decl. ¶ 4. None of these individuals submitted an objection or expressed concerns about the Agreement. One individual contacted the hotline using the Talton phone service, did not leave callback information, and did not call again. Sánchez Decl. ¶¶ 12-13. The remaining individuals were calling—and the one individual was emailing—to simply seek more information and/or legal representation for their immigration matters unrelated to this action. Sánchez Decl. ¶ 11; Saarman González Decl. ¶ 4.

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### D.     Plaintiffs' Unopposed Request for Attorneys' Fees and Costs

The basis for Class Counsel's attorneys' fees and costs motion is more fully briefed in the Motion for Attorneys' Fees. *See* Dkt. 546. Defendants have agreed to pay Plaintiffs' attorneys' fees and costs in the amount of $2,600,000, subject to Court approval of the Ruse Class Agreement. *See* Dkt., 525-1 Padilla Decl., Ex. 1 at § X.A. This amount—which reimburses Class Counsel for a fraction of their actual hours spent and out-of-pocket expenses—is fair and reasonable in light of the difficult disputes that have been addressed in this litigation. *See* Dkt. 546. As noted above, no Class Members submitted any objection to the Agreement, including to the amount of attorneys' fees and costs that was referenced in the Notice. Sánchez Decl. ¶¶ 8-14; Saarman González Decl. ¶¶ 2-6; Dkt. 543 (Parties' Notice of No Objections Received); Dkt. 544 (Notice from Court Confirming No Objections to Settlement Agreement).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue final approval of the Ruse Class Agreement, issue an order finding the Ruse Class Agreement is fair, reasonable, and adequate as required by Rule 23(e) of the Federal Rules of Civil Procedure, grant Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs, grant final certification of the Ruse Settlement Class, and provide for continuing jurisdiction to enforce the terms of the Ruse Class Agreement.

Dated: July 7, 2025

MUNGER, TOLLES & OLSON LLP
JACOB KREILKAMP
GIOVANNI SAARMAN GONZÁLEZ
GABRIEL BRONSHTEYN


   */s/ Giovanni Saarman González*
Giovanni Saarman González
Attorneys for Plaintiffs

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT