STEPHANIE PADILLA (SBN 321568)
*spadilla@aclusocal.org*
EVA BITRÁN (SBN 302081)
*ebitran@aclusocal.org*
DIANA SÁNCHEZ (SBN 338871)
*dianasanchez@aclusocal.org*
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Telephone: (213) 977-5232
Facsimile:  (213) 201-7878

Attorneys for Plaintiffs
*(additional counsel information on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| OSNY SORTO-VASQUEZ KIDD, et al., | Case No. 2:20-cv-03512-ODW-JPR |
|---|---|
| Plaintiffs, | **CLASS ACTION** |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS** |
| KRISTI NOEM,[1] United States Secretary of Homeland Security, in her official capacity, et al., | |
| Defendants. | Date: August 4, 2025 Time: 9:00 a.m. Courtroom: 5D Judge: Hon. Otis D. Wright II |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kristi Noem substituted in as Defendant for Alejandro Mayorkas.

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT RIGHTS CLINIC
401 E. Peltason Drive,
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile:  (949) 824-2747

JACOB KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile:  (213) 687-3702

GIOVANNI SAARMAN GONZÁLEZ (SBN 314435)
*giovanni.saarmangonzalez@mto.com*
GABRIEL BRONSHTEYN (SBN 338011)
*gabriel.bronshteyn@mto.com*
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile:  (415) 512-4077

Attorneys for Plaintiffs

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on August 4, 2025 at 9:00a.m., or as soon thereafter as counsel may be heard, before the Honorable Otis D. Wright, in Courtroom 5D, Fifth Floor of the First Street United States Courthouse, 350 1st Street, Los Angeles, CA 90012, Plaintiffs Coalition for Humane Immigrant Rights ("CHIRLA") and Inland Coalition for Immigrant Justice ("ICIJ," and together with CHIRLA, the "Plaintiffs"), on behalf of themselves and the Ruse Class, will and hereby do move the Court for approval of a settlement resolving Plaintiffs' claim for attorneys' fees and costs relating to the Ruse Class claims under the Equal Access to Justice Act ("EAJA") and any other applicable sources of law.  This motion is made pursuant to 28 U.S.C. §§ 2412(a)(1), (b), and (d)(1)(A) and Federal Rules of Civil Procedure Rule 23 and 54(d).

   Plaintiffs respectfully request that the Court enter an order approving the Agreement awarding Plaintiffs $2,600,000 in attorneys' fees and costs in full and complete satisfaction of the Ruse Class fees and costs claims[2] by Plaintiffs.  This motion reflects a negotiated settlement with Defendants and is unopposed.

   This motion is based upon this Notice, the Memorandum of Points and Authorities, supporting declarations, all accompanying exhibits, the filings in this action, the Proposed Order, and any and all evidence, argument, or other matters that the Court may consider.

---

[2] The parties agreed to focus settlement negotiations on the Ruse Class claims, leaving disposition of Plaintiff's Knock and Talk Class claims to the District Court. As such, these fees and costs solely reflect those incurred in relation to the Ruse Class Claims.

Dated: July 7, 2025

MUNGER, TOLLES & OLSON LLP
JACOB KREILKAMP
GIOVANNI SAARMAN GONZÁLEZ
GABRIEL BRONSHTEYN

*/s/ Giovanni Saarman González*
Giovanni Saarman González
Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

BACKGROUND ................................................................................................... 2

I.    Factual and Procedural History ................................................................. 2

    A.    Ruse Class Claims – Fees and Costs Settlement Negotiations .............. 2

    B.    Terms of the Settlement Agreement ....................................................... 6

ARGUMENT ......................................................................................................... 6

II.   Plaintiffs are Entitled to Fees as Prevailing Parties Under the EAJA ............... 6

III.  The Parties Agreed on Fees and Costs in Arm's Length Negotiations ............. 7

IV.   The Requested Award is Fair and Reasonable .................................................. 8

    A.    Petitioners' Counsel Achieved Excellent Results for the Ruse
Class ........................................................................................................ 8

    B.    The Time Spent Was Reasonable Given the High Level of Skill
and Resources Required .......................................................................... 9

    C.    The Fee Award Accounts for the Considerable Skill and
Experience of Petitioners' Counsel ...................................................... 11

    D.    Plaintiff's Original Demand Was Reasonable, and the Fee in the
Settlement Agreement is Approximately Half of Those Fees .............. 16

    E.    The Award in This Case is Comparable to Other Similar Cases ......... 17

CONCLUSION ................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Barrios v. Cal. Interscholastic Fed'n*,
    277 F.3d 1128 (9th Cir. 2002) ...................................................................... 6

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................... 7, 8

*Carbonell v. INS*,
    429 F.3d 894 (9th Cir. 2005) ...................................................................... 6

