STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
EVA BITRAN (SBN 302081)
ebitran@aclusocal.org
DIANA SANCHEZ (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017-4022
Telephone: (213) 977-5232
Facsimile:  (213) 201-7878
Attorneys for Plaintiffs

*(additional counsel information on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| OSNY SORTO-VASQUEZ KIDD, et al., | Case No. 2:20-cv-03512-ODW-JPR |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PARTIAL FINAL JUDGMENT ON KNOCK AND TALK CLAIMS PENDING APPEAL** |
| KRISTI NOEM, United States Secretary of Homeland Security, in her official capacity, et al., | |
| Defendants. | Date: September 15, 2025<br>Time: 1:30PM<br>Courtroom: 5D<br>Judge: Hon. Otis D. Wright II |

ANNE LAI (SBN 295394)
*alai@law.uci.edu*
UC IRVINE SCHOOL OF LAW
IMMIGRANT RIGHTS CLINIC
401 E. Peltason Drive,
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-2747

JACOB KREILKAMP (SBN 248210)
*jacob.kreilkamp@mto.com*
KYLE GROVES (SBN 358085)
*kyle.groves@mto.com*
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

GIOVANNI SAARMAN GONZÁLEZ (SBN 314435)
*giovanni.saarmangonzalez@mto.com*
GABRIEL BRONSHTEYN (SBN 338011)
*gabriel.bronshteyn@mto.com*
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Plaintiffs

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND .................................................................................. 2

    A.     Plaintiffs ................................................................................... 2

    B.     ICE's Systemwide Policy and Practice of "Knock and Talks" .............. 4

    C.     This Court Declared Unlawful and Set Aside ICE's Systemwide Policy and Practice of Conducting "Knock and Talks" ........................ 5

III.   ARGUMENT ...................................................................................... 6

    A.     Defendants Have Not Shown That They Are Likely to Succeed on the Merits ............................................................................... 6

        1.     Plaintiffs Have Standing ................................................... 6

            (a)     Plaintiffs Have Established Associational Standing .......... 7

            (b)     Plaintiffs Have Established Organizational Standing ...... 12

        2.     This Court Correctly Concluded that ICE'S "Knock and Arrest" Practices Violate the Fourth Amendment .................... 13

        3.     ICE's "Knock and Talk" Practices Violate the APA ................ 18

    B.     Defendants Have Not Shown Irreparable Harm ................................. 19

    C.     The Balance of Equities and Public Interest Do Not Favor a Stay ....... 20

IV.    CONCLUSION ................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Abel v. United States*,
    362 U.S. 217 (1960) ................................................................. 17, 18

*Alsea Valley Alliance v. Department of Commerce*,
    358 F.3d 1181 (9th Cir. 2004) ................................................. 20

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ............................................. 7, 9, 10

*Camara v. Municipal Court of San Francisco*,
    387 U.S. 523 (1967) ................................................................. 16

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ......................................................... 7, 10, 11

*Clapper v. Amnesty International*,
    568 U.S. 398 (2013) ................................................................. 7

*Coalition on Homelessness v. City & County of San Francisco*,
    758 F. Supp. 3d 1102 (N.D. Cal. 2024) .................................. 7, 8

*Columbia Basin Apartment Association v. City of Pasco*,
    268 F.3d 791 (9th Cir. 2001) ................................................... 8

*Coolidge v. New Hampshire*,
    403 U.S. 443 (1971) ................................................................. 16

*Center for Biological Diversity v. Regan*,
    729 F. Supp. 3d 37 (D.D.C. 2024) .......................................... 20

*Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*,
    666 F.3d 1216 (9th Cir. 2012) ................................................. 12

*Florida v. Jardines*,
    569 U.S. 1 (2013) ....................................................... 13, 14, 20

*Garcia v. City of Los Angeles*,
    611 F. Supp. 3d 941 (C.D. Cal. 2020) ...................................... 8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PARTIAL FINAL JUDGMENT ON KNOCK AND TALK CLAIMS PENDING APPEAL

*Gonzalez v. United States Immigration & Customs Enforcement*,
    975 F.3d 788 (9th Cir. 2020) ................................................................. 16

*Grimm v. City of Portland*,
    971 F.3d 1060 (9th Cir. 2020) ................................................................ 17

*Havens Realty Corporation v. Coleman*,
    455 U.S. 363 (1982) ............................................................................. 12

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) (en banc) ............................................. 11

*Hunt v. Washington State Apple Advertising Commission*,
    432 U.S. 333 (1977) ........................................................................... 7, 8

*INS v. Lopez-Mendoza*,
    468 U.S. 1032 (1984) ........................................................................... 17

*Johnson v. United States*,
    333 U.S. 10 (1948) ............................................................................... 16

*Kentucky v. King*,
    563 U.S. 452 (2011) ............................................................................. 14

*LaDuke v. Nelson*,
    762 F.2d 1318 (9th Cir. 1985) ............................................................. 7, 9

*Lo-Ji Sales, Inc. v. New York*,
    442 U.S. 319 (1979) ............................................................................. 16

*Matias Rauda v. Wilkinson*,
    844 F. App'x 945 (9th Cir. 2021) ......................................................... 17

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ......................................... 1, 7, 9, 10, 20

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................. 1, 6

*Payton v. New York*,
    445 U.S. 573 (1980) ............................................................................. 13

*Perez Cruz v. Barr*,
    926 F.3d 1128 (9th Cir. 2019) ............................................................. 19

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PARTIAL FINAL JUDGMENT ON
KNOCK AND TALK CLAIMS PENDING APPEAL

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014) ............................................................................... 8

*Santiago v. City of Los Angeles*,
    No. cv-15-08444-BRO-EX, 2016 WL 7176694 (C.D. Cal. Nov. 17,
    2016) ...................................................................................................... 8

*Shadwick v. City of Tampa*,
    407 U.S. 345 (1972) ......................................................................... 2, 16

