O

# United States District Court
# Central District of California

| | |
|---|---|
| OSNY SORTO-VASQUEZ KIDD et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHAD T. WOLF[1] et al., <br><br> Defendants. | Case № 2:20-cv-03512-ODW (JPRx) <br><br> **ORDER DENYING DEFENDANTS' MOTION TO STAY PARTIAL FINAL JUDGMENT ON KNOCK AND TALK CLAIMS PENDING APPEAL [552]** |

## I.    INTRODUCTION

Pending before the Court is Defendants' Motion to Stay Partial Final Judgment as to the Knock and Talk Class Claims pending the adjudication of their appeal.  (Mot. Stay Partial Final J. ("Motion" or "Mot."), Dkt. No. 552.)  For the following reasons, the Court **DENIES** Defendants' Motion.[2]

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Alejandro Mayorkas and Tae D. Johnson substituted in as Defendants in this case for Chad Wolf and Matthew T. Albence.

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

The parties are familiar with the factual and procedural background leading up to the filing of the instant Motion and the Court does not needlessly repeat it here. Rather, the Court incorporates by reference the detailed factual and procedural background in its Order Granting Plaintiffs' Motion for Partial Summary Judgment and Denying Defendants' Motion for Summary Judgment. (Order Mots. Summ. J. ("MSJ Order") 2–7, Dkt. No. 506.) The Court summarizes only the procedural history relevant to the disposition of the present Motion.

On May 15, 2024, the Court granted Plaintiffs Inland Coalition for Immigrant Justice and the Coalition for Humane Immigrant Rights Los Angeles's Motion for Partial Summary Judgment as to the Knock and Talk Class's First, Second, and Third Causes of Action (the "Knock and Talk Class Claims"). (*Id.* at 25–26.)

On May 23, 2025, a year after the Court granted Plaintiff's Motion for Partial Summary Judgment, Defendants requested that the Court enter partial final judgment on the Knock and Talk Class Claims pursuant to Federal Rule of Civil Procedure ("Rule" or "Rules") 54(b). (Ex Parte Appl., Dkt. No. 538.) On June 24, 2025, the Court entered Partial Final Judgment. (Partial Final J., Dkt. No. 542.) On July 29, 2025, Defendants appealed. (Notice Appeal, Dkt. No. 547.)

Defendants now move to stay Partial Final Judgment as to the Knock and Talk Class Claims pending the resolution of their appeal. (Mot.)

## III.    LEGAL STANDARD

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)). Instead, it is "an exercise of judicial discretion," and "dependent upon the circumstances of the particular case." *Id.* (quoting *Virginian R. Co.*, 272 U.S. at 672–73). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

A district court has discretion to stay a prior order, pending appeal, if (1) "the stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) the applicant will be "irreparably injured absent a stay"; (3) "issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) the stay is in the "public interest." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are "the most critical." *Id.* The third and fourth factors merge when the government is a party. *Id.* at 435.

## IV. DISCUSSION

Defendants argue that a stay is warranted because they are likely to succeed on appeal, will suffer irreparable harm absent a stay, and the balance of equities and public interest favor suspending the Court's partial judgment. (Mot. 3–12.)

### A. Likelihood of Success on the Merits

Defendants argue that they are likely to prevail on the merits because Plaintiffs lack standing. (*Id.* at 5–7.) Defendants also contend that the Court misapplied Fourth Amendment jurisprudence. (*Id.* at 7–10.) Finally, Defendants argue that they are also likely to prevail on the merits of Plaintiffs' Administrative Procedure Act ("APA") claim. (*Id.* at 10–11.)

#### 1. Standing

Defendants contend that Plaintiffs lack standing to seek prospective relief because their alleged future injury is speculative and indistinguishable from the injury rejected by the Supreme Court in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). (Mot. 5–7; Reply 2–4, Dkt. No. 556.) Plaintiffs respond that they have established standing because they challenge an ongoing enforcement practice that creates a real risk of future injury. (Opp'n 6–13, Dkt. No. 555.)

To establish Article III standing, a plaintiff must allege an injury that is "concrete and particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016).