*Cox v. Clarus Mktg. Grp.*,
    LLC, 291 F.R.D. 473 (S.D. Cal. 2013) ...................................................... 7

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*,
    No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ................................ 7

*Gomez-Sanchez v. Barr*,
    No. 14-72506, Dkt. 88 (9th Cir. July 11, 2019) ................................. 9, 13

*Graves v. Arpaio*,
    633 F. Supp. 2d 834 (D. Ariz. 2009) aff'd, 623 F.3d 1043 (9th Cir.
    2010) ............................................................................................................ 8

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .................................................................................... 8

*Hernandez v. Garland*,
    No. EDCV16620JGB, 2022 WL 1176752 (C.D. Cal. Mar. 28, 2022) ............... 17

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ........................................................................ 8

*Li v. Keisler*,
    505 F.3d 913 (9th Cir. 2007) ...................................................................... 7

*Ms. L v. ICE*,
    No. 3:18-cv-00428-DMS-AHG, Dkt. 757 (S.D. Cal. Sep. 24, 2024) ................. 16

*Nadarajah v. Holder*,
    569 F.3d 906 (9th Cir. 2009) ............................................................. 9, 12, 13

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR
ATTORNEYS' FEES AND COSTS

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................. 7, 18

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ...................................................................... 12, 13

*Pirus v. Bowen*,
    869 F.2d 536 (9th Cir. 1989) ................................................................. 12

*Prison Legal News v. Schwarzenegger*,
    608 F.3d 446 (9th Cir. 2010) ................................................................. 13

*Roy v. Cnty. of Los Angeles*,
    No. 2:12-cv-09012-AB, Dkt. 638 (C.D. Cal. Feb. 3, 2022) ................................ 17

*Saravia v. Garland*,
    No. 3:17-cv-03615-VC, Dkt. 264 (N.D. Cal June 7, 2021) ................................ 17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................. 7, 8

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir.2002) ................................................................... 8

*Washington v. GEO Grp., Inc.*,
    No. 3:17-CV-05806-RJB, 2021 WL 5907799 (W.D. Wash. Dec. 14,
    2021) .......................................................................................... 17

*Zepeda Rivas v. Jennings*,
    No. 3:20-cv-02731, Dkt. 1257 (N.D. Cal June 9, 2022) ..................................... 17

**FEDERAL STATUTES**

8 U.S.C. § 1367 .................................................................................... 3

28 U.S.C. § 2412 .................................................................................. 6

28 U.S.C. § 2412(d)(1) ........................................................................... 8

28 U.S.C. § 2412(d)(2)(A)(ii) ................................................................... 11

Immigration and Nationality Act ............................................................... 10

**STATE STATUTES**

Equal Access to Justice Act ............................................................. 2, passim

**STATE RULES**

Rule 30(b)(6)............................................................................................10

**RULES - OTHER**

Fed. R. Civ. P. 23(h)......................................................................1, 2, 7, 18

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment..................................................................................9, 13

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The Plaintiffs Coalition for Humane Immigrant Rights ("CHIRLA") and Inland Coalition for Immigrant Justice ("ICIJ," and together with CHIRLA, the "Plaintiffs"), on behalf of themselves and the Ruse Class, and Defendants Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), Todd M. Lyons, the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), and Ernesto Santacruz Jr., the Acting Director of the Los Angeles Field Office of ICE (collectively, "Official Capacity Defendants,") (collectively the "Parties,") have reached a settlement agreement to resolve the Ruse Class Claims[3] in this action ("Ruse Class Agreement," or "Agreement"). *See* Dkt. 525-1, Padilla Decl., Ex. 1.

Under the terms of the Ruse Class Agreement, Defendants have agreed to pay attorneys' fees and costs to Plaintiffs' counsel in the amount of $2,600,000. *Id*. at § X.A.  This amount is only about 54 percent of Plaintiffs' originally demanded fees and is the result of extensive arm's length negotiations, culminating in mediation before Judge Laurel Beeler.  The agreed-upon fees and costs amount reimburses Plaintiffs' counsel for some, but not all, out-of-pocket expenses and actual hours expended litigating this matter.  It is fair and reasonable in light of the extraordinary results obtained through this litigation, the extensive effort expended by Plaintiffs' counsel, the difficulty and complexity of the litigation, and the experience and skill of Plaintiffs' counsel.

Through this motion, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, Plaintiffs seek the Court's approval of the parties' agreed-upon fees and costs.  Pursuant to Federal Rule of Civil Procedure 23(h), class members must be provided with notice and this motion and an opportunity to comment on any motion

---

[3] The Agreement does not extend to the "Knock and Talk" class or claims.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS

for fees.  The class notice provides such notice to class members consistent with Rule 23(h).

For these reasons, and as further detailed below, the Court should grant the Parties' agreed-upon award of $2,600,000 in fees and costs.