*Stavrianoudakis v. U.S. Fish & Wildlife Service*,
    108 F.4th 1128 (9th Cir. 2024) ............................................................. 8

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .............................................................................. 7

*United States v. Brignoni-Ponce*,
    422 U.S. 873 (1975) ............................................................................ 15

*United States v. Lundin*,
    817 F.3d 1151 (9th Cir. 2016) .......................................... 1, 2, 14, 18

*United States v. Perea-Rey*,
    680 F.3d 1179 (9th Cir. 2012) ............................................................ 14

*United States v. Vargas-Amaya*,
    389 F.3d 901 (9th Cir. 2004) .............................................................. 19

*Valle Del Sol, Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ............................................................ 12

*Vasquez Perdomo v. Noem*,
    No. 25-4312, 2025 WL 2181709 (9th Cir. Aug. 1, 2025) ................... 11

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................ 12

*Whalen v. McMullen*,
    907 F.3d 1139 (9th Cir. 2018) ............................................................ 15

*Winter v. NRDC*,
    555 U.S. 7 (2008) ................................................................................ 19

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983) .............................................................. 20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PARTIAL FINAL JUDGMENT ON
KNOCK AND TALK CLAIMS PENDING APPEAL

**FEDERAL RULES**

9th Cir. R. 36-3(a) ........................................................................................... 17

**FEDERAL REGULATIONS**

8 C.F.R. § 287.8(f)(2) ...................................................................................... 19

59 Fed. Reg. 42406, 42412 (Aug. 17, 1994) ................................................... 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const., amend. IV ..............................................................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Over a year and three months ago, in May 2024, this Court held that ICE employs a systemwide policy and practice of conducting "knock and talks," encroaching on the protected curtilage of people's homes for the purpose of effectuating arrests.  Dkt. 506.  This Court declared that policy and practice unlawful under the Fourth Amendment and the APA and set it aside.  *Id.*

Despite their claim of irreparable harm, Defendants did nothing for a year. Even after this Court entered partial final judgment, Defendants were silent for a month.  Defendants now ask this Court to stay that judgment pending appeal so that they can resume their unlawful home arrest practices.  But Defendants do not come close to making the "strong showing" required to justify a stay pending appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

First, Defendants' naked assertion that Plaintiffs lack standing is not likely to prevail on appeal.  A voluminous, undisputed record upon which this Court granted summary judgment establishes that Plaintiffs have been harmed and face a substantial threat of future injury due to ICE's policy and practice of conducting unlawful "knock and arrests." *See Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012).  Defendants do not even acknowledge, much less challenge, that record.

Nor could they.  The Court's express finding that ICE has a systemwide policy and practice was based in significant part on Defendants' own written policies and training materials and strongly supports Plaintiffs' standing. *See id.* Nor have Defendants made a "strong showing" that they are likely to overturn this Court's determination that ICE's home arrest practices violate the Fourth Amendment.  This Court's conclusion on that score was compelled by binding precedent: under *United States v. Lundin*, 817 F.3d 1151, 1159-60 (9th Cir. 2016), "[t]he 'knock and talk' exception . . . does not apply when officers encroach upon the curtilage of a home with the intent to arrest the occupant."  Defendants do not

-1-

challenge this Court's finding that their policy and practice is to "encroach upon the curtilage of a home with the intent to arrest the occupant," just as *Lundin* declared unlawful. Their only argument is that ICE possesses administrative warrants during home arrests—an argument that Defendants' *expressly waived* to avoid discovery related to administrative warrants. But the Fourth Amendment in any event requires *judicial* warrants. As this Court held, ICE's administrative warrants, which are signed by ICE's own supervisors, plainly do not satisfy the Fourth Amendment's requirement that warrants be issued by a "neutral and detached magistrate." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972).

Defendants have failed to demonstrate they will be irreparably harmed by a stay. And the balance of equities and public interest also strongly favor denying Defendants' requested stay. Defendants have no cognizable interest in perpetuating unlawful home arrests, while the class of affected individuals and the public at large has a profound interest in their constitutional rights being safeguarded.

This Court should deny the stay.

## II.    **BACKGROUND**

### A.    **Plaintiffs**

Plaintiffs CHIRLA and ICIJ are organizations devoted to promoting immigrants' rights. CHIRLA and ICIJ represent communities that have been and are at risk of being victimized by ICE's widespread use of unlawful "knock and arrests." *See* Dkt. 489-1, Plaintiffs' Statement of Uncontroverted Facts ("PSUF") 1-17.

CHIRLA is a nonprofit membership organization devoted to immigrants' rights with eight offices, more than 150 paid staff, and thousands of members. PSUF 1-5. CHIRLA's members include U.S. citizens, noncitizens, DACA recipients, and undocumented individuals. PSUF 4. Approximately 49,000 CHIRLA members reside in the Central District of California. Salas Decl. ¶ 2. CHIRLA's general counsel attested based on his experience with ICE's conduct in

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PARTIAL FINAL JUDGMENT ON
KNOCK AND TALK CLAIMS PENDING APPEAL

the community that a "significant percentage of CHIRLA's members are undocumented or otherwise vulnerable to arrest by ICE, or live in the same household as such a person, including United States citizens and long-time lawful permanent residents of the United States," and accordingly "face a risk of ICE coming to their home and engaging in" unlawful home arrest practices.  PSUF 8; Dkt. 489-13, ("CHIRLA Decl.") ¶ 6.  Two CHIRLA members submitted sworn declarations attesting to the layout of their home, immigration officials' possession of their home address, and their reasonable fear of being subjected to ICE's unlawful tactics, including a "knock and arrest," merely by being in their homes. PSUF 8; Dkt. 489-25, R.C.C. Decl. ¶¶ 2-5; Dkt. 489-14, A.Z.T. Decl. ¶¶ 2-5. Another CHIRLA member was subjected to a door knock and attempted arrest by ICE in 2019, and he and his family possess a reasonable fear of being subject to that practice again.  Salas Decl. ¶ 3.  CHIRLA also diverted scarce resources from its other core work to provide emergency assistance to members affected by ICE's home arrest practices challenged in this lawsuit.  PSUF 9.