"[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982). An organization can establish an injury when it suffered from "both a diversion of its resources and frustration of its mission." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). In other words, the organization "must show that the defendant's actions run counter to the organization's purpose, that the organization seeks broad relief against the defendant's actions, and that granting relief would allow the organization to redirect resources currently spent combating the specific challenged conduct to other activities that would advance its mission." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019).

Here, Defendants' "knock and talk" policy and practice perceptibly impaired Plaintiffs' ability to carry out their core missions, forcing them to divert resources from their other activities. As Plaintiffs explain, Defendants' systemwide practice forced Plaintiffs to redirect staff time and considerable resources toward emergency response, know-your-rights education, counseling, intake, and community outreach aimed specifically at addressing the effects of the challenged conduct. (Opp'n 10–13.) These activities consumed time and resources that Plaintiffs' staff would otherwise have devoted to "working on critical aspects of the position for which they were originally hired." (*Id.* at 12); *Havens Realty*, 455 U.S. at 379 ("Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests."). Moreover, Plaintiffs' expenditures are not self-inflicted or the result of a generalized policy disagreement. They are the direct and foreseeable response to Defendants' ongoing enforcement practices and the fear, confusion, and legal needs those practices generate among Plaintiffs' members. Thus, Plaintiffs show a concrete injury sufficient to establish standing, *Rodriguez*, 930 F.3d at 1134, and Defendants' argument that the injury is speculative fails, (Mot. 5–6).

Plaintiffs also have standing to sue on behalf of their members.  An association has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

All three requirements are satisfied here.  First, Plaintiffs' members would have standing to sue in their own right.  Absent this Court's order holding that Defendants' "knock and talk" policy is unconstitutional, (MSJ Order 17), Plaintiffs' members face a real and immediate risk of future injury.  Defendants do not dispute this fact.  (*See generally* Mot.)  To the contrary, they acknowledge that this Court's ruling prohibits Defendants "from knocking on someone's front door" to "ask the residents questions," "to seek consent to conduct a search," and then "to arrest" aliens.  (Decl. Ernesto Santacruz, Jr. ISO Mot. ("Santacruz Decl.") ¶ 13, Dkt. No. 552-1.)  Defendants also acknowledge that they have "the home addresses for many more aliens with criminal histories" but are "unable to effectuate arrests efficiently since they are inhibited from approaching the curtilage of the home to confirm their investigative leads."  (Decl. John Pasciucco ISO Mot. ("Pasciucco Decl.") ¶ 17, Dkt. No. 552-2.)   Thus, Defendants appear to concede that absent this Court's order, their practice of conducting home arrests would resume.  (*See id.*)  Should this Court grant the requested stay and Defendants resume their "knock and talk" practice, Plaintiffs' members would necessarily face a significant risk of injury, one that implicates core Fourth Amendment protections, and is sufficient to establish standing.

Second, the interests Plaintiffs seek to protect—freedom from unconstitutional intrusions into one's home and curtilage—are central to Plaintiffs' mission.  As Plaintiffs explain, Defendants' practice of conducting "unlawful home arrests" affects Los Angeles immigrant communities, and protecting those communities is at the core of Plaintiffs' organizational purpose.  (Opp'n 8); *Hunt*, 432 U.S. at 343.

Third, neither the claims asserted, nor the relief sought here, require participation by Plaintiffs' individual members.  Plaintiffs challenge Defendants' policy and practice at a systemic level and seek prospective relief applicable across the board.  (Opp'n 8.)  As such, the individual participation of their members is not required. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("[S]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.").  Thus, Plaintiffs have also established associational standing.

Finally, Defendants' reliance on *Lyons* is misplaced.  Defendants argue that like the plaintiff in *Lyons*, Plaintiffs here cannot show "that any of their individual members would be subject to knock and talks in the future." (Mot. 6–7.)  Contrary to Defendants' argument, *Lyons* addresses a narrow category of claims for prospective relief.  There, the plaintiff was placed in an illegal chokehold during a traffic stop and sought injunctive relief that would bar the use of chokeholds by police officers unless threatened by death or serious bodily injury. *Lyons*, 461 U.S. at 97–100.  The *Lyons* Court considered whether a plaintiff could obtain prospective injunctive relief based solely on a past encounter with law enforcement, where any future injury depended on speculative contingencies and discretionary conduct that the plaintiff could avoid through lawful behavior. *Id.* at 108.  The Court found that the plaintiff could not. *Id.* As the *Lyons* Court reasoned, the plaintiff there lacked standing because "it is surely no more than speculation to assert" that the plaintiff "himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest, attempting to escape, or threatening deadly force or serious bodily injury." *Id.*