## BACKGROUND

### I.    Factual and Procedural History

The more general factual background, procedural history, negotiation history concerning the settlement of the Ruse Class claims, and the substantial benefits of the settlement to the Ruse Class are set forth in detail of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Claims Settlement, *See* Dkt. 525, and the concurrently filed Motion for Final Approval of Ruse Class Action Settlement. Therefore, Plaintiffs here focus on the negotiation history related specifically to the fees and costs portion of the Ruse Class Agreement.

### A.    Ruse Class Claims – Fees and Costs Settlement Negotiations

In early 2024, during settlement negotiations, the parties explored the feasibility of resolving Plaintiffs' claim for fees and costs through a categorization approach.  Plaintiffs compiled a list of categories and made an opening demand for attorneys' fees and costs on May 1, 2024 supported by a table detailing each category of work, the discount applied to the lodestar total for that category, the rationale for the discount, as well as justification for enhanced Equal Access to Justice Act ("EAJA")  rates for several attorneys on the matter, and additional write-offs Plaintiffs had made, such as for work completed by law students and summer associates.  This demand included many categorical discounts, including:

- A 25% discount to both pre-filing investigation and complaint work, and the Official Capacity Defendants' Motion to Dismiss, to account for non-segregable entries that also related to Knock and Talk Class claims and Plaintiff Kidd's FTCA/Bivens claims;

- A 20% discount to Plaintiffs' Motion for Class Certification to account for non-segregable entries that also related to the Knock and Talk Class claims;

- A 30% discount to work on the Motion for Clarification Regarding the Court's Order on Pseudonyms to account for the fact that this related to the Individual Defendants—this work was not excluded because the conduct and testimony of Individual Defendants also featured significantly in Plaintiffs' evidence to support class claims;

- A 20% discount to work on Plaintiffs' Motion to Compel CHIRLA's Request for Productions, Sets One and Two, to account for the fact that this related to discovery for all of Plaintiffs' class claims, including Knock and Talk Class claims;

- A 30% discount to work on Defendants' Motion to Enforce Agreement Between Counsel to account for the fact that this related to the Individual Defendants—this work was not excluded because the conduct and testimony of Individual Defendants also featured significantly in Plaintiffs' evidence to support class claims;

- A 20% discount to work on Plaintiffs' Motion to Compel Production of Redacted Information and De-Designate Confidential Documents to account for the fact that this related to discovery for all of Plaintiffs' class claims, including Knock and Talk Class claims;

- A 20% discount to work on Plaintiffs' Motion to Enforce regarding CHIRLA's Request for Production Number 21 (Videos) to account for the fact that this related to discovery for all of Plaintiffs' class claims, including Knock and Talk claims;

- A 20% discount to work on Plaintiffs' Motion for a Protective Order and/or Enforcing Clawback Provision regarding 8 U.S.C. § 1367 to account for the

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND COSTS

fact that this related to materials relevant to all of Plaintiffs' class claims, including Knock and Talk Class claims;

- A 30% discount to work on Depositions of the Individual Capacity Defendants and Related Motions to Compel to account for the fact that this related to the Individual Defendants—this work was not excluded because the conduct and testimony of Individual Defendants also featured significantly in Plaintiffs' evidence to support class claims;

- A 20% discount to work on depositions of other ICE witnesses to account for the fact that this related to discovery for all of Plaintiffs' class claims, including Knock and Talk Class claims;

- A 30% discount to work on Other Kidd Arrest Investigation, Written Discovery, and Depositions to account for the fact that this related to Plaintiff Kidd and his arrest—this work was not excluded because Kidd's experience and his arrest also constituted part of the proof in support of Plaintiffs' class claims;

- A 20% discount to work on depositions of Plaintiff Coalition and Class Members to account for the fact that this related to discovery for all of Plaintiffs' class claims, including Knock and Talk Class claims;

- A 20% discount to work on other written discovery, discovery review, expert work, and expert discovery related to class claims to account for the fact that this related to discovery for all of Plaintiffs' class claims, including Knock and Talk Class claims;

- A 20% discount to work on Parties' Initial Cross Motions for Summary Judgment as to Class Claims to account for non-segregable entries that also related to Knock and Talk Class claims;

- A 20% discount to work on Field Operating Worksheets (FOWs)/Target Folder Spoliation to account for the fact that this related to discovery for all of Plaintiffs' class claims, including Knock and Talk Class claims; and

- A 25% discount to other case management tasks to account for non-segregable entries that also related to Knock and Talk Class claims and Plaintiff Kidd's FTCA/*Bivens* claims.

Subsequently, Defendants requested and Plaintiffs provided all of Plaintiff Counsel's billing entries—totaling more than 12,000 entries—following execution of a confidentiality agreement with regard to the entries.