ICIJ is an organization serving the immigrant community in the Inland Empire and surrounding region that conducts policy advocacy, community organizing, and education, and also provides support to families affected by immigration enforcement practices, including through a volunteer network.  PSUF 10-14.  ICIJ volunteers, who function like members, have reported incidents involving the home arrest practices challenged by this lawsuit.  PSUF 15-17.  A significant percentage of ICIJ's volunteers are subject to removal or live with someone who is subject to removal, and accordingly, stand to be harmed by ICE's unlawful home arrest practices.  PSUF 15-17.  ICIJ diverted considerable resources to respond to issues created by ICE's home arrest practices, conducting intake with community members affected by ICE's home arrest operations, and diverting its funding and legal representation to individuals affected by home arrests.  PSUF 16; Dkt. 489-12, ("ICIJ Decl.") ¶ 7.

B.    **ICE's Systemwide Policy and Practice of "Knock and Talks"**

Each year, ICE conducts hundreds, if not thousands, of civil immigration arrests at homes in the Los Angeles Area.  PSUF 18-22.  ICE has a policy and practice of employing what it calls "knock and talks" during those home enforcement operations.  As this Court concluded in granting summary judgment, "ICE policies and trainings authorize and encourage officers to use 'knock and talks' to carry out civil immigration arrests" without a warrant.  Dkt. 506, Order re Motions for Summary Judgment ("MSJ Order") at 4; PSUF 56-57 (discussing trainings and handbook describing "knock and talks" as a "method[] of apprehension" or administrative arrest).  Officers are encouraged to use "knock and talks" for arrests precisely because they do not have a judicial warrant. PSUF 56 (citing A.P. 30(b)(6) Dep. Vol. 1); *see also id.*, ¶ 59.

Consistent with their training, ICE officers regularly use "knock and talks" to carry out civil immigration arrests.  PSUF 37. According to an analysis of ICE data that this Court credited, "knock and talks" accounted for at least 27% of residential arrests that were made by ICE in the LA AOR for the period during which information was available in 2017-2022.  PSUF 38 (indicating that every team and every suboffice conducted at least some "knock and talks"); *see also* PSUF 39 (discussing data for operations and non-operations); MSJ Order at 4. During these "knock and talks," officers routinely enter onto the curtilage of homes.  PSUF 36, 58 (collecting testimony, Forms I-213, and videos), 69, 71-75, 77-80 (describing officers' presence on the curtilage of Kidd's and other community members' homes); MSJ Order at 7 (noting that Plaintiffs presented thirteen documented instances where, "consistent with the training policies and procedures described above, ICE officers entered the curtilage of the home for the purpose of arresting the resident without a judicial warrant or the express consent of the resident").

C.    **This Court Declared Unlawful and Set Aside ICE's Systemwide Policy and Practice of Conducting "Knock and Talks"**

Plaintiffs brought this class action suit to challenge ICE's unconstitutional home arrest practices in 2020. *See* Dkt. 1.

On February 7, 2023, this Court granted CHIRLA and ICIJ's motion to certify a class, inter alia, of "[a]ll individuals residing at a home in the LA AOR where ICE has conducted or will conduct a warrantless civil immigration enforcement operation using a 'knock and talk.'" Dkt. 335, Order Granting Plaintiffs' Motion to Certify Class and Appointing Lead Plaintiffs and Class Counsel ("Class Cert Order") at 12. The Court recognized that ICE's home arrest practices have harmed and threaten to harm Plaintiffs and their members. *Id.* at 9. It also found that "The record . . . establishes that ICE has [systemwide policies and practices ("SWPPs")] with respect to knock-and-talks," pointing to "the ICE training materials the parties submit," which "affect everyone in the Knock-and-Talk Class because they affect how ICE officers conduct operations in the LA AOR." *Id.* at 19-20.

On May 15, 2024, this Court granted summary judgment in large part to Plaintiffs. The Court reiterated its finding that ICE has a "systemwide policy and practice" of conducting "knock and talks." MSJ Order at 17. In so doing, the Court emphasized that it "it is undisputed that ICE officers physically encroach on and occupy the curtilage of an individual's home when conducting a "knock and talk," and that they "[l]ack[] a judicial warrant, express consent, or some other exception to the warrant requirement," proceeding only with "implied cons[ent] and an administrative warrant." *Id.* at 10. The Court further found that "it is consistently true across ICE's policies and practice that field officers are trained to enter constitutionally protected areas of a home for the purpose of arresting the occupant." *Id.* at 16-17. The Court found that an administrative warrant is "insufficient to enter the constitutionally protected areas of a home," *id.* at 12, and that "knock and talks"

-5-

"exceed the scope of implied consent," such that they "violate the Fourth Amendment insofar that they are conducted with the purpose of arresting the resident." *Id.* at 17. The Court also found these same practices to violate the APA. The court granted declaratory relief, declaring ICE's policy and practice of "knock and arrests" unlawful, and set aside and vacated those policies and practices.

A year later, on June 24, 2025, upon a request by Defendants, the Court entered partial final judgment with respect to Plaintiffs' "Knock and Talk" Class claims. Dkt. 542. Defendants filed their notice of appeal on July 29, 2025. Dkt. 547.

## III.  ARGUMENT

In considering a motion to stay pending appeal, the Court considers (1) whether the movants have made a "strong showing" that they are likely to succeed on the merits of their appeal; (2) whether the movants will be irreparably injured absent a stay; (3) whether issuance of a stay will "substantially injure" the opposing parties, and (4) whether a stay is in the "public interest." *Nken*, 556 U.S. at 434.