Plaintiffs' standing here rests on fundamentally different grounds.  Unlike in *Lyons*, Plaintiffs do not seek to enjoin a discretionary tactic based on a speculative future encounter; they challenge a systemwide immigration enforcement practice that

6

occurs at or near the home. While the risk of future injury in *Lyons* was speculative because the plaintiff's claim of future harm there depended on the plaintiff being stopped again for a traffic violation, 461 U.S. at 111, here "[t]here is no predicate action that the individual plaintiffs would need to take, other than simply going about their lives, to potentially be subject to the challenged" practice, *Vasquez Perdomo v. Noem*, 148 F.4th 656, 675 (9th Cir. 2025). Unlike the plaintiff in *Lyons*, Plaintiffs' members "cannot escape future injury by avoiding [the] unlawful activity." *Id.* Thus, *Lyons* does not control here.

Accordingly, the Court finds that Plaintiffs have standing, and Defendants cannot show a likelihood of success on the merits on this ground.

*2.     Fourth Amendment*

Defendants also argue that they are likely to prevail on the merits because the Court's holding "is inconsistent with both Supreme Court and Ninth Circuit precedent," and because the Court erroneously applied criminal Fourth Amendment principles to civil immigration enforcement. (Mot. 7–10; Reply 4–6.)

At the core of the Fourth Amendment stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* at 590. That protection extends to the curtilage of the house, which "enjoys protection as part of the home itself." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton*, 445 U.S. at 590. Although officers may approach a residence to initiate consensual contact, that authority rests on a limited implied license, one that permits officers, like any private citizen, to approach the front door of the residence, knock, wait briefly, and leave if consent is not granted. *Jardines*, 569 U.S. at 8.

This implied license does not extend to approaching the curtilage to effectuate an arrest.  As our Supreme Court has emphasized: "[T]he background social norms that invite a visitor to the front door do not invite him there to conduct a search." *Jardines*, 569 U.S. at 9.  The Ninth Circuit has also been explicit on this point: "The 'knock and talk' exception to the warrant requirement does not apply when officers encroach upon the curtilage of a home with the intent to arrest the occupant." *United States v. Lundin*, 817 F.3d 1151, 1160 (9th Cir. 2016).

Defendants argue that the Court misapplied *Lundin* because that case is allegedly distinguishable in two respects: (1) the officers in *Lundin* knocked on the suspect's door at 4:00 a.m., while Immigration and Customs Enforcement ("ICE") knocks and talks occur during reasonable hours; and (2) unlike the officers in *Lundin*, ICE officers possess administrative arrest warrants when they approach a residence. (Mot. 7–8.)  Neither of these distinctions is relevant.  First, the Ninth Circuit's holding in *Lundin* did not turn on the early-morning timing of the knock, but on the officers' purpose: entering the curtilage to effectuate an arrest.  *Lundin*, 817 F.3d at 1159–60 (holding that "the customary license to approach a home and knock is generally limited to the 'purpose of asking questions of the occupants,'" and "[o]fficers who knock on the door of a home for other purposes generally exceed the scope of the customary license and therefore do not qualify for the 'knock and talk' exception").  A plain reading of *Lundin* shows that if officers enter the curtilage for the purpose of effectuating an arrest, that exceeds the scope of the implied license recognized in *Jardines*.  *Id.* at 1160 (quoting *Jardines*, 569 U.S. at 10).  That ICE officers operate during "reasonable" hours does not alter this analysis.  The court's reasoning in *Lundin* clarifies that the timing of the "knocks" may inform whether conduct is consensual, but it does not expand the implied license where officers approach the home with the intent to arrest the occupant.  *See id.* at 1159–60.