The parties negotiated further over the following months.  Plaintiffs transmitted, upon Defendants' request, a version of the spreadsheet containing the billing entries that included Excel formulas.  The Parties met and conferred multiple times regarding these calculations.  Defendants then submitted a recommendation for settlement authority.  During the course of negotiations, the parties disputed the likelihood that Plaintiffs would prevail on an EAJA claim for their Ruse Class claims, whether Defendants' litigation positions were substantially justified, whether Plaintiffs' total number of hours were reasonable, whether the hours reflected a reasonable hourly rate, and whether a reasonable number of attorneys worked on the case.

At the conclusion of over seven months of negotiations, the Parties participated in mediation before Judge Beeler on November 20, 2024, where they ultimately resolved Plaintiffs' fees and costs.  The fee award agreed upon reflects approximately 54 percent of Plaintiffs' initial demand, which itself already incorporated substantial discounts.  Kreilkamp Decl. ¶¶ 24, 31.  Further, Plaintiffs incurred many hundreds of hours of work, as well as additional costs, *after* the May 1, 2024 demand, for which they would have been entitled to seek recovery if they had presented a noticed motion for fees and costs, and for which they never made a

formal demand.  Kreilkamp Decl. ¶¶ 25-30.  As a result, the negotiated fee and costs amount reflects an even lower percentage of the total incurred by Plaintiffs in this case.

### B. Terms of the Settlement Agreement

As set forth in the Class Action Settlement Agreement, *see* Dkt. 525-1, Padilla Decl., Ex. 1 at § X, the agreement provides that Defendants shall pay to Class Counsel the sum of $2,600,000.  Defendants shall deliver this payment within 60 days after the Effective Date, by direct wire transfer into Class Counsel's designated account.  *Id.*  This will settle and resolve any claims by Plaintiffs or Class Counsel for attorneys' fees related to the Ruse Class claims under the EAJA, 28 U.S.C. § 2412, or any other statute, including Plaintiffs' pending motion for sanctions, Dkt. 305, the motion for sanctions that was denied without prejudice, Dkt. 458, as well as costs related to the Ruse Class claims of this Action under 28 U.S.C. § 2412.  *Id.*  The settlement does not address or resolve Plaintiffs' potential claim for an award for attorneys' fees and costs for the Knock and Talk Class claims.  *Id.*

## ARGUMENT

## II. Plaintiffs are Entitled to Fees as Prevailing Parties Under the EAJA

As a threshold matter, there can be no dispute that Plaintiffs are prevailing parties under EAJA if the Court approves the substantive settlement of the Ruse Class claims that the Parties have negotiated.  Such a settlement would qualify Plaintiffs to be prevailing parties because it secures a substantial, important, and favorable resolution of this action, enforceable in and by the Court, that materially changes the legal relationship between the parties. *See Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (recognizing a party prevails by obtaining enforceable judgment, consent decree, or judicially enforceable settlement agreement); *see also Carbonell v. INS*, 429 F.3d 894, 899–900 (9th Cir. 2005) (explaining that, in the Ninth Circuit, even "litigants who

1　achieve relief other than a judgment on the merits or a consent decree are prevailing

2　parties.").  Essentially, because Plaintiffs would be "obtaining the desired relief

3　from the federal court," they are prevailing parties. *Li v. Keisler*, 505 F.3d 913, 917

4　(9th Cir. 2007).

5　**III.　The Parties Agreed on Fees and Costs in Arm's Length Negotiations**

6　　　　In a certified class action, courts may award reasonable attorneys' fees

7　authorized by the parties' agreement.  Fed. R. Civ. P. 23(h), *see Staton v. Boeing*

8　*Co.,* 327 F.3d 938, 963 (9th Cir. 2003).  When the parties have reached an

9　agreement regarding fees and costs, the Court's task becomes to "ensure that the

10　award, like the settlement itself, is reasonable."  *In re Bluetooth Headset Prods.*

11　*Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The Court assesses the award to

12　ensure that it is "not the product of fraud or overreaching by, or collusion between,

13　the negotiating parties," and is, "taken as a whole, … fair, reasonable and adequate."

14　*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625

15　(9th Cir. 1982).  The Parties' "agreement as to the attorney fee award is accorded

16　great weight" where it appears to be the result of arm's length negotiations.  *Cox v.*

17　*Clarus Mktg. Grp.*, LLC, 291 F.R.D. 473, 482 (S.D. Cal. 2013).  Courts are

18　"reluctant to interpose [their] judgment as to the amount of attorneys' fees in the

19　place of the amount negotiated by the adversarial parties in the litigation,"

20　particularly where the fees were "negotiated at arm's length with sophisticated

21　defendants by the attorneys who were intimately familiar with the case."  *In re First*

22　*Cap. Holdings Corp. Fin. Prods. Sec. Litig.,* No. MDL 901, 1992 WL 226321, at *4

23　(C.D. Cal. June 10, 1992) (approving an $8,000,000 fee award). The same is true

24　here:  As outlined in Plaintiffs' Unopposed Motion for Preliminary Approval of

25　Proposed Class Claims Settlement (*see* Dkt. 525), this entire settlement—including

26　the fee provisions—was the result of arms-length negotiations in the course of

27　intensely litigated proceedings.  This included multiple meet-and-confers and

28

disputes about the proper discounts to include in Plaintiffs' fee calculations, culminating in mediation before Judge Laurel Beeler.