Defendants have failed to make a strong showing of success on the merits and have not established irreparable injury, either of which is enough to deny their motion. Issuance of a stay also would substantially injure Plaintiffs, the Knock and Talk Class, and the public interest.

### A.  Defendants Have Not Shown That They Are Likely to Succeed on the Merits

#### 1.  Plaintiffs Have Standing

Contrary to Defendants' assertions, Plaintiffs unquestionably have been and are likely to continue to be harmed by Defendants' unlawful home arrest practices absent relief from the Court. Throughout this litigation, Defendants have contested many aspects of Plaintiffs' claims. They moved to dismiss, opposed class certification, opposed Plaintiffs' motion for summary judgment, and cross-moved for summary judgment. Not once have they challenged Plaintiffs' Article III standing.

In now insisting to this Court that Plaintiffs do not have standing, Defendants ignore the voluminous factual record in this case. Defendants never even mention this Court's finding that ICE has a systemwide policy and practice of conducting unlawful "knock and talks," or that such finding itself establishes Plaintiffs' standing under governing law. *See, e.g.*, *Melendres*, 695 F.3d at 998. Defendants' belated attempt to escape judicial review of their unlawful conduct is baseless.

A plaintiff establishes Article III standing by showing that she or he "has sustained or is immediately in danger of sustaining some direct injury" as a result of the challenged conduct and "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (citation omitted); *see also Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014) (standing can be shown if there is a "substantial risk" that future harm will occur (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013))). Such a showing can be made by pointing to "a written policy" or "a pattern of officially sanctioned behavior, violative of the plaintiff's [federal] rights." *Melendres*, 695 F.3d at 998 (cleaned up); *see also Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)). Where such a showing is made, "the likelihood of a future stop of a particular individual plaintiff" need not be "high," as the existence of a policy or practice renders the future injury "sufficiently likely." *Melendres*, 695 F.3d at 998.

Organizations are entitled to sue on their own behalf (organizational standing), or on behalf of others (associational standing). Plaintiffs have demonstrated both here.

### (a)    Plaintiffs Have Established Associational Standing

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of

-7-

individual members in the lawsuit." *Coal. on Homelessness v. City & Cnty. of San Francisco*, 758 F. Supp. 3d 1102, 1122 (N.D. Cal. 2024) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Each of those elements is well supported by the record in this case. *First*, CHIRLA and ICIJ's members have been and remain vulnerable to being subjected to ICE's systemwide policy and practice of conducting unlawful home arrests. *See supra*, pp. 2-3; PSUF 1-17. *Second*, protecting the rights of those within the Los Angeles area's immigrant community is core to each organization's purpose. *See* PSUF 6-7, 12-14; *Garcia v. City of Los Angeles*, 611 F. Supp. 3d 941, 952 (C.D. Cal. 2020) (protecting homeless individuals' belongings from seizure was sufficiently germane to homeless aid organization's mission). And *third*, the participation of individual members is not required because the organizations sought prospective relief. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001).

Defendants do not engage with that record. Defendants largely concede the second and third elements, except to glancingly assert that organizations cannot vindicate their members' Fourth Amendment rights. That flatly contradicts controlling precedent. *See, e.g.*, *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1143 (9th Cir. 2024) (organization had standing under *Hunt* to vindicate members' rights against suspicionless searches); *Coal. on Homelessness*, 758 F. Supp. 3d at 1125 (same for seizures); *Santiago v. City of Los Angeles*, No. cv-15-08444-BRO-EX, 2016 WL 7176694, at *6 (C.D. Cal. Nov. 17, 2016) (same). The case cited by Defendants, *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014), has nothing to do with associational standing and instead concerned whether a plaintiff could rely on a non-party's Fourth Amendment injury to support plaintiff's claim in a § 1983 civil rights suit. *Id.*

Defendants' primary argument appears to be that CHIRLA and ICIJ's members would not have standing to sue in their own right because Plaintiffs lack

1  evidence demonstrating a risk of future harm.  Mot. at 6-7.  Again, Defendants

2  baldly assert that the risk here is speculative, as if they are writing on a blank slate.

3  They ignore the voluminous record and findings that led to summary judgment

4  being granted in Plaintiffs' favor.  Remarkably, Defendants do not engage with

5  undisputed record evidence showing that CHIRLA and ICIJ's membership

6  reasonably fear being subjected to "knock and talks" due to their undocumented

7  status.  *See supra*, pp. **; PSUF 4, 8, 10, 15, 17.  Defendants also ignore undisputed

8  evidence that chronicles systematic use of "knock and talks" in the Los Angeles

9  Area, thus posing a risk to CHIRLA and ICIJ's broad membership.  *See supra*, pp.

10  **; MSJ Order at 3-7.  As this Court emphasized, "knock and talks" account for at

11  least 27% of ICE's residential arrests in the Los Angeles area. MSJ Order at 4.

12      Underscoring just how widespread ICE's use of unlawful "knock and talks"

13  is, ICE itself reports that this Court's order has led to a "*thirty*-percent decrease" in

14  monthly average arrests in the area.  Dkt. No. 552-1 at ¶ 19 (emphasis added).  And

15  Defendants' briefing makes clear their intent to resume "knock and talks" if given

16  the opportunity, calling them "a critical tool that HSI relies on to locate and

17  apprehend individuals."  Dkt. No. 522-2 at ¶¶ 13, 15.  They note that "HSI has the

18  home address" of "many" individuals, and only this Court's order prevents them

19  from "effectuat[ing] arrests" of these individuals via knock and talks.  *Id.* at ¶ 17.