Second, Defendants' reliance on administrative arrest warrants as sufficient to satisfy the warrant requirement misreads *Lundin*. (Mot. 8.)  An administrative warrant

does not authorize entry into the home or its curtilage absent consent and neither of the cases Defendants cite holds that an administrative warrant expands the implied license to approach the home for arrest purposes. *See Abel v. United States*, 362 U.S. 217, 230 (1960) (declining to consider whether an administrative warrant satisfies the requirements for "warrants" under the Fourth Amendment); *Matias Rauda v. Wilkinson*, 844 F. App'x 945, 948 (9th Cir. 2021) ("The immigration warrant licensed the officers to *solicit consent* to entry for the limited purpose of enforcing the civil immigration laws." (emphasis added)).  At most, these cases recognize the limited authority to solicit consent, not to encroach on the curtilage with an arrest objective.

Furthermore, Defendants appear to argue that the Court improperly constrained lawful "knock and talk" encounters.  (Mot. 10.)  Defendants mischaracterize the Court's ruling.  The Court did not prohibit consensual encounters at the door.  It held only that Defendants may not encroach on the curtilage for the purpose of arresting occupants without a judicial warrant or valid consent—conduct that exceeds the scope of the implied license recognized in *Jardines* and foreclosed by *Lundin*.  (*See* MSJ Order 14–17); *Jardines*, 569 U.S. at 9; *Lundin*, 817 F.3d at 1159–60.  The Court's ruling does not impose any novel requirements; it simply reinforces longstanding Fourth Amendment boundaries: if officers wish to arrest someone at or within the home absent exigent circumstances, they must obtain judicial authorization or valid consent.  *See Payton*, 445 U.S. at 589–90; *Jardines*, 569 U.S. at 6–9.  This principle is not unique to criminal law and does not evaporate in civil enforcement.  Defendants' disagreement with the Court's analysis does not establish error or a likelihood of success on the merits.

Defendants next argue that the Court erred by applying criminal Fourth Amendment principles to civil immigration enforcement.  (Mot. 9; Reply 4–6.) Defendants' assertion rests on the premise that immigration enforcement warrants a categorical exception to constitutional protections in the home.  However, Fourth Amendment protections do not wax and wane depending on whether the government

proceeds in a criminal or civil forum. *See Gonzalez v. ICE*, 975 F.3d 788, 824 (9th Cir. 2020) (holding that Fourth Amendment principles apply to the civil immigration context). Certainly, "various protections that apply in the context of a criminal trial do not apply in a deportation hearing." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984)). However, this rule extends to deportation proceedings, not arrests effectuated at one's place of abode. The Fourth Amendment protects *people*, not categories of enforcement. *See Camara v. Mun. Court*, 387 U.S. 523, 528 (1967) (holding that the Fourth Amendment applies to civil administrative inspections). No matter how Defendants twist the label, "knock and talk" does not mean "knock and arrest." *See Lozano v. Doe 1*, 591 F. Supp. 3d 700, 712 (C.D. Cal. 2022) ("A 'knock and talk,' as its name denotes, is exceedingly limited in scope—essentially, to two activities. Though that is an oversimplified description, to be sure, what is plain is that the exception does not say, 'knock, talk, *and* arrest.'"). Thus, Defendants fail to show a likelihood of success on the merits on this ground.

### 3. APA Violation

Defendants also contend that they are likely to prevail on the merits of Plaintiffs' APA claim. (Mot. 10–11.) In their view, the Court improperly interpreted 8 C.F.R. § 287.8(f)(2) to require a judicial warrant and failed to consider the broader statutory and regulatory context. (*Id.*)

Section 287.8(f)(2) "prohibits warrantless entry into a residence without consent." *Ixchop-Perez v. Barr*, 821 F. App'x 690, 693 (9th Cir. 2020). When a term of art is used, such as the term "warrant" in section 287.8(f)(2), courts grappling with the interpretation of such term defer to its "common definition." *United States v. Vargas-Amaya*, 389 F.3d 901, 904 (9th Cir. 2004).