## IV.    The Requested Award is Fair and Reasonable

In evaluating the reasonableness of a fee award, courts look to applicable fee-shifting statutes as a benchmark. *See, e.g., Staton*, 327 F.3d at 965-66.  Here, the applicable statute is the EAJA, which provides for awarding fees and costs to a prevailing party in cases against the United States, including governmental officials in their official capacities.  *See* 28 U.S.C. § 2412(d)(1).  In civil rights cases such as this, courts typically use the "lodestar method," calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the region, considering the lawyer's experience.  *In re Bluetooth*, 654 F.3d at 941.  While this lodestar method is generally applied to determine the reasonableness of an award, the Ninth Circuit also looks to numerous factors, including the results achieved; the skill required and the quality of work; the experience, reputation, and ability of the attorneys; and the awards made in similar cases.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002); *see also Graves v. Arpaio*, 633 F. Supp. 2d 834, 842 (D. Ariz. 2009) *aff'd*, 623 F.3d 1043 (9th Cir. 2010) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  All of these factors weigh in favor of upholding the agreed-upon award in this case.

### A.    Petitioners' Counsel Achieved Excellent Results for the Ruse Class

The Settlement Agreement's fee award compensates Plaintiffs for the efforts expended by their litigation team in this matter.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND COSTS

Such is the case here:  Plaintiffs achieved significant success as outlined in the settlement agreement.  (*see* Dkt. 525-1, Padilla Decl., Ex. 1 at § X.)  Broadly, this includes an agreement by ICE Officers in the Los Angeles Field Office to (1) refrain from identifying themselves as specific state or local law enforcement agencies; (2) wear visible "ICE" identifiers where there are "Police" identifiers; (3) identify themselves as "ICE" or "immigration" at the time of an arrest, or as soon as it is practical and safe to do so; (4) refrain from engaging in certain ruses that misrepresent their governmental identities or governmental purpose; (5) train their personnel on these policies and other Fourth Amendment obligations; and (6) engage in documentation and monitoring of how officers identify themselves. These results are critical to safeguarding the Ruse Class's Fourth Amendment rights, and justify the fee agreement reached in this case.

## B.    The Time Spent Was Reasonable Given the High Level of Skill and Resources Required

The fees and costs incurred in this case are also reasonable given the complex and demanding nature of this action.  For years, Plaintiffs have vigorously litigated this case, which was made significantly more resource-intensive by Defendants' obstruction and failure to fulfill discovery obligations.  The docket alone reflects over five hundred entries.

The Ninth Circuit has also recognized that certain types of litigation involving immigration require specialized skills and knowledge.  *Nadarajah v. Holder*, 569 F.3d 906, 912-15 (9th Cir. 2009) (recognizing that enhanced rates are appropriate where a case involves "unique issues of statutory and constitutional immigration law" add requires "specialized expertise in constitutional immigration law and litigation involving the rights of detained immigrants"); *see also Gomez-Sanchez v. Barr*, No. 14-72506, Dkt. 88 at 7 (9th Cir. July 11, 2019) (awarding enhanced rates because "knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law . . . [was] needed to give the [immigrant] a fair shot at

prevailing.") (citation omitted).  This case involves similarly complex issues requiring not only experience in class action practice, but expertise in the Immigration and Nationality Act (INA) and its jurisdictional provisions and their application to claims, administrative law, and the constitutional rights of immigrants.  *See*, *e.g.*, Dkts. 58, 335, 506.

Recognizing the thorny legal and factual issues presented by this civil rights class action, counsel for both sides engaged in over a year of settlement negotiations, passing multiple settlement drafts and requesting several extensions from the Court before finalizing an agreement.  Key aspects of the case requiring work by Plaintiffs' counsel included:

- Significant legal and factual investigations, including interviews with putative class members, to prepare the complaint;
- Defendants' successive motions to dismiss on complex legal issues, which Plaintiffs defeated;
- A contested motion for class certification, which required supplemental briefing;
- The need to develop a comprehensive factual record, requiring Plaintiffs to take and defend over 40 depositions, including Rule 30(b)(6) and expert depositions;
- Repeated delays to the case schedule, requiring Plaintiffs to seek the Court's assistance, including in the form of multiple motions to compel and several motions for sanctions;
- Defendants' insistence that the names of individual officers ought to be withheld from the public, which resulted in the need to re-designate numerous deposition transcripts and ultimately required many under seal filings throughout the litigation;
- The need to brief cross-motions for summary judgment; and

-10-

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND COSTS

- The need to devote additional time and resources to Defendants' spoliation and improper "recreation" of evidence, culminating in a motion for evidentiary and monetary sanctions.