20      Most stunning, Defendants never even mention—and certainly do not

21  challenge—this Court's express finding that ICE has a systemwide policy and

22  practice of unlawfully conducting "knock and talks" for the purpose of arrest

23  *pursuant to official ICE written guidance and training*.  It is well established that

24  Plaintiffs can demonstrate standing by showing that the harm "is part of a 'pattern of

25  officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'"

26  *Armstrong*, 275 F.3d at 861 (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th

27  Cir. 1985)); *Melendres*, 695 F.3d at 998.  "[W]here the defendants have repeatedly

28  engaged in the injurious acts in the past" and those acts are authorized by officials,

"there is a sufficient possibility" that the defendants "will engage in them in the near future to satisfy the 'realistic repetition' requirement." *Armstrong*, 275 F.3d at 861

Given this record, Defendants' analogy to *Lyons* wholly inapt. In *Lyons*, the plaintiff was placed in an illegal chokehold during a traffic stop and sought an injunction against chokeholds where an officer is not threatened by death or serious harm. *See Lyons*, *supra,* 461 U.S. at 97-99. Although he claimed that police routinely applied chokeholds, *id.* at 105, he failed to allege that the City had authorized chokeholds absent resistance by the arrestee—accordingly, there was no reason to believe that plaintiff in particular would "illegally resist arrest" in the future. *See id.* at 106, 110. The Court therefore held that he lacked standing. *See id.* at 109.

The facts here are entirely different. Here, Plaintiffs have established an officially sanctioned—indeed written—policy to conduct "knock and talks" in exactly the way this Court held violates plaintiffs' Fourth Amendment rights. Defendants concede even within this motion that "Immigration enforcement officers use knock and talks to gather intelligence, confirm the whereabouts of targets, **and facilitate arrests**." Mot. at 12 (emphasis added). All that is necessary for Plaintiffs' members to be subjected to unconstitutional "knock and talks" is for ICE to follow its own written handbook and training, as it has routinely done in the Los Angeles area, and as Defendants urge this Court to let them continue doing today. That establishes Plaintiffs' standing. *Melendres*, 695 F.3d at 998.

Further, Plaintiffs specifically identified longtime CHIRLA members who have a reasonable fear of being targeted by these illegal "knock and talks," and explained that the broader CHIRLA membership shares that reasonable fear based on their widespread use in the community, which has disrupted their everyday lives. *See* CHIRLA Decl. ¶¶ 9-10. The risk of harm to CHIRLA members is further underscored by the fact that "knock and talks" have affected CHIRLA members in the past, and pose a risk of doing so again in the future. *See* Salas Decl. ¶ 3; PSUF

-10-

8; Dkt. 489-25, R.C.C. Decl. ¶¶ 2-5; Dkt. 489-14, A.Z.T. Decl. ¶¶ 2-5.  And ICIJ volunteers similarly "face an ongoing risk of being subjected to an illegal ICE home arrest."  *See* ICIJ Decl. ¶ 6.

Also unlike the plaintiff in *Lyons*, who could avoid unconstitutional treatment by refraining from illegally resisting arrest in the future, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (en banc), there is nothing Plaintiffs' members can do to avoid Defendants' unconstitutional tactics:  by definition, these tactics take place at people's *homes*.  Merely *being* at the location that should be the most safe to Plaintiffs is enough for them to fall victim to ICE's unconstitutional home arrest practices.  As such, based on the undisputed facts established during summary judgment briefing, Plaintiffs have established their associational standing.

The Ninth Circuit's most recent case addressing associational and individual standing also makes abundantly clear that the arguments raised by Defendants here have no merit.  In *Vasquez Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709 (9th Cir. Aug. 1, 2025), the court found that an individual can establish standing for prospective relief by demonstrating "a pattern of conduct," and that such a practice paired with widespread use of that conduct creates a sufficient "real and immediate threat" of the conduct, sufficient to support standing.  *Id.* at *10, *quoting Lyons,* 461 U.S. at 102.  This is especially true where, as here, the individual plaintiffs "cannot escape future injury by avoiding unlawful activity," and "[t]here is no predicate action that the individual plaintiffs would need to take, other than simply going about their lives."  *Id.* at 11.  The court held similarly as to the organizational plaintiffs, whose members "reasonably fear being subject to the . . . practices challenged in this case," and on that basis, paired again with the large-scale operations present in the case, had standing.  *Id.* at 12.

Here, the conditions are even more pronounced:  As described above, Plaintiffs have no way to avoid ICE's illegal home arrest practices, even by staying in their own homes.  The conduct quite literally comes to them, with no way to

-11-

1  escape it.  Furthermore, on top of the evidence demonstrating widespread use of

2  "knock and talks" here, Plaintiffs point to an actual written policy endorsing the

3  illegal tactics and instructing ICE agents to engage in them.  That further reinforces

4  the likelihood of future injury to the thousands of CHIRLA members and ICIJ

5  volunteers located within this District.

6         *(b)*      *Plaintiffs Have Established Organizational Standing*

7        CHIRLA and ICIJ are also "entitled to sue on their own behalf for injuries

8  they have sustained."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19

9  (1982) (*citing Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  An organization may

10  satisfy organizational standing by pleading facts showing "a drain on its resources

11  from both a diversion of its resources and frustration of its mission.'"  *Valle Del Sol,*

12  *Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (*quoting Fair Hous. Council of*

13  *San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012).

14        Plaintiffs have shown ample injury to Plaintiffs' organization and mission that

15  independently supports their standing in this case.  CHIRLA has been forced to

16  "expend[] staff time and resources to fortify sanctuary policies and bolster its 'Know

17  Your Rights' programming." CHIRLA Decl. ¶ 11. ICIJ similarly expanded on this

18  harm at length in its declaration, noting that the organization has been forced to

19  "divert[] considerable resources to respond to issues created by ICE home arrests,"

20  including by diverting staff from other activities to "spend significant time

21  conducting intake with community members affected by ICE practices;

22  documenting their stories; trying to place their cases with attorneys; helping to

23  identify sponsors and secure bond; and providing other humanitarian support."  ICIJ

24  Decl. ¶ 7.  This work has prevented the organization's staff from "spend[ing] time

25  working on critical aspects of the positions for which they were originally hired."