Earlier in this litigation, Defendants stipulated that they "will not argue or claim" that an administrative warrant provides "legal authority to enter a residence or other location in which an individual has a reasonable expectation of privacy," or "that the presence of such warrant is a factor supporting any defense by Defendants in this

action." (Stip. ¶ 22, Dkt. No. 153.)  Now, however, Defendants appear to change their position.  Defendants take issue with the Court's reliance on *Perez Cruz v. Barr*, 926 F.3d 1128 (9th Cir. 2019), for the proposition that section 287.8 "provides at least as much protection as the Fourth Amendment, and therefore a judicial warrant was necessary to encroach the curtilage of a home to conduct a knock and talk." (Mot. 11; MSJ Order 19–20.)  In *Perez Cruz*, the court based its holding on a neighboring subsection of section 287.8 and held that subsection (b)(2) "was intended to reflect constitutional restrictions" and "provid[e] at least as much protection as the Fourth Amendment."  926 F.3d at 1137.  Defendants fail to explain why subsection (b)(2) of section 287.8 "was intended to reflect constitutional restrictions," but subsection (f)(2) of the same section, was *not*.  Such interpretation defies logic.  The Court relied on *Perez Cruz* to reject Defendant's reading of section 287.8 as granting them broader authority than the Constitution permits.  (MSJ Order 19–20.)  As Defendants fail to show that an administrative warrant qualifies as a "warrant" under section 287.8(f)(2) and thus need not comply with the Fourth Amendment, they fail to show a likelihood of success on the merits on this ground.

In sum, the Court finds that Defendants fail to show a likelihood of success on the merits on any of the three grounds they raise in their Motion.

**B.     Irreparable Harm**

Defendants fail to show that they will suffer irreparable harm absent a stay. Instead, they argue that the "harms, equities, and public interest outweigh any harm" Plaintiffs might suffer from a stay.  (Mot. 11–12.)  Although not clear from their moving papers, Defendants appear to argue that they are harmed because the Court's order "undermines" their ability to implement their immigration priorities.  (*Id.* at 12.)

Conclusory assertions, speculative injuries, or generalized operational concerns are not sufficient to show irreparable harm.  *Winter v. Nat'l. Res. Def. Council, Inc.*, 555 U.S. 7, 21–22 (2008).  Defendants offer no concrete evidence that they will suffer irreparable harm absent a stay.  Instead, they contend that the "Court's judgment

inhibits immigration officers from initiating consensual encounters." (Mot. 11–12.) As explained above, they are mistaken. The Court's ruling does not prohibit Defendants from initiating consensual encounters or conducting lawful arrests. It requires only that Defendants comply with Fourth Amendment requirements when conducting arrests at or near a noncitizen's home. Any asserted harm thus flows from Defendants' choice to rely on constitutionally infirm practices rather than from the Court's ruling itself. Moreover, any alleged harm cannot be reasonably categorized as imminent. Defendants waited more than a year after the Court entered summary judgment on the Knock and Talk Class Claims in favor of Plaintiffs to request that the Court enter judgment, and over a month after the Court entered judgment to seek this stay. (MSJ Order (entered May 15, 2024); Partial Final J. (entered June 24, 2025); Mot. (filed August 5, 2025).) Finally, to the extent Defendants claim harm arising from the need resort to more "expensive tactics," (Mot. 12), such harm is not irreparable. *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) ("Economic harm is not normally considered irreparable."). Thus, Defendants fail to show irreparable harm absent a stay.

**C.    Balance of Equities and Public Interest**

The third and fourth factors merge when the government is a party. *Nken*, 556 U.S. at 435. These factors also weigh against granting the requested stay.

Defendants contend that the Court's order "inhibits immigration officers from initiating consensual encounters" and "imposes untenable operational constraints by paralyzing a critical enforcement tool used to locate and apprehend individuals who pose dangers to national security or public safety." (Mot. 12.)

While the government has a strong interest in effective immigration enforcement, that interest does not override constitutional constraints. There appears to be little harm to Defendants if a stay is not granted as they assert only generalized administrative and enforcement burdens. (*See id.*) By contrast, Plaintiffs' members face the risk of tremendous injury if the Court were to grant the stay, as their freedom

and liberty will continue to be threatened in their own homes. *Jardines*, 569 U.S. at 6 ("At the [Fourth] Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" (quoting *Silverman*, 365 U.S. at 511)). Furthermore, the public has a strong interest in the vindication of constitutional rights and in ensuring that immigration practices comply with constitutional norms. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights"). Thus, both factors weigh against granting the requested stay.

In sum, all the *Nken* factors weigh against granting the requested stay. Accordingly, Defendants' Motion is **DENIED**.

### V.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Stay Partial Final Judgment as to the Knock and Talk Class Claims. (Dkt. No. 552.)

**IT IS SO ORDERED.**

January 20, 2026

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**