Faced with these complexities, Plaintiffs' counsel exercised billing judgment in compiling an initial fee request that was both reasonable and well-supported. Plaintiffs' May 1, 2024 letter describes in detail Plaintiffs' attorneys' fees and costs. *See* Padilla Decl. Ex. 10 (5/1/2024 Letter to Defendants). The letter also explains Plaintiffs' efforts to exercise billing judgment by applying extensive discounts to the fee, including excluding work associated exclusively with Plaintiffs' Knock and Talk Class claims; excluding work associated exclusively with Plaintiff Kidd's individual claims for damages; excluding a substantial portion of the fees attributable to work by law students, interns, and summer associates; and excluding or discounting various other individual billing entries where appropriate. *See, supra,* Background, Part I(A).

### C. The Fee Award Accounts for the Considerable Skill and Experience of Petitioners' Counsel

The agreed upon award is also supported by the skill and experience of Plaintiffs' counsel, including now Magistrate Judge Michael Kaufman, and Attorneys Anne Lai and Stephanie Padilla. These attorneys possess distinctive knowledge about federal class action litigation involving constitutional claims on behalf of immigrants. Their knowledge of the complex intersection of immigration, administrative, and constitutional law has been necessary to the success of this litigation.

For this reason, Plaintiffs' original calculation of fees reflected enhanced rates for these attorneys' time. Under the EAJA, a court may award attorneys' fees in excess of the statutory rate when "special factor[s]" are present, "such as the limited availability of qualified attorneys for the proceedings involved, [which] justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Under this provision, the statutory rate

1  may be increased when there is a limited availability of "attorneys having some

2  distinctive knowledge or specialized skill needful for the litigation in question . . . .

3  Examples . . . would be an identifiable practice specialty such as patent law, or

4  knowledge of a foreign law or language." *Pierce v. Underwood*, 487 U.S. 552, 571-

5  72 (1988); *see Pirus v. Bowen*, 869 F.2d 536, 541-42 (9th Cir. 1989); *Nadarajah*,

6  569 F.3d at 913.

7        Attorneys Kaufman, Lai, and Padilla brought a unique combination of

8  distinctive knowledge and specialized skills necessary to litigate this action and

9  address novel legal questions in the case.  Padilla Decl. ¶¶ 2-15; Lai Decl. ¶¶ 2-12.

10 Attorneys Kaufman, Lai, and Padilla possess specialized expertise and knowledge in

11 the complex and highly nuanced field of immigration litigation, particularly cases

12 involving the constitutional rights of immigrants; jurisdictional limits on judicial

13 relief in the immigration context; and other specialized issues that arise when

14 seeking relief on behalf of large groups of immigrants—a unique mix of expertise

15 that is not easily replicated in the bar at large.  *Id.*  Plaintiffs' counsel are also

16 uniquely suited to their role, being familiar with DHS and ICE and having a deep

17 understanding of the unique needs of the immigrant communities.  *Id.* In addition,

18 this case has been very litigious—for example, requiring extensive discovery motion

19 practice—which necessitated highly technical substantive and procedural

20 knowledge about ICE operations and applicable law.

21        Attorney Kaufman worked on complex immigration cases for over fifteen

22 years, and represented immigrants and immigrants' rights organizations in a number

23 of cases raising complex legal issues.  Padilla Decl. ¶¶ 8-15.  Attorney Kaufman

24 served as lead counsel on several precedent-setting cases in the field of immigration.

25 *Id.*  He is a recognized expert in the field and has won numerous awards for his

26 litigation. *Id.*  Attorney Lai has over a decade and a half of experience litigating

27 complex civil and constitutional rights cases in the federal courts, many of which

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND COSTS

involved the protection of immigrants' rights as well as systemic challenges on Fourth Amendment grounds.  Lai Decl. ¶¶ 2-12.  She has also given lectures, CLEs, and authored publications on immigration law, procedural issues arising from enforcement of federal immigration law, constitutional policing, and the intersection between immigration law and criminal law.  *Id*.  Attorney Lai has served as lead and co-lead counsel on several immigration class action lawsuits.  *Id*.  Attorney Padilla litigated complex immigration and other federal law cases for over five years, has served as co-lead counsel on cases involving immigration detention conditions, as well as Fourth Amendment challenges.  Padilla Decl ¶¶ 3-7.  She has similar experience to that of ACLU attorneys when the Ninth Circuit first recognized their specialized expertise in this area. *Id.*; *see also Gomez-Sanchez,* No. 13-72506, Dkt. 88 (granting EAJA fees at market rates for an ACLU attorney with five years of experience).