26  *Id.*

27        These activities have had a direct drain on Plaintiff's financial resources.  For

28  ICIJ, in one year, "the overwhelming majority of ICIJ's bond fund and Immigrant

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PARTIAL FINAL JUDGMENT ON
KNOCK AND TALK CLAIMS PENDING APPEAL

1  Justice Fund, and its referrals for legal representation, went toward individuals
2  affected by home arrests," meaning that the organization was "unable to provide
3  sufficient assistance to other immigrants in the region." *Id.*  This Court
4  acknowledged the harm to Plaintiffs as organizations when it granted class
5  certification to the Knock and Talk Class, noting that "Both organizations have been
6  forced to divert resources from other core priorities to assist individuals impacted by
7  the challenged home arrest practices."  Class Cert Order at 9.  Defendants do not
8  address or challenge those harms or the Court's findings.  They are sufficient on
9  their own to justify standing for CHIRLA and ICIJ to bring claims on their own
10  behalf in this case.[1]

### 2. This Court Correctly Concluded that ICE'S "Knock and Arrest" Practices Violate the Fourth Amendment

Defendants are unlikely to prevail in challenging this Court's Fourth
Amendment ruling.  This Court correctly concluded under core Fourth Amendment
principles and binding Ninth Circuit precedent that ICE's systemwide policy and
practice of encroaching upon curtilage for the purpose of arresting the occupants of
homes violates the Fourth Amendment.  Defendants' arguments to the contrary have
been rejected more than once.  They rest on the extraordinary assertion that ICE
should be empowered to do that which every law enforcement agency is prohibited
from doing merely because it enforces immigration laws.  This Court should again
reject ICE's claim to immunity from this sacred constitutional protection.

**a.**  "It is a basic principle of Fourth Amendment law that searches and
seizures inside a home without a warrant are presumptively unreasonable." *Payton
v. New York*, 445 U.S. 573, 576 (1980) (internal quotation omitted).  The Fourth
Amendment protections of the home extend to the "curtilage"—the area
"immediately surrounding [the] house"—which "enjoys protection as part of the

---

[1] CHIRLA and ICIJ's organizational standing, at a minimum, supports their right to
bring claims on behalf of themselves.

home itself." *Florida v. Jardines*, 569 U.S. 1, 6 (2013); *United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012) ("[S]earches and seizures in the curtilage without a warrant are . . . presumptively unreasonable.").

The Supreme Court has recognized a limited exception to the warrant requirement for officers with implied consent to enter the curtilage. That implied license authorizes law enforcement to enter the curtilage only if social norms and customs would permit a member of the public to enter, and only to act as a member of the public would be permitted to act when on the curtilage. *See Jardines*, 569 U.S. at 8-9. Accordingly, there exists an implied license for officers to "knock" on the door to "talk" to a resident "precisely because that is 'no more than any private citizen might do.'" *Id.* at 8 (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)).

But there exists no implied license to knock and *arrest*. As the Ninth Circuit explained in *Lundin*, "the background social norms that invite a visitor to the front door do not invite him there . . . to arrest the occupant." *Lundin*, 817 F.3d at 1160. There, the Ninth Circuit determined that "the officers' presence on Lundin's front porch and their knock at his door constituted a presumptively unreasonable search." *Id.* at 1158. The Ninth Circuit held that "[t]he 'knock and talk' exception . . . does not apply when officers encroach upon the curtilage of a home with the intent to arrest the occupant." *Id.* at 1159-60. Officers entering the curtilage for the purpose of arresting the occupant "act[] for a purpose that virtually no resident would willingly accept." *Id.*

This Court found based on a voluminous record that ICE has a systemwide policy and practice of encroaching upon the curtilage with the intent to arrest—a practice of "knock[ing] and arrest[ing]," MSJ Order at 1. Defendants do not challenge that finding. Under *Lundin*, ICE's policy and practice is plainly unlawful. This Court was correct to set it aside.

**b.** Defendants' arguments for staying this Court's judgment boil down to the assertion that ICE is privileged to enter the curtilage of homes during immigration

-14-

1    arrest operations because they often possess an administrative warrant. Mot. at 7-

2    10. Defendants are precluded from making that argument, having waived it in order

3    to avoid discovery related to administrative warrants. Regardless, it is wholly

4    meritless.

5          First, as this Court determined, "Defendants have stipulated in this litigation

6    that they 'will not argue or claim' that an administrative warrant provides legal

7    authority 'to enter a residence or other location in which an individual has a

8    reasonable expectation of privacy' or 'that the presence of such warrant is a factor

9    supporting any defense by Defendants in this action.'" MSJ Order at p. 11 (quoting

10   Stip. ¶ 22, ECF No. 153). This Court was correct to enforce that stipulation, which

11   Defendants do not even mention in their Motion. As this Court explained,

12   Defendants "reaped the benefit of their agreement to enter into the stipulation by

13   being excused from providing certain discovery," and accordingly they are

14   "precluded" from relying on administrative warrants as "legal authority" for

15   entering the curtilage. MSJ Order at p. 11.[2]

16         Second, Defendants' claim to be exempt from the Fourth Amendment warrant

17   requirement during immigration enforcement operations is meritless. The Fourth

18   Amendment applies to ICE officers. *See United States v. Brignoni-Ponce*, 422 U.S.

19   873, 878–83 (1975). The Ninth Circuit has consistently rejected a distinction

20   between the Fourth Amendment interests involved in criminal and civil

21   enforcement. *Whalen v. McMullen*, 907 F.3d 1139, 1152 (9th Cir. 2018) (citing

22

23   [2] Because Defendants waived the argument that administrative warrants permit entry
     into protected areas to avoid discovery on their use of administrative warrants, the
24   parties did not have an opportunity to conduct meaningful discovery on whether
     officers in fact possessed administrative warrants on all operations. Accordingly,
25   even if Defendants were correct that an administrative warrant is sufficient to enter
     the curtilage (which they are not), Defendants lack a record to argue that their
26   purported possession of administrative warrants actually immunizes their conduct.
     Further discovery would be required before Defendants could have a possibility of
27   prevailing.