   Once it is established that the attorneys possess specialized skills and knowledge and that those skills were needed for the litigation, attorneys may be compensated at prevailing market rates.  *See Pierce*, 487 U.S. at 571-72; *Nadarajah*, 569 F.3d at 916. "[T]he proper scope of comparison … extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter." *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).  In Plaintiff's initial calculations, Attorneys Kaufman, Lai, and Padilla sought compensation at a rate of $745 and $765 for 2018, respectively; $765, $785, $490 for 2019; $785, $800, $520 for 2020; $800, $820, $550 for 2021; $820, $855, $585 for 2022; $855, $875, $615 for 2023; $890 and $640 for 2024. These rates are based on their years of practicing law and the year in which their work was performed.  Padilla Decl ¶ 25; Lai Decl. ¶ 17.  The rates fall at or below prevailing market rates for attorneys with counsel's respective levels of experience

in the relevant community of the Central District of California. *See* Padilla Decl Ex. 1.

Plaintiffs would not have been able to locate counsel with comparable knowledge or skill within the relevant legal markets who would have taken on a matter of this size, complexity, and intensity at the statutory EAJA rate. Enhanced rates for Attorneys Kaufman, Lai, and Padilla are reasonable and consistent with the law, given the specialized nature of the legal work and the prevailing rates for similarly experienced attorneys in the relevant community.

Plaintiffs further exercised billing judgment by applying the standard EAJA rates to the remainder of their attorneys, notwithstanding that certain additional attorneys would likely qualify for enhanced rates (or would be entitled to market rates for at least some of the hours expended based the Court's award of sanctions). For example, Attorney Kreilkamp has been practicing in complex civil litigation and civil rights *pro bono* litigation for almost twenty years. He has litigated against the federal government for delays in their naturalization proceedings, served as co-counsel in a civil rights case challenging the legality of ICE home enforcement practices, served as counsel for the plaintiffs in class actions against local governmental entities in Southern California bringing due process challenges to gang injunction enforcements practices; and served as counsel for plaintiffs in numerous state and federal court actions bringing constitutional challenges to prison conditions during the COVID-19 pandemic. Kreilkamp Decl. ¶¶ 4-5.

Similarly, Attorney Choudhury practiced in complex civil litigation and civil rights *pro bono* litigation for almost twenty years before his unexpected death on April 3, 2022. He represented several leading civil rights groups in litigation against several federal agencies, as well as the Los Angeles Mayor's Office, Human Rights Commission, and the Los Angeles Police Department concerning the adoption of the "Countering Violent Extremism" program; served as counsel of record for Asian

1    Americans Advancing Justice affiliates nationwide as amici curiae in a due process

2    challenge asserting rights of noncitizens subject to immigration detention; and

3    represented the Coalition to Abolish Slavery and Trafficking in a variety of matters

4    concerning the rights of human trafficking victims.  *Id.* at ¶¶ 6-7.

5        Attorney Saarman González also has extensive relevant experience, including

6    both commercial litigation and pro bono civil rights litigation.  In addition to his

7    experience clerking in both the U.S. Court of Appeals for the Federal Circuit and the

8    Supreme Court of California and serving as counsel in the present matter since its

9    inception, he has.  *Id.* at ¶¶ 8-9.

10       Attorney Sánchez also has specialized knowledge on immigrants' rights

11   issues and complex civil litigation, including immigration enforcement, civil rights

12   and liberties, and related statutory and regulatory rights.  In addition to serving as

13   counsel in the present matter and her federal clerkship experience, Ms. Sanchez

14   serves as counsel in a class action challenging detention and removal proceedings

15   without reasonable accommodations for detained immigrants with serious mental

16   health disabilities; in a putative class action challenging unlawful immigration

17   enforcement; in a lawsuit challenging border searches, seizures, and surveillance of

18   immigrants' rights activists; and in habeas petitions enforcing constitutional and

19   statutory rights of immigrants in detention.  She has also litigated cases involving

20   constitutional and statutory rights of immigrants before the immigration court, the

21   Board of Immigration Appeals, and in the Ninth Circuit Court of Appeals.  Padilla

22   Decl. ¶ 18-19. As an example of billing judgment, Plaintiffs only sought an EAJA

23   rate for Ms. Sánchez's work on Plaintiffs' Motion for Sanctions (Dkt. 458), instead

24   of the market rate based on Ms. Sánchez's graduation year and experience.  Padilla

25   Decl. ¶¶ 36-38.

26       Again, even considering this extensive, relevant experience of these attorneys

27   and others who worked on this case, plaintiffs applied EAJA rates for all attorneys

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND COSTS

other than Mr. Kaufman, Ms. Lai, and Ms. Padilla, even though the EAJA rates are significantly lower than those attorneys' normal rates.  Kreilkamp Decl. ¶ 30.