28

-15-

1  *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 530–34 (1967)); *Gonzalez v. U.S.*

2  *Immigr. & Customs Enf't*, 975 F.3d 788, 824 (9th Cir. 2020) (applying Fourth

3  Amendment to civil immigration enforcement context).

4        That ICE officers may possess an administrative warrant is immaterial.

5  Administrative warrants do not satisfy the Fourth Amendment's warrant

6  requirement.  "The most basic constitutional rule in this area is that 'searches

7  conducted outside the *judicial* process, without prior approval by *judge* or

8  *magistrate*, are per se unreasonable under the Fourth Amendment." *Coolidge v.*

9  *New Hampshire*, 403 U.S. 443, 454-55 (1971) (emphasis added).  To satisfy the

10  Fourth Amendment, the warrant must be the product of independent judgment,

11  issued by a magistrate that is "neutral and detached." *Shadwick*, 407 U.S. at 350;

12  *see Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 327 (1979).  As this Court

13  emphasized in rejecting this argument, the administrative warrants ICE agents use in

14  carrying out knock and arrests are not reviewed by an independent magistrate.  MSJ

15  Order at p. 15.  Nor are they reviewed by an immigration judge.  At most, they are

16  reviewed by an *ICE supervisor* who signs on behalf of the Field Office Director.

17  MSJ Order at p. 15; Decl. Anne Lai ISO Pls.' Opp'n DMSJ Ex. 12 ("Giles Dep.")

18  39:23–40:24, ECF No. 492-3.  ICE supervisors are unquestionably not independent,

19  not "neutral," and not "detached." *See Shadwick*,  407 U.S. at 350.  They are

20  actively engaged in the very immigration enforcement to which the warrants relate.

21  To empower them to issue Fourth Amendment warrants "would reduce the

22  Amendment to a nullity and leave the people's homes secure only in the discretion

23  of [ICE] officers" who are "engaged in the often competitive enterprise of"

24  enforcing immigration laws. *See Johnson v. United States*, 333 U.S. 10, 14 (1948).

25  "When the right of privacy must reasonably yield to the right of search is, as a rule,

26  to be decided by a judicial officer, not by a policeman or Government enforcement

27  agent." *Id.*  Accordingly, "[b]ecause the administrative warrants at issue here lack

28

1   the independent assurance guaranteed by the Fourth Amendment, they do not

2   immunize Defendants' conduct."  MSJ Order at 12.

3        Defendants' arguments to the contrary are baseless.  Even ICE's own

4   materials recognize that their administrative warrants do not satisfy the Fourth

5   Amendment.  MSJ Order at 12; Mot. at 10.  Defendants argue otherwise, reprising

6   their reliance on an unpublished decision, *Matias Rauda v. Wilkinson,* 844 F. App'x

7   945 (9th Cir. 2021), to urge this Court to empower ICE officers to enter the curtilage

8   for purposes of arrest.  That decision is unpublished, and so has no precedential

9   value.  *See* 9th Cir. R. 36-3(a); *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th

10  Cir. 2020).  It is also wholly inapplicable here, as this Court already recognized.

11  MSJ Order at p. 14.  The *Matias Rauda* panel's decision is premised on the

12  purportedly "distinct constitutional interests" involved in removal proceedings.  844

13  F. App'x at 948 (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1042 (1984)). Even

14  if that premise is true in a limited sense in *Matias Rauda*'s specific posture—the

15  panel was considering whether the alleged Fourth Amendment violation there

16  warranted the suppression of evidence in Matias Rauda's removal case, which

17  requires a heightened showing, *id.*—that does not support a general exemption from

18  the warrant requirement for immigration officers outside that context.  *Matias*

19  *Rauda* could not have been purporting to set forth a rule that would apply to a claim

20  for prospective relief based on the Fourth Amendment, as that question wasn't

21  before the panel.

22        Defendants mischaracterize *Abel v. United States*, 362 U.S. 217 (1960) as

23  purportedly "express[ing] strong approval for administrative warrants."  Mot. at 8.

24  *Abel* conveyed no approval of administrative warrants that has any relevance here.

25  As this Court has explained repeatedly (Dkt. No. 58 at p. 11; MSJ Order at p. 12),

26  the *Abel* Court expressly *declined* to consider whether administrative warrants

27  satisfy the Fourth Amendment.  *Abel*, 362 U.S. at 230.  The Court noted that the

28  constitutionality of the "administrative *arrest procedure*" had never meaningfully

-17-

been challenged. *Abel*, 362 U.S. at 233-34 (emphasis added).  But as this Court has explained, that speaks to an entirely different issue—whether the government can *arrest* individuals for civil removal based on an administrative warrant—not whether such warrants satisfy the warrant requirement for entry into a protected area.  MSJ Order at p. 12.  The government also neglects to mention that at the time *Abel* was decided, immigration laws required such administrative warrants to be issued by an "*independent* responsible officer."  *Abel*, 362 U.S. at 236-37.  The same cannot be said of the administrative warrants here.