### D.    Plaintiff's Original Demand Was Reasonable, and the Fee in the Settlement Agreement Is Approximately Half of Those Fees

The foregoing reasonableness analysis, including all of the discounts Plaintiffs applied to their initial calculation of fees, produced a lodestar figure of $4,877,544.20.  In support of this calculation, Plaintiffs provide the declaration of Jacob Kreilkamp, which outlines the qualifications of attorneys at Munger, Tolles, & Olson LLP and includes a summary of billed hours for attorneys at MTO, delineated by category, year, and biller; the declaration of Anne Lai, which outlines her qualifications and includes both a summary of billed hours, delineated by category, year, and biller, and a description of Plaintiffs' costs; and the declaration of Stephanie Padilla, which outlines work performed by and qualifications of attorneys at the American Civil Liberties Union Foundation of Southern California, and includes a declaration by Carol A Sobel, who conducted extensive analysis of the fees charged by and awarded to attorneys in the Southern California region in a variety of civil rights and other contexts.  If the Court so desires, Plaintiffs can supplement this supporting documentation with under seal copies of billing entries.

The resultant lodestar, based on this supporting documentation, was reasonable for all of the reasons already discussed.  However, after vigorous negotiations culminating in a mediation before Judge Beeler, the Parties agreed to a sum of $2,600,000—approximately 54 percent of the already reasonable figure Plaintiffs initially demanded.  If a reasonableness analysis would support Plaintiffs' initial demand, it would surely support the much lesser amount negotiated under Judge Beeler's expert mediation.

### E.    The Award in This Case is Comparable to Other Similar Cases

A review of other complex immigration and class action cases further supports that the agreed upon award for fees and costs is reasonable.  The following six cases are examples of comparable, if not higher, awards in such cases:

| Case | Fees and/or Costs Award |
| --- | --- |
| *Ms. L v. ICE*, No. 3:18-cv-00428-DMS-AHG, Dkt. 757 (S.D. Cal. Sep. 24, 2024) - class action lawsuit challenging detention of immigrant parents separately from minor child | $6,109,934.14 to *Ms. L* Plaintiffs for fees and costs $301,729.93 for *Dora* Plaintiffs for fees and costs |
| *Zepeda Rivas v. Jennings*, No. 3:20-cv-02731, Dkt. 1257 (N.D. Cal June 9, 2022) - class action lawsuit seeking Covid protections at two detention centers in California | $4,000,000 in fees $112,000 in costs that ICE agreed to submit a claim for payment |
| *Roy v. Cnty. of Los Angeles*, No. 2:12-cv-09012-AB, (FFmx) Dkt. 638 (C.D. Cal. Feb. 3, 2022) - class action challenging Los Angeles County's practice of incarcerating individuals based on ICE-issued immigration detainers | $4,200,000 in fees $607,991.04 in costs |
| *Hernandez v. Garland*, No. EDCV16620JGB (KKx), 2022 WL 1176752, at *9 (C.D. Cal. Mar. 28, 2022) - class action lawsuit challenging bond and custody determinations of detained immigrants | $1,600,000 in fees $148,975.72 in costs |
| *Saravia v. Garland*, No. 3:17-cv-03615-VC, Dkt. 264 (N.D. Cal June 7, 2021) | $1,918,8834.60 in fees $31,165.41 in costs |
| *Washington v. GEO Grp., Inc.*, No. 3:17-CV-05806-RJB, 2021 WL 5907799, at *7 (W.D. Wash. Dec. 14, | $4,462,402.05 in fees $191,398.07 in costs |

| | |
|---|---|
| 2021) - action by State of Washington consolidated with class action on behalf of detained immigrant workers challenging labor violations of private detention contractor GEO Group | |

## **CONCLUSION**

For the foregoing reasons, the parties' agreement in the Ruse Settlement Agreement, which requires the Defendants to pay attorneys' fees and costs totaling $2,600,000, is clearly "not the product of fraud or overreaching by, or collusion between, the negotiating parties," and is, "taken as a whole, … fair, reasonable and adequate." *Officers for Just.*, 688 F.2d at 625.  Plaintiffs respectfully request that the Court approve the agreed-upon award pursuant to Rule 23(h).

Dated: July 7, 2025                    Respectfully submitted,

MUNGER, TOLLES & OLSON LLP
  JACOB KREILKAMP
  GIOVANNI SAARMAN GONZÁLEZ
  GABRIEL BRONSHTEYN

  */s/ Giovanni Saarman González*
Giovanni Saarman González
Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED
MOTION FOR ATTORNEYS' FEES AND COSTS