Defendants' only remaining argument is their feeble attempt to distinguish *Lundin*, which squarely controls this case.  Defendants point out that the arrest in *Lundin* took place at 4:00 a.m., while ICE generally conducts knock and talks starting at 6:00 a.m.  Mot. at 7.  As this Court observed, an arrest conducted at 6:00 a.m. "is not materially distinguishable" from one conducted at 4:00 a.m.  MSJ Order at p. 15.  And regardless, the *Lundin* court made clear that the time of day and the officers' improper purpose were each *independently sufficient* grounds for finding a lack of implied license to enter the curtilage.  817 F.3d at 1159 (affirming "[f]or two reasons").  *Lundin* explained that the officers' purpose of arresting the occupant alone vitiated any implied license, because they had "acted for a purpose that virtually no resident would willingly accept."  *Id.*  Defendants also argue that, unlike the officers in *Lundin*, ICE officers conducting knock and talks for civil immigration arrests possess administrative warrants.  As explained above, that does not immunize their conduct.

This Court's ruling was compelled by binding Ninth Circuit precedent and fundamental Fourth Amendment principles.  Defendants have not shown a "strong" likelihood that they are likely to prevail in challenging it on appeal.

### 3. ICE's "Knock and Talk" Practices Violate the APA

This Court also correctly concluded that ICE's practice of encroaching on the curtilage without a warrant for the purpose of arrest violates the APA, both because

-18-

1    it violates the Fourth Amendment, and because it independently violates 8 C.F.R.

2    § 287.8(f)(2).  That regulation provides: "An immigration officer may not enter into

3    the non-public areas of . . . a residence including the curtilage of such residence . . .

4    for the purpose of questioning the occupants . . . concerning their right to be or

5    remain in the United States unless the officer has a warrant or the consent of the

6    owner or other person in control of the site."  Defendants do not dispute that in

7    conducting knock and talks, ICE enters "non-public areas of . . . a residence

8    including the curtilage of such residence" at least in part to question occupants

9    "concerning their right to be or remain in the United States." *Id.*

10    Section 287.8(f)(2)'s use of the term "warrant" here means a judicial warrant

11    that complies with the Fourth Amendment, which is the "common definition" of the

12    term.  *United States v. Vargas-Amaya*, 389 F.3d 901, 904-06 (9th Cir. 2004).  In

13    promulgating the regulation, the agency "agree[d]" with comments suggesting that

14    the rule incorporates "Fourth Amendment" precedent concerning the "issuance of

15    warrants" and "obtaining of consent."  59 Fed. Reg. 42406, 42412 (Aug. 17, 1994).

16    Defendants assert that this regulation does not refer to judicial warrants, and yet they

17    do not address those authorities.  Defendants take issue with the Court's citation to

18    *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019), which held that a

19    neighboring subsection in the same regulation, § 287.8(b)(2), "intended to reflect

20    constitutional restrictions" and thus "provide[] at least as much protection as the

21    Fourth Amendment."  But that decision's reasoning applies equally here, and

22    Defendants offer no reasons or authority suggesting § 287.8(f)(2) should not be

23    construed to require a Fourth Amendment warrant.

24    **B.    Defendants Have Not Shown Irreparable Harm**

25    Defendants also failed to make a "clear showing"—or any showing—that

26    they will be irreparably harmed absent a stay.  *Winter v. NRDC*, 555 U.S. 7, 21-22

27    (2008).  Defendants' only claimed harm here is that the Court's order purportedly

28    interferes with their ability to conduct immigration enforcement.  Mot. at 11-12.

-19-

Defendants' claimed urgency is hardly credible given they waited to seek this stay until more than a year after this Court's vacatur order took full effect, and more than a month after this Court entered partial judgment at their request. *See Alsea Valley All. v. Dep't of Com.*, 358 F.3d 1181, 1186 (9th Cir. 2004) (vacatur order has immediate operative effect); *Ctr. for Biological Diversity v. Regan,* 729 F. Supp. 3d 37, 53 (D.D.C. 2024) (same). And regardless, the government is not harmed "in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). This Court took care not to issue an injunction specifically to enable ICE "to institute a modified or amended version of the 'knock and talk' policy that complies with constitutional limitations." MSJ Order at 24-25. And Defendants are free to conduct lawful "knock and talks" for the purpose of voluntary questioning and investigation, not arrest, just like every other law enforcement agency. That Defendants find it inconvenient to comply with the Fourth Amendment in conducting immigration enforcement actions is not a recognized basis to stay the Court's judgment.

## C.    The Balance of Equities and Public Interest Do Not Favor a Stay

As noted above, Defendants' claim of harm is weak. On the other hand, Defendants' clear intention to resume their unlawful knock and arrest practices would inflict widespread harm to the community's hallowed "right . . . to retreat into [their] own home[s] and there be free from unreasonable governmental intrusion." *Jardines*, 569 U.S. at 6 (citation omitted); *Melendres*, 695 F.3d at 1002 ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'" and "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" (citations omitted)). Defendants' home arrest practices instill fear in the community even in their own homes. By carrying their unlawful practices into the threshold of people's homes, Defendants invade people's privacy at its constitutional apex and corrode the community's most fundamental

1  sense of safety.  The public interest favors safeguarding the constitutional rights of

2  the Knock and Talk Class.

3  **IV.    <u>CONCLUSION</u>**

4        Defendants' motion for a stay should be denied.

5

6   Dated: August 20, 2025            MUNGER, TOLLES & OLSON LLP

7                                     JACOB KREILKAMP
                                      GIOVANNI SAARMAN GONZÁLEZ
8                                     GABRIEL BRONSHTEYN
                                      KYLE GROVES

9

10                                    _*/s/ Giovanni Saarman González*_
                                      Giovanni Saarman González
11                                    Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PARTIAL FINAL JUDGMENT ON
KNOCK AND TALK CLAIMS PENDING APPEAL

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs certifies that this brief contains 6,697 words, which complies with the word limit of L.R. 11-6.1.


Dated: August 20, 2025                    Respectfully submitted,

                                          MUNGER, TOLLES & OLSON LLP
                                            JACOB KREILKAMP
                                            GIOVANNI SAARMAN GONZÁLEZ
                                            GABRIEL BRONSHTEYN
                                            KYLE GROVES


                                          By: /s/ Giovanni Saarman González